UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell, on behalf of themselves and on behalf of all others similarly situated, a class action,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF Railway Company, Burlington Northern Santa Fe Corporation, William Barbee, Francis A. Weber, John Doe #1, John Doe #2, ABC Insurance Company and DEF Insurance Company,<br><br>Defendants. | Civil File No. 08-469<br><br><br>**DEFENDANTS' BNSF RAILWAY COMPANY, BURLINGTON NORTHERN SANTA FE CORPORATION, WILLIAM BARBEE AND FRANCIS A. WEBER'S BRIEF IN OPPOSITION TO MOTION TO REMAND** |

**INTRODUCTION**

In July 2007, a 100-year deluge engulfed the residents and businesses of Bagley, Wisconsin.  Eight inches of rain poured down within a twelve-hour period, causing nearby waterways to surge over their banks.  Plaintiffs would have this Court hold BNSF Railway Company, Burlington Northern Santa Fe Corporation (collectively "BNSF"), William Barbee and Francis Weber liable for this almost unprecedented Act of God.

Purporting to represent everyone who lives or owns property in Bagley, plaintiffs have brought this class action lawsuit to recover compensatory, consequential, treble, and punitive damages.  So as to secure the hometown advantage, this action was filed in Grant County Circuit Court, and two BNSF employees, who not coincidentally live in Wisconsin, were named.

2240745v1

Plaintiffs' joinder strategem blatantly attempts to frustrate BNSF's right to this federal forum. Diversity jurisdiction has been congressionally afforded to provide an out-of-state defendant like BNSF access to "a tribunal presumed to be more impartial than a court of the state in which one of the litigants resides." *Barren S.S. Co. v. Kane,* 170 U.S. 100, 111 (1898). By fraudulently joining two Wisconsin residents – who have absolutely no responsibility for the structures that supposedly caused the flood – plaintiffs seek to obstruct the exercise of federal jurisdiction. Such a ploy cannot be condoned.

Individual defendants Weber and Barbee are not involved with bridge maintenance, inspection, or monitoring. Bridge Inspector Jeffrey Haas and Supervisor of Structures Louis Welte – neither of whom reside in Wisconsin – are charged with those duties. Not only are the individual defendants not properly joined, but the complaint pleas this action within the scope of the Class Action Fairness Act of 2005 ("CAFA") so as to provide a further basis for federal jurisdiction. In short, this action is now venued where it belongs. The attempt to elude federal jurisdiction must be repudiated.

## BACKGROUND

### A.    The Flood of July 2007

On July 17 and 18, 2007, a record eight inches of rain fell on the small village of Bagley. Bagley is on the banks of the Mississippi River, below the bluffs that flank the river in southwestern Wisconsin. Not surprisingly, the extraordinary weather event caused nearby waterways – including the Glass Hollow Creek and the Upper Mississippi River – to overflow. Meteorologists describe the downfall and the subsequent flooding to be "a text book case" of a "mesoscale convective systems," during which torrents of

water caused minor streams like Glass Hollow Creek to rage and back up into Bagley. (Borg Aff. Ex. 1.)  Most of Bagley's 400 homes were inundated by the high water.  (*Id.* Ex. 2 ("The tiny Village of Bagley sustained the worst damage, with most of its 400 homes affected by the flash flooding.").)  Discounting the overwhelming forces of nature, plaintiffs blame the railroad's failure to maintain nearby bridge and bridge trestles for causing the flood.

**B.    This Lawsuit**

In May of 2008, plaintiffs brought suit in Grant County Circuit Court.  BNSF was served in late July 2008 and timely removed on August 11, 2008.[1]

1.    Claims against all defendants

The complaint alleges that defendants "failed to properly and adequately plan, design, construct, guard, inspect, investigate, clean and maintain" the bridge and bridge trestle in and near Bagley.  That neglect supposedly caused flooding in both "the main Village of Bagley north of the Railroad Trestle and the River Lakes Manufactured Housing subdivision south of the Railroad Trestle."  (Compl. ¶ 5.)  With absolutely no factual basis, the complaint ordains that Weber and Barbee[2] are "supervisory employees"

---

[1]    On May 20, 2008, Grant County Circuit Judge George S. Curry, to whom the case was assigned, notified the parties that his son, Nathan Curry, is employed by plaintiffs' counsel's law firm.  This letter is on file with the clerk at ECF Clerk Doc. No 5-5 and attached as Exhibit 3 to the Borg Affidavit.

[2]    These allegations are also made against John Doe #1 and John Doe #2, who are said to be Wisconsin residents.  Jeffry Haas and Louis Welte, who are in fact responsible for bridge and bridge trestle maintenance, monitoring, and inspection, are not Wisconsin residents.  (Haas Aff. ¶ 1; Welte Aff. ¶ 1.)

who had "duties of inspection, investigation, monitoring, and maintenance of the Burlington Northern Trestle." (*Id.* ¶ 7.)

The gravamen of the accusations against the various railroad defendants are identical:

- All defendants failed "to keep the Burlington Northern Trestle free and clear of silt, obstructions and debris so that accumulating rainfall runoff in the Glass Hollow Drain could freely flow through the Railroad Trestle." (Compl. ¶ 65(a));

- All defendants failed "to guard the Burlington Northern Trestle from silt, obstructions and debris so as to maintain the Trestle free and clear of silt, obstructions and debris during rainfall runoff so that rainfall runoff water from areas upstream of the main Glass Hollow Drain could freely flow through the Burlington Northern Trestle" (*id.* ¶ 65(b); *see also id.* ¶¶ 66(c), 76(a)-(b));

- All defendants failed "to remove accumulated silt deposits so as to maximize the initially designed flow through the Burlington Northern Trestle under the Burlington Northern Railroad Bridge so that the accumulating rainfall runoff water from areas upstream of the Glass Hollow Drain could freely flow through the Burlington Northern Trestle" (*id.* ¶ 65(c); *see also id.* ¶ 76(c));

- All defendants failed "as a corporation operating a railroad to maintain the watercourse across, along and/or upon which such railroad may be constructed against any effects in any manner produced by such railroad" (*id.* ¶ 66(b));

- All defendants failed "to maintain the original flow lines of drainage by way of adequate and feasible ditches, culverts or other facilities including the Burlington Northern Railroad Bridge Trestle consonant with sound engineering practices" (*id.* ¶ 66(d)); and

- All defendants "negligently designed, constructed, installed, failed to guard, failed to inspect, failed to investigate, and failed to maintain the Burlington Northern Trestle" (*id.* ¶ 84);

- All defendants "created and maintained a nuisance contrary to Wisconsin law by failing in their duty to act to prevent blockages and obstructions of the Burlington Northern Trestle" (*id.* ¶ 94).

(*See generally* Compl. ¶¶ 61-100.)

Hence in terms of defendants' supposed wrongdoings, the complaint makes no distinction between the individual railroad workers and their employer.  On top of that, there is no suggestion that Weber and Barbee acted outside the scope of their employment.

2.    Class allegations

The complaint defines the class as "both the Representative Plaintiffs, the Other Retained Plaintiff Class Members who are not named as Representative Plaintiffs but who are identified herein below in this Part and <u>all</u> other members of the Plaintiff Class as defined herein."  (*Id.* ¶ 35 (emphasis added).)  The class is, therefore, said to include:

> those persons, including occupants and owners, those governmental organizations, those non-profit organizations and those businesses, including insurers, and subrogees, who were damaged or injured by these man-made, preventable floodings and water invasions as set forth herein . . . [and] minor children, relatives and other home companions of the Plaintiff Class Members residing within and/or occupying the homes.

(*Id.* ¶¶ 36-37).

The loci of those class members are described as follows:

> The geographical definition of the Plaintiffs Class Members consists of those Plaintiff Class Members who were and are situated upstream and/or tributary to the Glass Hollow Drain as it attempts to flow through the Burlington Northern Santa Fe Railroad Bridge Trestle (herein the "Burlington Northern Trestle") in and near the Village of Bagley, County of Grant, State of Wisconsin and who sustained damage and injury as further defined herein from the man-made, Defendants-caused preventable floodings and water invasions set forth herein on or about July 17 and/or July 18, 2007.

(*Id.* ¶ 38; *see also id.* Ex. 3 (map of the "geographical definition").)

The complainants expressly include "at least" 74 representatives and other retained members. (Compl. ¶ 42.) Telling, the representatives do not disavow class membership in excess of 100, and based upon their class definition they could not. (*See id.*) Hence the class would need just 26 more members in addition to those who have already signed up to reach the 100 member mark.

The official Bagley property records reveal that there are 286 deeded parcels within the class geographical definition. (Borg Aff. Ex. 4; *id.* Ex. 5.) These 286 deeded properties are owned by 369 different individuals. (*Id.*) According to the complaint, the class includes essentially anyone located or found within or with an interest in this geographical area – including governmental entities, insurers, subrogees, minor children, and other relatives. (Compl. ¶¶ 35-38.)

        3.    <u>Damage allegations</u>

Plaintiffs want redress in the form of injunctive relief, compensatory damages, incidental and consequential damages, treble damages, punitive damages, and attorneys' fees and costs against all defendants. (*Id.* at 19.)

As with liability, the complaint does not distinguish among defendants for the relief sought. Plaintiffs' quest for compensation subsumes the following:

        a.    Real property damage and destruction;

        b.    Reduced or destroyed market value of real property;

        c.    Personal property damage and destruction including but not limited to personal property situated inside of homes and businesses such as furniture, clothing, home electronics, et al.

and personal property situated on the outside of homes and businesses such as cars, trucks, motorcycles and other vehicles or items of personal property outside of said homes and businesses.

d.      Reduced or destroyed personal property value;

e.      Sentimental value property damage and destruction;

f.      Clean-up and restoration expenses, time and costs;

g.      Out-of-pocket expenses for clean-up, restoration and related needs of the Plaintiff Class;

h.      Annoyance, inconvenience, stress and other anxieties including the continuous impending peril of another man-made flooding and water invasion from the Burlington Northern Trestle's blockage and/or obstruction;

i.      Other compensable damage as allowed by Wisconsin Law;

j.      Punitive damages as allowed by Wisconsin Law; and

k.      Such other relief as allowed by this Court under the facts and circumstances of this case as allowed by Wisconsin Law.

(*Id.* ¶ 67.)  If that were not enough, plaintiffs seek treble damages from all defendants pursuant to Wis. Stat. § 195.35.  (*Id.* ¶ 69.)

## C.      **The Defendants**

BNSF's tracks cross over Glass Hollow Creek in and near the Village of Bagley, Wisconsin.  Trains run over the creek on a bridge owned and maintained by the railroad.

Barbee is a BNSF Roadmaster whose territory includes the <u>tracks</u> that run through Bagley.  (Barbee Aff. ¶ 3.)  As a Roadmaster, Barbee plans, coordinates, prioritizes, and supervises maintenance crews to ensure that the tracks comply with BNSF and federal standards.  (*Id.*)  The tracks comprise the rail, the ties, the fasteners – such as spikes and anchors – the switches, the frogs, and the ballast.  Barbee also works directly with local,

county, and state agencies on weed control and grade crossings.  (*Id.*)  He conducts track inspections both by riding trains and hi-rail vehicles and by walking the right-of-way.  (*Id.*)

As Roadmaster, Barbee is accountable for track safety in his territory.  His job duties do not, however, include the inspection, maintenance or monitoring of bridges and bridge trestles.  (*Id.* ¶ 4; Welte Aff. ¶ 5.)  Care of those structures is assigned to other personnel with the requisite expertise.

Weber is a Flagman who works the tracks that run through Bagley.  (Frank Weber ¶ 5.)  Weber belongs to the Brotherhood of Maintenance of Way Employees.  (*See* Borg Aff. Ex. 6 at Rules 1 & 5 (CBA applies to "all employees not above the rank of track inspector, track supervisor and foreman," including Flagman).)  As a Flagman, Weber maintains track infrastructure, which includes the construction, inspection, and repair of the track.  When necessary, Weber clears brush, trees, vegetation, and other debris from the right-of-way.  (Frank Weber Aff. ¶ 3.)  Weber's duties also include:  maintaining track bed; cutting rail; manually compressing ballast; removing and installing ties; and lifting, rolling and adjusting rails.  (*Id.*)  Lacking the necessary training and knowledge, Weber is not responsible for bridge and bridge trestle inspection and maintenance.  (*Id.* ¶ 4; Welte Aff. ¶ 5.)

The BNSF employees who do patrol and fix the bridges and bridge trestles in the territory that includes Bagley are Jeffry Haas and Louis Welte.  Haas, the Bridge Inspector, lives in Dubuque, Iowa.  (Haas Aff. ¶ 1.)  Welte, the Supervisor of Structures, lives in Dunlap, Illinois.  (Welte Aff. ¶ 1.)  Their job duties encompass inspection,

monitoring, maintenance, and repair of bridges and other structures.  (Haas Aff. ¶¶ 3-4; Welte Aff. ¶¶ 3-4.)

### D.   Plaintiffs' fraudulent joinder admissions

Shortly after this lawsuit was served on the individual defendants, several plaintiffs – including the lead plaintiff Kenneth Irish – attempted to make amends and reassure Frank Weber's wife, Rita.  (Rita Weber Aff. ¶¶ 2-6.)  Webers live in Bagley, and Rita cooks in the town's only restaurant.  Irish told Rita in July and again in August that this lawsuit was not directed at the Weber family.  (*Id.* ¶ 3.)  According to Irish, the plaintiffs did not want to hurt any individual, and the lawyers had assured the plaintiffs that the lawsuit would have no financial consequences to Barbee or Weber.  (*Id.*)

Frustrated by Rita's reluctance to discuss the litigation, Irish wrote the Webers. The August 2008 letter explains:

> I called the lawyers the day I got a copy of the lawsuit and they informed me there was a reason that Frank and William['s] names was [sic] on the suit and guaranteed me on 2 separate occasions that it would not cost either one cent.  You can't put an obstical [sic] in the waterway that drains thousands of acres and not maintain it.  I'm sure that this is not Frank or William's job . . . Many of my friends lost their homes and all or part of their possessions and that's the reason that I started this lawsuit against the railroad and their insurance co. . . I have nothing against the RR Co. . . .

(Rita Weber Aff. ¶ 4, *id.* Ex. A.)

Wes Morris and Ruth Jackley are also class plaintiffs.  (*Id.* ¶¶ 5-6.)  Like Irish, they confessed to Rita that the lawsuit was not really against Frank and that the plaintiffs did not intend to cause the Weber family any harm.  (*Id.*)

## ARGUMENT

### I.   STANDARD OF REVIEW

In response to a motion to remand, the removing party bears the burden of establishing subject matter jurisdiction. *Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.*, 70 F. Supp. 2d 888, 892 (E.D. Wis. 1999). "A defendant meets this burden by supporting its allegations of jurisdiction with competent proof, meaning evidence which proves to be a reasonable probability that jurisdiction exists." *LaSusa v. Lake Michigan Trans-Lake Shortcut, Inc.*, 113 F. Supp. 2d 1306, 1308 (E.D. Wis. 2000) (quoting *Chase v. Shop N' Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (internal quotations omitted)). An evidentiary hearing can be convened to resolve jurisdictional factual disputes.[3] *See In re Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 671 (7th Cir. 2001) (vacating denial of remand and ordering the trial court to conduct evidentiary hearing).

### II.   BARBEE AND WEBER WERE FRAUDULENTLY JOINED

"Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Fraudulently joined parties must be disregarded when the availability of diversity jurisdiction is assessed. *Id.*

---

[3] Defendants request an evidentiary hearing. Testimony will establish that plaintiffs fraudulently joined defendants Barbee and Weber in an attempt to destroy diversity jurisdiction. (*See, e.g.*, Rita Weber Aff.) Data from the property records will also show Class Action Fairness Act applicability. (*See, e.g.*, Borg. Aff. Exs. 4-5.) The evidence that would be proffered at such a hearing would remove any doubt about the propriety of federal subject matter jurisdiction.

"Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Id.* Specifically, "when the plaintiff's suit presents a local court with a clear opportunity to express its presumed bias – when the insubstantiality of the claim against the in-state defendant makes it easy to give judgment for the in-state plaintiff against the out-of-state defendant while sparing the in-state defendant," an out-of-state defendant should not be deprived of a federal forum. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). When it comes to the venue selection in this case there can be little doubt about the favorability of the local forum when the state trial judge who has so far declined to recuse himself is the father of an attorney in plaintiffs' law firm. (Borg Aff. Ex. 3.)

### A.   Plaintiffs' claims against Barbee and Weber fail as a matter of law

Joinder is fraudulent if "the plaintiff cannot establish a cause of action against the in-state defendant." *Paulos*, 959 F.2d at 73. "[T]he federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Id.*

When the uncontroverted evidence shows that a non-diverse defendant has no connection to the events giving rise to the dispute, the joinder is fraudulent. *See Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653 (7th Cir. 1992); *see also Hernandez v. Home Depot, U.S.A., Inc.*, No. 05-C-5963, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006) (uncontested evidence revealed that non-diverse defendant "never owned, possessed, operated, controlled, or maintained the property on which plaintiff was

injured" and thus that defendant had been fraudulently joined); *Hill v. Olin Corp.*, No. 07-CV-0054-DRH, 2007 WL 1431865, *7 (S.D. Ill. May 14, 2007) (citing cases).

*Faucett v. Ingersoll-Rand Mining & Machinery Co.* shows the way.  960 F.2d at 654-55.  Asserting fraudulent joinder, an individual defendant attested by affidavit that "he has had absolutely nothing to do with any roof bolters at the Peabody Mine."  *Id.* This uncontroverted evidence was "sufficient to establish fraudulent joinder."  *Id.*  The defendant's citizenship was therefore disregarded, and diversity jurisdiction was exercised.  *Id.*; *see also*, *e.g.*, *Hart v. Int'l Paper Co.*, 53 F.3d 1281 (5th Cir. 1995) (non-diverse defendants fraudulently joined when uncontradicted affidavits demonstrate that they were not responsible for plaintiff's alleged damage).

Plaintiffs allege two causes of action:  negligence and nuisance.  To prevail on those claims, plaintiffs must prove that each defendant owed some duty of care, the breach of which caused plaintiffs harm.  Plaintiffs accuse all defendants of failing to properly design, construct, guard, inspect, investigate, and maintain the bridge and bridge trestle in Bagley and allege that this failure caused damage to the class.  (*See generally* Compl. Counts I – IV.)   Like in *Faucett*, the uncontroverted affidavits establish that neither Barbee nor Weber were responsible for the underlying conduct about which plaintiffs complain.  (Frank Weber Aff. ¶ 4; Barbee Aff. ¶ 4; Welte Aff. ¶ 5; Haas Aff. ¶ 4.)  Weber and Barbee certainly did not make it rain, and they are not charged with ensuring that unprecedented rainfalls can flow off the bluffs, into the hollows and under railroad trestles without backing up.  The BNSF employees' affidavit testimony is

corroborated by class representative admissions.  (Rita Weber Aff. ¶ 4 Ex. A ("I'm sure that this was not Frank or William's job.").)

The only BNSF employees who could be faulted for inadequate bridge inspection and maintenance near Bagley are Welte and Haas, neither of whom live in Wisconsin. (Welte Aff. ¶¶ 1, 4-5; Haas Aff. ¶¶ 1, 4.)  Barbee and Weber are no more answerable for bridge oversight and upkeep than any other Wisconsin resident who happens to be employed by BNSF.  Track maintenance is a different job performed by a different department than bridge and building maintenance.

Because Barbee and Weber have no connection to the events giving rise to the underlying dispute, plaintiffs have no possibility of maintaining a cause of action against these individual employees.  *See Faucett*, 960 F.2d at 654-55.  The joinder of Barbee and Weber is therefore fraudulent, and their citizenship should be disregarded in the diversity jurisdiction determination.

### B.    Plaintiffs fraudulently asserted claims against Barbee and Weber

Plaintiffs sued Barbee and Weber for no purpose other than to evade this federal forum and thereby gain an unfair advantage.  It is no accident that plaintiffs' counsel selected a venue where the father of one of the law firm's attorneys is a presiding judge.

As officers of the Court, counsel is charged with Rule 11 compliance – namely, "to the best of the person's knowledge, information and belief," the attorney has ensured that the pleading's "factual contentions have evidentiary support."  "In other words, Rule 11 requires litigants to conduct a reasonable investigation into the factual bases underlying their claims *before* filing suit."  *George v. Smith*, No. 05-C-403-C, 2005 WL

1812890, *8 (W.D. Wis. Aug. 2, 2005) (Crabb, J.) (emphasis in original); *see also Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 800 (7th Cir. 2003) (plaintiff, personally or through counsel, must ascertain that there is evidentiary support for complaint allegations). "An individual may not file a complaint containing factual allegations that are based on nothing more than speculation and then use the discovery process to learn whether those allegations are factually supported." *George*, 2005 WL 1812890 at *8.

Class representatives admit knowing that neither Barbee nor Weber are accountable for bridge and bridge trestle maintenance. (Rita Weber Aff. ¶ 4, Ex. A.) Irish went so far as to acknowledge that indisputable fact in writing: "I am sure that this is not Frank or William's job." (*Id.*) Obviously, someone who lives next to the bridge and is Weber's neighbor in a small town, like Irish, would be in a position to know that Weber and Barbee do not work on the bridge. Yet the lawyers either did not ask or Irish did not tell before the contrary complaint allegations were made – a course of action that mocks Rule 11.

The railroad assigns the duties relating to track maintenance and duties related to structure maintenance to different personnel. Distinct considerations and skills are implicated by the discrete job functions. Class representatives have repeatedly assured the Weber family that the lawsuit was not directed at Weber or Barbee individually and that the lawsuit "would not cost either one cent." (*Id.*; *see also id*. ¶¶ 5-6.) Those same plaintiffs represented that their lawyers had promised that the litigation would cause no harm to the individual defendants. (*Id.*)

In the face of these facts, plaintiffs' counsel cannot possibly have complied with the Rule 11 obligation to ensure that the allegations against Weber and Barbee were based on more than mere speculation.  A simple inquiry by plaintiffs' counsel would have revealed that the people who live in Bagley did not believe that Barbee or Weber bore responsibility for the high water.  (Rita Weber Aff. ¶¶ 4-6, *id.* Ex. A.)

In fact, the lawyers even told their own clients that the claims against Barbee and Weber are not intended to impose individual liability but were included for some other "reason" – *i.e.* forum manipulation.  (*Id.*)  The uncontroverted evidence compels the conclusion that Barbee and Weber were fraudulently joined for the singular purpose of defeating federal jurisdiction.

### C.      Barbee and Weber could be no more than nominal defendants

Notwithstanding plaintiffs' pleading fraud, neither Barbee nor Weber is a real party in interest; thus their citizenship does not affect the exercise of diversity jurisdiction.  *See*, *e.g.*, *Olson v. Lacey*, No. 06-C-456-S, 2006 WL 3017486, *2-3 (W.D. Wis. Oct. 19, 2006).  "In determining whether diversity jurisdiction exists courts must look beyond the named parties and consider only the citizenship of the real parties in interest."  *Id.*; *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).  When a defendant is merely a nominal party, that party's citizenship does not bear upon the availability of diversity jurisdiction.  *Id.*

The answer to the real party in interest inquiry depends on the essential nature and effect of the proceedings.  *Olson*, 2006 WL 3017486 at * 3; *see also Adden v. Middlebrooks*, 688 F.2d 1147, 1150 (7th Cir. 1982).  Real parties in interest must have a

"substantial stake in the outcome of the case." *State of Wisconsin v. Abbott Labs.,* *Amgen, Inc.*, 341 F. Supp. 2d 1057, 1061 (W.D. Wis. 2004) (citation omitted). "A real-party-in-interest defendant is one who, according to applicable substantive law, *has the duty sought to be enforced or enjoined*." *Eichmann v. Hunter Automated Mach., Inc.*, 167 F. Supp. 2d 1070, 1072 (E.D. Wis. 2001) (emphasis in original).

The complaint is devoid of allegations against either Barbee or Weber in their individual capacities. Instead, the complaint is replete with accusations about Barbee and Weber, as railroad "supervisory" employees, causing the flood. (*See*, *e.g.*, Compl. ¶¶ 16, 17, 18, 19.) Without a single averment that Barbee and Weber incurred individual liability or that they acted outside the course and scope of their employment, plaintiffs have not stated a viable claim against those defendants in their individual capacities. *See*, *e.g.*, *Shashoua v. Quern*, 612 F.2d 282, 284 (7th Cir. 1980) (action against defendant in personal capacity failed because complaint failed to allege defendant's personal involvement).

The complaint never charges Weber and Barbee with one misdeed that is different or distinct from what the railroad is said to have done wrong. (*See generally* Compl.) Under such circumstances, what is the basis for suing these employees individually, other than their non-diverse citizenship? Besides that, Weber is a bargaining unit employee who pursuant to the collective bargaining agreement is prohibited from exercising supervisory authority. (*See* Borg Aff. Ex. 6 at Rules 1, 6 & 16 (CBA inapplicable to employees "assigned to an official or supervisory position").)

And even if the complaint made allegations against Barbee and Weber in their individual capacities, plaintiffs acknowledged that the two are only nominal defendants and that the lawsuit was brought to seek redress against the railroad and its insurance company, not the individual employees.  (Rita Weber Aff. ¶¶ 4-6; *id.* Ex. A.)  Having admitted that the claims against Barbee and Weber "would not cost either one cent," plaintiffs have disclaimed any intent to hold the individuals accountable for damages that might have been sustained.  (*Id.*)  Barbee and Weber therefore do not have a stake in the outcome of the case.  This nominal party status, even in the absence of fraudulent joinder, requires that Barbee and Weber's citizenship be disregarded for diversity jurisdiction purposes.

**D.     Diversity Jurisdiction exists**

Diversity jurisdiction is invoked by a lawsuit between citizens of different states when the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  As alleged in the complaint and notice for removal, plaintiffs are all citizens of Wisconsin and BNSF is a Delaware corporation with its principal place of business in Texas.  (Compl. ¶¶ 9-15; Notice of Removal ¶¶ 9-10.)  Because Barbee and Weber's citizenship is irrelevant to the jurisdictional analysis, complete diversity prevails.

Plaintiffs do not dispute that the amount of controversy exceeds $75,000.  (*See id.* ¶ 21; *see also* Pls.' Mem. in Supp. of Mot. to Remand.)  Each plaintiff seeks to recover compensatory, incidental, consequential, treble, and punitive damages, in addition to fees and costs.  (*See* Compl. ¶ 67.)  According to the complaint, plaintiffs' damages include

the loss of personal property, the diminution of real property market value, the loss of use of those properties, and clean-up and restoration expenses.  (*Id.*)

Irish told Rita Weber that many class members "lost their homes and all or part of their possessions."  (Rita Weber Aff. ¶ 4, Ex. A.)  For example, Irish's property, located at 350 Riverview Lane, had a 2007 assessed value of $55,600.  (*See*, *e.g.*, Borg Aff. Exs. 4-5.)  Based on Irish's hopes to be awarded the full value of his real and personal property losses, plus treble and punitive damages, the amount in controversy unquestionably exceeds the $75,000 threshold.  *See, e.g.*, *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211 (7th Cir. 1995) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount."); *see also Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (removing party must show a "reasonable probability" that the amount in controversy exceeds $75,000).

The same can be said for named plaintiff Denise Marshall, whose real property alone had a 2007 assessed value of $35,000.  (Borg Aff. Exs. 4-5.)  And the plaintiffs who supposedly lost their homes are certainly not going to limit their claims for damages to the notoriously understated assessed values, not to mention the value of the personal property that became submerged and the mold growth that has spawned.  (*See id.*)

Because the plaintiffs have not established to a legal certainty that the amount in controversy is less than $75,000 for each potential plaintiff – indeed the complaint does not cap damages at all – any challenge to diversity jurisdiction fails.  *See Oshana v. Coca-Cola*, 472 F.3d 506, 511 (7th Cir. 2006) (once defendant demonstrates requisite

amount in controversy, a plaintiff can defeat diversity jurisdiction only if it is legally certain that the amount in controversy is less than requisite amount); *see also Mehl v. Canadian Pac. Ry.*, No. 14-02-09, 2004 WL 2554589 (D.N.D. Nov. 8, 2004) (to warrant dismissal "it must appear to a legal certainty that the claim is for less than the jurisdictional amount" (emphasis added)).   Diversity jurisdiction lies; remand would be improper.

## III.   CAFA CONFERS JURISDICTION

### A.   CAFA's prerequisites are satisfied

CAFA vests the federal courts with original jurisdiction over class action lawsuits in which: (1) the aggregate amount in controversy exceeds $5,000,000; (2) one plaintiff is diverse from any defendant; (3) the primary defendants are not government entities; and (4) the number of members of the proposed class is 100 or more.   28 U.S.C. §§ 1332(d)(2), (d)(5); *see Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006).   Conceding the first three categories, plaintiffs dissemble that membership in the proposed class is fewer than 100.[4]

---

[4]      In their Motion to Remand, plaintiffs seemed to dispute that the amount in controversy exceeds $5,000,000.  (*See* Motion to Remand at 4.)  Notably, plaintiffs did not brief that issue.  (*See generally* Pls.' Mem. in Supp. of Mot. to Remand at 7.)

There can be no dispute that the damages sought exceed CAFA's amount in controversy criterion.  The law only requires defendants to show with reasonable probability that the aggregate amount in controversy is $5,000,000.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448-49 (7th Cir. 2005).  As alleged in the complaint, the class plaintiffs seek compensatory, incidental, consequential, treble, and punitive damages – in addition to attorneys' fees and costs.  The tax assessed value of the real property located within the geographical class description alone exceeds $9,000,000.  (Borg Aff. Exs. 4-5.) Based on Irish's representations that most class members lost their homes and all personal possessions, if plaintiffs prevailed recovery would unquestionably exceed

Yet the complaint broadly describes a proposed class that would number among its members all persons, including occupants and owners, governmental organizations, non-profit organizations, and businesses, including insurers and subrogees, who were damaged by the flood.  (Compl. ¶ 36.)  In addition to that, class membership would be extended to "minor children, relatives, and other home companions."  (*Id.* ¶ 37.)  Finally, plaintiffs demarcate the geographical boundary of the class to encompass persons "who were and are situated upstream and/or tributary to the Glass Hollow Drain as it attempts to flow through the Burlington Northern Santa Fe Railroad Bridge Trestle [] in and near the Village of Bagley."  (*Id.* ¶ 38.)

The complaint lists "at least" 74 extant members.  No limit, however, is specified, and the inclusion of just 26 more as yet unnamed members would attain the 100 member threshold.

The public property records reveal that there are 286 separately deeded properties within the geographical class area defined by the complaint.  (Borg Aff. Exs. 4-5.)  These 286 deeded properties are owned by 369 different persons and entities.[5]  (*Id.*)  And that

---

$5,000,000.  (*See id.*)  "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction."  *Brill*, 427 F.3d at 449.  Plaintiffs do not come close to showing to a "legal certainty" that damages sought by the class do not eclipse $5,000,000.  *See id.* (reasonable probability that amount in controversy exceeded $5,000,000 sufficiently established).

[5]     Based on the class allegations, each individual or entity is included in this calculation.  For example, a husband and wife who own a parcel are counted as two proposed class members, not one.  (*See* Borg Aff. Exs. 4-5; *see also* Compl. ¶¶ 40-41 (calculating husband and wife property owners as two class members).)

number would only reflect property owners whose parcels were on the tax rolls. Governmentally owned and other tax exempt properties would not be listed, but the class nevertheless seeks to enlist those owners. (*Id.*)  The class definition and the facts about how many properties and property owners are within the geographical area establish that if certified the class could not help but exceed 100 members. (*Id.*)

Adding to those numbers the class is said to include not just property owners, but also insurers and subrogees, as well as minor children, relatives, and other home companions who were damaged by the flood.  Plaintiffs' brief in support of remand discounts the inclusion of minor children and the like in the class, but those members are explicitly encompassed by the class definition.  (Compl. ¶¶ 35-38.)  The complaint simply cannot be read to define a class that does not exceed 100 members.  (*See id.*; *see also* Borg Aff. Exs. 4-5.)  CAFA's prerequisites therefore are satisfied.

## B.   CAFA's exceptions do not apply

The district court must decline to exercise jurisdiction if either the "home-state controversy" or the "local controversy" exception applies.  *See Hart*, 457 F.3d at 679. The "home-state controversy exception" is implicated when two-thirds or more of the proposed class and the primary defendants are citizens of the forum state.  28 U.S.C. § 1332(d)(4)(B); *Hart*, 457 F.3d at 679.  The "local controversy" exception calls for remand when four elements are met:

> (1) more than two-thirds of the members of the proposed plaintiff class are citizens of the original filing state; (2) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant relief, whose alleged conduct forms a significant basis of the asserted

> claims, and who is a citizen of the original filing state; (3) the principal injuries were incurred in the original filing state; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the case.

*Hart*, 457 F.3d at 679 (emphasis added); 28 U.S.C. § 1332(d)(4)(A).

Plaintiffs must demonstrate that they qualify for one of these exceptions. *See Hart*, 457 F.3d at 679-80 ("the party seeking to take advantage of the home-state or local exception to CAFA jurisdiction has the burden of showing that it applies"). "Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members." *Id.* at 681 (quoting S. Rep. 14, 109th Cong. 1st Sess. 43 (2005), 2005 U.S.C.C.A.N. 3, 41). Plaintiffs cannot satisfy the requirements of either exception.

### 1. No home-state controversy

#### a. Not all "primary defendants" are residents of Wisconsin

Plaintiffs' reach for the home-state controversy exception comes up short because the characterization of Barbee and Weber as "primary defendants" is almost laughable. Besides that the statute specifies that <u>all</u> primary defendants must be a resident of the forum state:

> As evident from the statute's use of the phrase "*the* primary defendants" rather than "*a* primary defendant", "the plain language of the statute requires remand only when *all* of the primary defendants are residents of the same state in which the action was originally filed."

*Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (quoting *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006)).

"The plain language of the home state controversy section demonstrates that Congress intended that the State citizen requirement pertain to all primary defendants." *Brook v. UnitedHealth Group Inc.*, No. 06-CV-12954, 2007 WL 2827808, at *6 (S.D.N.Y. Sept. 27, 2007); *see also Frazier v. Pioneer Americas, LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (interpreting § 1332(d)(5)(A) to apply to all primary defendants).  In both *Anthony* and *Brook*, the home-state controversy exception was rejected because three of the primary defendants did not reside in the forum state.  535 F. Supp. 2d at 517; 2007 WL at 2827808 at *6.  The railroad is unquestionably <u>the</u> primary defendant, and BNSF is not a resident of Wisconsin.

BNSF's primary defendant status cannot be seriously disputed.  Although the Seventh Circuit has yet to interpret the term other courts describe a primary defendant as one who "has the greater liability exposure," "is the most able to satisfy a potential judgment," "is sued directly," or "is the subject of a significant portion of the claims asserted by plaintiffs."  *Brook*, 2007 WL 2827808 at *5 (citing cases).  Even plaintiffs agree that a primary defendant has a "dominant relation to the subject matter of the controversy."  (Pls.' Mem. in Supp. of Remand at 11.)  *See also Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 WL 3392752, at *16 (S.D. Ill. Nov. 22, 2006).

The complaint unambiguously asserts claims against BNSF.  Each allegation is made against BNSF directly.  (*See generally* Compl.)  Plaintiffs challenge the propriety

of BNSF's conduct and seek relief against "ALL DEFENDANTS RELATING TO ALL COUNTS AND CLAIMS." (*Id.* at 19.)   The complaint manifestly seeks to recover against BNSF, and if plaintiffs prevail, BNSF would be liable to plaintiffs. *See Anthony*, 535 F. Supp. 2d at 517-18 (focusing on pleading allegations; complaint alleged direct liability against all four named defendants); *Brook*, 2007 WL 2827808 at *6 (comparison of liabilities between five defendants "reveal[ed] no distinction between them" and there could be no subset of defendants as all class members had "the same claims against all defendants").

And, as plaintiffs have admitted the primary defendant – at the very least for recovery purposes – is the railroad. (Rita Weber Aff. ¶ 4, Ex. A.)  As relatively low level management and hourly railroad employees, Barbee and Weber could not begin satisfying the judgment that plaintiffs hope to be awarded.  Because not all primary defendants are residents of Wisconsin, the home-state controversy exception is not germane.

b.   Barbee and Weber are not "primary defendants"

The facts about the individual defendants' responsibilities coupled with class representative admissions further establish that Barbee and Weber are not "primary defendants."  Rita Weber was guaranteed that plaintiffs would not collect one cent from Barbee and Weber; rather the primary focus of this lawsuit is BNSF.  (Rita Weber Aff. ¶¶ 4-6, *id.* Ex. A.)  And obviously if plaintiffs were to prevail, the recovery could only be borne by BNSF.  Neither Weber nor Barbee could ever pay the damages sought. *See*

*Brook*, 2007 WL 2827808 at *5 (primary defendant is subject of significant portion of the loss; primary defendant is one "most able to satisfy a potential judgment").

If that were not enough, neither Barbee nor Weber has a "dominant relation to the subject matter of the controversy."   (*See* Pls.' Mem. in Supp. of Remand at 11.) Plaintiffs' claims are premised on defendants' failure to "properly and adequately plan, design, construct, guard, inspect, investigate, clean and maintain the Burlington Northern Trestle." (Compl. ¶ 64.)  The complaint fingers the wrong BNSF employees to redress any supposed breach of bridge oversight duties.  (Haas Aff. ¶¶ 3-4; Welte Aff. ¶¶ 3-4.) Even if plaintiffs could state direct claims against BNSF employees for conduct within the scope of their employment, Barbee and Weber are not the ones to blame.  In sum there is no way to fit the lawsuit into the home-state controversy exception.

### 2.    Local controversy exception is equally inapplicable

Contradicting promises made by class representatives to Rita Weber, plaintiffs' brief contends that significant relief is sought from Barbee and Weber and that the actions of these two defendants are a significant basis for plaintiffs' claims.  (Pls.' Mem. in Supp. of Remand at 9.)  Both assertions are fatuous.

Case law interpreting "significant relief" and "significant basis" is sparse.  Most courts have turned to the Senate Committee Report for interpretive guidance.  *See Laws v. Priority Trustee Servs. of N.C.*, *L.L.C.*, No. 3:08-CV-103, 2008 WL 3539512, at *5-6 (W.D.N.C. Aug. 11, 2008); *Kearns v. Ford Motor Co.*, No. 05-5644, 2005 WL 3967998, at *9-11 (C.D. Cal. Nov. 21, 2005).  This legislative guidance explains that this exception "targets local defendants that are the primary focus of plaintiff's claims, not just a

peripheral defendant." *Laws*, 2008 WL 3539512 at *5 (internal quotations omitted); S. Rep. No. 109-14, at 40 (2005).

"The local defendant must be a target from whom significant relief is sought by the class as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class." *Laws*, 2008 WL 3539512 at *5 (internal citations and quotations omitted).  The conduct of "an isolated role player" would be insufficient to form a significant basis for class's claims.  *Kearns*, 2005 WL 3967998 at *11.

The committee explained the "significant" relief and conduct elements as follows:

> [T]here must be at least one real local defendant. By that, the Committee intends that the local defendant must be a primary focus of the plaintiffs' claims—not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class. For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself. Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted. <u>At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.  In this instance, the real target in this action (both in terms of relief and alleged conduct) is the insurance company, and if that company is not local, this criterion would not be met.</u>

S. Rep. No. 109-14 at 40 (emphasis added).

The inquiry into whether the class seeks significant relief from an in-state defendant "includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Robinson v. Cheetah Transp.*, No. A06-0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006) (emphasis added).

Neither Barbee nor Weber's actions formed a significant basis for plaintiffs' claims. Again, Haas and Welte – not Barbee and Weber – are charged with bridge and bridge trestle maintenance. (Haas Aff. ¶¶ 3-4; Welte Aff. ¶¶ 3-5.) And not even Haas and Welte were involved in planning, designing, and constructing the bridge. Yet, plaintiffs do not seek any relief from the railroad employees, who if any wrong was done, did it. Besides that, plaintiffs assured Weber and Barbee that the lawsuit would only recover against the railroad and its insurance company. (Rita Weber Aff. ¶¶ 4-6, *id.* Ex. A.) Given the magnitude of the damages caused by the flood, plaintiffs "will seek most of [their] relief from those who are capable of paying it: the corporate defendants." *Robinson*, 2006 WL 468820 at *4.

Plaintiffs could not say with a straight face that all of the requested monetary relief would not be sought from the railroad. *Id.* (even though the individual tortfeasor may have substantially contributed to the alleged damage, plaintiffs would seek significant relief from corporate defendants who had ability to pay and thus local controversy exception inapplicable); *Laws*, 2008 WL 3539512 at *5-6 (out-of-state defendant had

capacity to pay judgment and thus local-controversy exception was not implicated).  This action is anything but a local controversy exception.

### C.    The interests of justice do not justify remand

As a final bid to evade federal jurisdiction, plaintiffs pronounce that the Court should, as a matter of discretion, decline jurisdiction.  28 U.S.C. § 1332(d) (discussing permissive home-state controversy exception).  But the exercise of such discretion would be proper only if (1) more than one-third and less than two-thirds of the proposed plaintiffs are citizens of the forum state and (2) the primary defendants are citizens of the forum state.  *Id.*  Because plaintiffs cannot, in good faith, dispute that BNSF is the primary defendant and not a Wisconsin resident, the interests of justice do not warrant remand.  *See id.*; *see also Anthony*, 535 F. Supp. 2d at 515; *Cooper v. R.J. Reynolds Tobacco Co.*, No. 308-CV-153-J-32HTS, 2008 WL 4093715, *4 n.3 (M.D. Fla. Aug. 29, 2008) (discretionary denial of jurisdiction not permitted because not all primary defendants were residents of forum state).

## IV.    SANCTIONS ARE NOT JUSTIFIED

The Court has subject matter jurisdiction over this dispute; removal was proper. An award of fees and costs is therefore not authorized.  28 U.S.C. § 1447(c).

But regardless of the propriety of removal, an award would not be justified.  The assessment of fees and costs would be appropriate only if the removing party lacked an "objectively reasonable basis" for seeking removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The objective reasonableness standard is satisfied in the Seventh Circuit if clearly established law at the time of removal does not foreclose

removal jurisdiction.  *See*, *e.g.*, *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792-93 (7th Cir. 2007) ("District court decisions, let alone conflicting district court decisions, do not render the law clearly established.").  CAFA's jurisdictional effect is still being vetted, and the available precedent clearly supports removal of this case.  *Id.* (rejecting motion for fees and costs on remand of CAFA removal because district court decisions supported removal and thus clearly established law did not foreclose jurisdiction).  Likewise, fraudulent joinder standards reveal that plaintiffs – not defendants – are the ones who have disingenuously attempted to manipulate jurisdiction.  Plaintiffs' claim for costs and fees fails before it begins.

## V.    <u>ORAL ARGUMENT IS REQUESTED</u>

Defendants request oral argument and an evidentiary hearing.  This motion presents a fact intensive inquiry into plaintiffs' motives, as well as the scope of the various defendants' responsibilities.  In addition to that the determination of the number of class members encompassed by the class definition would benefit from the submission of evidence.  When the Court is presented with factual disputes – such as this motion raises – an evidentiary hearing is proper.  *In re Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 671 (7th Cir. 2001) (ordering trial court to conduct evidentiary hearing on remand motion).

## CONCLUSION

Subject matter jurisdiction has been properly invoked.  BNSF is a diverse defendant, who by plaintiffs' own admission, would bear the brunt of any recovery. Barbee and Weber have no connection to the underlying events and even so are nominal defendants whose joinder is of no moment for diversity jurisdiction purposes.  The complaint, as pled, satisfies CAFA's prerequisites for removal, further supporting this Court's exercise of jurisdiction.

This lawsuit must remain where it belongs:  in this unbiased federal forum.  An out-of-state defendant's avoidance of being subjected to the hometown airing of frivolous claims in front of the father of an attorney in the law firm that is funding the case presents a paradigm of why Congress created federal removal jurisdiction.

Dated:   October 17, 2008          **BRIGGS AND MORGAN, P.A.**


By: <u>s/ Timothy R. Thornton</u>
      Timothy R. Thornton (#109630)
      Molly M. Borg ( #0331922)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2157
(612) 977-8400

**ATTORNEYS FOR BNSF RAILWAY COMPANY, BURLINGTON NORTHERN SANTA FE CORPORATION, WILLIAM BARBEE AND FRANCIS WEBER**