### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN
### COURT FILE NO.: 08-469

Kenneth Irish, et. al.,

        Plaintiffs,

v.

BNSF Railway Company, et. al.

        Defendants.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**

### INTRODUCTION

In their joint Response Brief, Defendants pull out all the stops in an attempt to frustrate Plaintiffs' choice of forum. Defendants attempt to unilaterally increase the size of Plaintiff's class. Further, through the use of self-serving affidavits, Defendants attempt to narrowly define the roles of BNSF employees Barbee and Weber such that they are ostensibly only capable of reporting problems with the tracks themselves and not the massive amount of sediment plugging a trestle below said tracks.

Defendants do not stop there, however. They go on to state that Plaintiffs must have had a nefarious purpose in filing their action in the very county in which 100% of the damage occurred; that Plaintiffs' law firm is somehow in cahoots with Grant County Circuit Court Judge George S Curry, in some grand scheme to "hometown" BNSF. Never mind that Defendants have no factual basis for such inappropriate, unprofessional, and libelous allegations. For the reasons set forth below, Plaintiffs' reiterate the following:

1

(1) Defendants Barbee and Weber have not been fraudulently joined as and have responsibility as agents of BNSF;

(2) The Class Action Fairness Act does not apply as Plaintiffs' class clearly and unequivocally includes less than 100 claimants; and

(3) This action is properly placed in Grant County, which is the location of the negligence; the location of 100% of the damage claimed by Plaintiffs', a location in which BNSF does substantial business; and the current residence of more than 75% of the claimants.

(4) Even if there were 100 claimants, both the local and home state exceptions apply for the court to grant discretionary remand, as previously briefed by Plaintiffs.

Accordingly, Plaintiffs pray that this court remand this action to the Grant County Circuit Court for further proceedings as multiple, independent grounds for remand exist. Further, Plaintiffs pray that the District Court enter an award granting Plaintiffs their costs and attorney fees incurred for Defendants' wrongful removal, pursuant to 28 U.S.C. §1447(c).

## ARGUMENT

### I.   DEFENDANTS' ALLEGATIONS OF IMPROPRIETY ON THE PART OF PLAINTIFFS' LAW FIRM ARE BASELESS, IMMATERIAL AND SHOULD BE GRANTED NO WEIGHT BY THIS COURT

Defendants state in their Brief in Opposition to Motion to Remand:

So as to secure the hometown advantage, this action was filed in Grant County Circuit Court, and two BNSF employees, who not coincidentally live in Wisconsin, were named.  Plaintiffs' joinder stratagem blatantly attempts to frustrate BNSF's right to this federal forum.

Defendants' … Brief in Opposition to Motion to Remand, at p. 1-2.

2

While this court should take jurisdiction when appropriate, Defendants mislead the court by misrepresenting that it has a "right to this federal forum." (*See* Defendants'…Brief in Opposition to Motion to Remand, at p. 2.) Plaintiffs accurately described the standard of review for a motion to remand for lack of subject matter jurisdiction in their initial Memorandum of Law. Taken from Plaintiffs' initial filing:

> "When the court's exercise of jurisdiction is challenged, **the burden of establishing federal jurisdiction rests on the party seeking to preserve removal.**" Shaw v. Dow Brands, Inc., 994 F.2d 364, 366-67 (7th Cir. 1993). **"Courts interpret the removal statute narrowly and presume that the plaintiff may choose his forum."** Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). **"Any doubts regarding jurisdiction should be resolved in favor of remanding the action to state court."** Ibrahim v. Old Kent Bank, No. 99 C999, 1999 WL 259944, at \*2 (N.D. Ill. Apr. 8, 1999) (*citing* Jones v. General Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976)).

Plaintiffs' Memorandum of Law in Support of Motion to Remand for Lack of Subject Matter Jurisdiction, at p. 2.(Emphasis added.)

Defendants would have this court believe that they are somehow entitled to a federal forum over a state court action based entirely on state law, in which 100% of the damage occurred in one small town in Grant County, Wisconsin, in which the class includes less than 100 claimants and in which Wisconsin resident defendants have responsibility for individual negligence. For the reasons already stated in Plaintiffs' first submission to this court, this is not the current state of the law.

Even more troubling is Defendants' new 'argument' that the Plaintiffs have somehow engaged in a nefarious plot to venue this action in Grant County, Wisconsin, where Circuit Court Judge George S. Curry is one of two presiding judges. Of course, Plaintiffs did not choose the location of 100% of the damage caused by BNSF in this

3

action. Further, Plaintiffs also did not choose the location of BNSF's negligence at the

trestle in Bagley, Grant County, Wisconsin.

These facts clearly demonstrate that Grant County Circuit Court is not only a

proper venue for this action, but that Grant County is the *only* appropriate venue for this

action. Still Defendants state the following in their Brief in Opposition to Motion for

Remand:

> When it comes to the venue selection in this case there can be little doubt about
> the favorability of the local forum when the state trial judge who has so far
> declined to recuse himself is the father of an attorney in plaintiffs' law firm.

Defendants' ... Brief in Opposition to Motion to Remand, at p. 11.

Further, in concluding, Defendants further state:

> An out-of-state defendant's avoidance of being subjected to the hometown airing
> of frivolous claims in front of the father of an attorney in the law firm that is
> funding the case presents a paradigm of why Congress created removal
> jurisdiction.

Defendants' ... Brief in Opposition to Motion to Remand, at p.30.

While it is difficult to weed through the complicated run-on argument put forth by

Defendants, perhaps this Court sees what plaintiffs see. That is an allegation that Hon.

Judge George S. Curry would somehow grant special treatment to plaintiffs' class

because his son practices criminal and family law at Kopp, McKichan, Geyer, Skemp &

Stombaugh, LLP. (*See* Affidavit of Sheila Stuart Kelley, at ¶3.) While merely

responding to this allegation is distasteful enough, let us set the record straight. Nathan

Curry has never had any involvement in this case, will not have any involvement in this

case, nor is he even a part of the civil litigation group within the firm. (*See* Affidavit of

Sheila Stuart Kelley, at ¶¶4,5.) As noted above, Attorney Nathan Curry practices family

law and criminal defense at Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP. (*See*

4

Affidavit of Sheila Stuart Kelley, at ¶3.)  Plaintiffs do not speak for Judge Curry with

respect to his decision-making process regarding recusal.  However, given the nature of

Attorney Curry's practice, no decision that Judge Curry could make on this case would

have any effect on Attorney Nathan Curry, his practice, or his own family and criminal

defense clients.

As this District Court is aware, Judge Curry is one of two presiding judges in

Grant County Circuit Court, along with Hon. Judge Robert P. VanDeHey.  The

assignment of a particular judge on a case in Grant County is not up to the parties filing

the action.  Further, if Plaintiffs wished to increase the value of the case, then placing

venue in Dane County Circuit Court would have been the prudent course of action, as

Dane County juries routinely award larger verdicts.

Without any factual basis for doing so, Defendants despicably attempt to impugn

the integrity of the Honorable George S. Curry, his court and this law firm.  Defendants

raise the specter of impropriety in an attempt to tip the scales towards this court

exercising jurisdiction over the matter.  Defendants' conduct is unprofessional,

inappropriate, and in Defendants' own words, should be "repudiated."

## II.    PLAINTIFFS' CLASS INCLUDES LESS THAN 100 CLAIMANTS, AND
## AS SUCH, THE CLASS ACTION FAIRNESS ACT DOES NOT APPLY AS
## A MATTER OF LAW

It is undisputed that Plaintiffs' class would have to include 100 or more claimants

for the Class Action Fairness Act to apply to provide a basis for removal.  28 U.S.C.

§1332(d)(2).  This is exactly why Defendants work so hard to artificially expand the size

of Plaintiffs' class. (*See* Affidavit of Molly Borg, Exs. 4-5.)  Plaintiffs' law firm, in

seeking to represent all Bagley residents that have suffered damage related to the

5

negligently maintained trestle at issue, has seen no more additions to the size of Plaintiffs' class in approximately a year. (See Affidavit of Sheila Stuart Kelley, at ¶7.) Plaintiffs' class includes 53 persons claiming damage to property. (See Affidavit of Sheila Stuart Kelley, at ¶6.) Plaintiffs' named all 53 members in its Complaint. (Complaint, at ¶40). Plaintiffs' pled generally to protect the interests of the class, in the off-chance that the class could expand over time. However, there has been no such expansion. (See Affidavit of Sheila Stuart Kelley, at ¶7.)

It is important to note the type of Plaintiffs' class which is seeking damages in this matter. This is not the type of open-ended Plaintiffs' class in which one is a member, for example, if she used a particular contact solution between the years 2002-2004. This is a Plaintiffs' class that requires members from a small town to come forward and claim property damage. If there were more potential plaintiffs out there who (1) suffered property damage and (2) were willing to be a part of this class and join in a lawsuit, rest assured, they would have been included by now. As a result, there can be no legitimate dispute as to the actual size of Plaintiffs' class. It is significantly below the jurisdictionally-required minimum amount of 100 class members. 28 U.S.C. §1332(d)(2). As a result, the Class Action Fairness Act does not apply to these facts as a matter of law, no matter how many Village of Bagley maps Defendants submit to the Court. Accordingly, the District Court should remand this action to the Grant County Circuit Court.

III.    **SELF-SERVING CORPORATE AFFIDAVITS ASIDE, BARBEE AND WEBER, AS AGENTS OF BNSF, HAVE RESPONSIBILITY IN PLAINTIFFS' STATE COURT LAWSUIT**

Defendants allege that Plaintiffs have fraudulently joined Defendants Barbee and

Weber. For this, BNSF relies on job descriptions put forth by itself, within the Affidavits

of Barbee and Weber that seek to exclude from their qualifications the ability to become

aware of problems with debris gathering underneath the very tracks that they are

qualified to evaluate. (See Affidavits of William Barbee, Francis Weber, at ¶4.)  BNSF

also relies on legal representations made by individual non-lawyer class members to

Defendant Weber and his family, apparently for the proposition that Plaintiffs' law firm

must be 'guilty' of fraudulent joinder.  The applicable law on fraudulent joinder is set

forth in Plaintiffs' initial Memorandum of Law and we direct the court to the same.

A.    **Despite the Self-Serving Affidavits of Weber and Barbee, these BNSF Employees Still Have Responsibility in this Lawsuit and are Properly Named**

BNSF submits to the Court the Affidavits of William Barbee and Francis Weber,

which purport to exempt each employee from any possibility of liability under these

facts. By way of their respective Affidavits, Barbee and Weber both disavow any

responsibility with respect to bridges or bridge trestles:

> 4.    My job responsibilities do not include the inspection, maintenance or monitoring of bridges or bridge trestles.  Those responsibilities belong to Jeffry Haas and Louis Welte.

(Affidavit of William Barbee, Affidavit of Francis Weber, at ¶4 (of both)).

Further, Defendants concede that BNSF employee Defendants Barbee and Weber

have duties of oversight and maintenance related to BNSF's right of way through Bagley,

7

Wisconsin. (See Affidavits of William Barbee, Francis Weber.) Defendant Weber asserts

the following:

> 3.       As Flagman, my job responsibilities include maintenance of the track
> infrastructure, including the construction, inspection and repair of the
> track; *cutting brush, trees and vegetation and clearing the right-of-way of*
> *litter and cargo spillage;* and maintenance of the trackbed, including
> cutting rail, manually compressing ballast, removing and installing ties,
> and lifting, rolling and adjusting rails.

Affidavit of Francis Weber..., at ¶3.(Emphasis added.)

> Defendant Barbee describes his job duties thusly:

> 3.       As Roadmaster, my job responsibilities include planning, coordinating,
> prioritizing and supervising maintenance crews to ensure track structure is
> maintained and upgraded to meet BNSF and federal standards. *I also*
> *work with local, county and state agencies on weed control, grade*
> *crossing and other problems to create good public relations. I perform*
> *track inspections by riding trains, walking, and hi-rail.* I also maintain
> contact with field personnel to ensure compliance with quality and safety
> guidelines.

Affidavit of William Barbee..., at ¶3.(Emphasis added.)

Somehow, Defendants Weber and Barbee are argued to have no possible

responsibility as a matter of law. However, each BNSF employee defendant's own

affidavit gives cause for responsibility. A jury could reasonably find Defendant Weber to

have responsibility for the massive amount of damage caused by years of neglect. It is

undisputed that Defendant Weber has lived in Bagley for years. It is undisputed that he is

in charge of clearing the right of way of litter and cargo spillage. (See Affidavit of

Francis Weber..., at ¶3.) Yet, BNSF argues that it is impossible for a jury to hold Weber

responsible for not at least reporting to someone, anyone, the massive amount of

sediment build-up at the trestle at issue. Apparently, his eyes are only capable of viewing

obvious problems on the tracks, not below them. Defendants would have this Court rule,

8

as a matter of law, that Weber could not have at least reported massive sediment build-up to whatever appropriate BNSF employee that *was qualified* to address it.  This court is not to weigh the merits of plaintiffs' claims. Without question, this is an issue of fact to be determined by the jury.

As for Barbee, he had duties related to "weed control" and "other problems to create good public relations." (*See* Affidavit of William Barbee...., at ¶3.)  A jury could reasonably find that Barbee should have been able to identify the very same obvious and ominous sediment build-up.  Yet again, Defendants would have this court rule that Barbee has no responsibility as a matter of law.  A jury will be the ultimate arbiter of these Defendants' respective responsibilities for the damage caused by Defendants. Whatever the jury decides, certainly, both Defendants are properly named as parties that may have responsibility for negligent conduct in this state court action.  (*See* Shannon v. City of Milwaukee, 94 Wis.2d 364, 289 N.W.2d 564 (1980).

**B.     Even if Deemed Relevant, the Legal Representations of Non-Lawyer Class Members do Nothing to Support Defendants' Allegations of Fraudulent Joinder**

Defendants include with their submissions a letter from an individual class member, Ken Irish, to Francis Weber. This letter is included for the likely purpose of attempting to "expose" Plaintiffs' law firm as engaging in the practice of fraudulent joinder.  As discussed above, despite the self-serving allegations of Defendants regarding specific employee roles, Defendants Weber and Barbee still have responsibility in this lawsuit and are properly named.

Even if Plaintiffs' law firm's alleged representations to its own clients is important to the court, nothing within Defendants' submissions generates any issue

9

material to the determination of Plaintiffs' Motion to Remand.  It is invariably true that

BNSF is likely, as in most *respondeat superior* cases, to indemnify its employee

defendants from any damages.  Plaintiffs have not heard and do not expect Defendants to

aver that this is not an accurate statement of Defendants' policy regarding allegations

against its individual employees.  Defendants in their Notice of Removal, even argued

that all potential liability of individual employees should be imputed to BNSF:

> These BNSF employees could have no duty to plaintiff other than as BNSF
> employees.  The complaint does not contend that any of these individual
> defendants acted beyond the scope of BNSF employment; accordingly any
> wrongful conduct by these alleged agents must be imputed to BNSF.

(*See* Notice of Removal, at p. 6.)

BNSF is clearly taking the position that all liability should be imputed to itself.

Yet, in Defendants' world, where left is right and down is up, simply communicating to

the clients that BNSF is likely to indemnify its own employees for any damages is

somehow an alarming and relevant fact.  This is yet another attempt to spin a simple,

uncontroversial fact into a negative and further sling unsubstantiated mud onto Plaintiffs'

law firm.  Defendants referenced representations made by individual Plaintiffs' class

members, Mr. Irish and Ms. Jackley.  However, individual non-lawyer members of a

class cannot be expected to understand the rules of pleading and practice in either state or

federal court.  They are not versed in the legal concepts of notice, *respondeat superior*, or

other legal duties.  Whatever representations they may have made are irrelevant to the

court's consideration of the issue of fraudulent joinder.  How any alleged comments

made by these plaintiffs who lack any ability to understand the legal issue of fraudulent

joinder is beyond Plaintiffs' comprehension.  Again, there are no depths too low for

Defendants, in seeking to avoid justice meted out by a jury of Plaintiffs' peers.

**IV.    DEFENDANTS' ARGUMENTS ON THE MERITS ARE
        INAPPROPRIATE ON A MOTION TO REMAND AND SHOULD BE
        STRUCK BY THE DISTRICT COURT**

At several points in Defendants'…Brief in Opposition to Motion for Remand,

Defendants discuss and argue the merits of the action regarding liability.  (*See*

Defendants' … Brief in Opposition to Motion to Remand, at p. 2, 3.)  These portions

should be struck as immaterial to the Motion to Remand currently before the court.

**V.    THE DISTRICT COURT SHOULD AWARD COSTS AND FEES TO
       PLAINTIFFS PURSUANT TO 28 U.S.C. §1447(c)**

Plaintiffs are seeking an award of costs pursuant to 28 U.S.C. §1447(c), which, as

noted in Plaintiffs' initial filing, reads, in pertinent part:

> An order remanding the case may require payment of just costs and any actual
> expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. §1447(c).

Defendants argue that costs are inappropriate here, even if removal is improper as

"the assessment of fees and costs would be appropriate only if the removing party lacked

an 'objectively reasonable basis' for seeking removal." Martin v. Franklin Capital Corp.,

546 U.S. 141 (2005).  Defendants cite a recent 7th Circuit decision, Lott v. Pfizer, Inc.,

492 F.3d 789, 792-93 (7th Cir. 2007), applying the Martin court's "objectively reasonable

basis" stated that if clearly established law at the time of removal pursuant to the CAFA

does not foreclose removal jurisdiction, then costs are inappropriate.  Lott, at 792-93.

In the case at bar, it is without reasonable dispute that Plaintiffs' class only

includes 53 members.  For this reason, there is no "objectively reasonable basis" in

Defendants' continued assertions that the Class Action Fairness Act applies to these facts.

Further, Defendants concede that BNSF employee Defendants Barbee and Weber have

11

duties of oversight and maintenance related to BNSF's right of way through Bagley, Wisconsin. (*See* Affidavits of William Barbee, Francis Weber.) Yet, even assuming that the self-serving affidavits accurately define employee roles, a jury could still reasonably find that Defendants Barbee and Weber, as agents of BNSF, should have least notified the appropriate BNSF employees of the clear danger of the increasing sedimentation at the BNSF trestle at issue. Defendant Weber, especially, as a long-time resident of Bagley, should have been acutely aware of the danger created by BNSF's long-time neglect of the trestle at issue. Defendant Barbee has been monitoring the tracks along the BNSF right-of-way in Bagley Wisconsin, since 1995. (See Affidavit of William Barbee, at ¶¶3, 5.) The evidence will show that the trestle at issue was almost completely plugged before the rain even began. Recall the language of the 7th Circuit, as noted in Plaintiffs' initial submission:

> Chrysler's theme is that because it removed the suit 'in good faith' it should not have been ordered to pay plaintiffs' legal expenses, even if removal was improper....[b]ut the foundation of Chrysler's argument – that §1447(c) authorizes sanctions against litigants that remove in 'bad faith' – is unsound. We held in Tenner v. Zurek, 168 F3d 328, 329-30 (7th Cir. 1999), that **§1447(c) is *not* a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party. An opponent's bad faith may strengthen the position of a party that obtained a remand, but it is not essential to an award, any more than under the multitude of other fee-shifting statutes.**

Garbie v. DaimlerChrysler Corp. 211 F.3d 407, 410. (7th Cir. 2000). [Emphasis added.]

The Garbie court continued:

> Because §1447(c) is a fee-shifting statute, the plaintiffs as prevailing parties are presumptively entitled to recover the attorneys' fees incurred in defending their award. Commissioner of INS v. Jean, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).... '[t]he rationale of fee-*shifting* rules is that the victor should be made whole-should be as well off as if the opponent had respected his legal rights in the first place...'...§1447(c) entitles plaintiffs to 'just costs and any actual expenses, including attorney fees, incurred as a result of the removal'- and plaintiffs' expenses on appeal, no less than their expenses in the district court,

were 'incurred as a result of the removal.' **Unjustified removal complicates and extends litigation; the American Rule requires parties to bear their expenses in one set of courts, but when their adversary wrongfully drags them into a second judicial system the loser must expect to cover the incremental costs.** Wisconsin v. Glick, 782 F.2d 670 (7th Cir. 1986). Cf. Continental Can Co. v. Chicago Truck Drivers Pension Fund, 921 F.2d 126 (7th Cir. 1990).

Garbie, at 411. [Emphasis added.]

This action has been wrongfully removed, and Plaintiffs, as the 'victor', should be made whole, as if Defendants had respected their legal rights in the first place. As such, Plaintiffs request an order of costs to be entered against Defendants for its wrongful removal.

## VI.    NEITHER AN EVIDENTIARY HEARING, NOR ORAL ARGUMENT ARE NECESSARY IN THIS CASE

Defendants have requested both oral argument and an evidentiary hearing. Plaintiffs feel that oral argument is unnecessary as the issues necessary for the court to make a determination on Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction have all been fully briefed. Oral argument would not materially add to or expound upon the legal issues before the court.

An evidentiary hearing is also entirely unnecessary. If BNSF were to call its own defendant employees, William Barbee and Francis Weber, they would likely testify in a manner consistent with their respective affidavits. And as discussed above, even if the testimony within said affidavits is uncontroverted, it is not enough for a ruling as a matter of law that either Defendant Barbee or Defendant Weber have been fraudulently joined. Hence, their testimony would serve no legitimate purpose.

With respect to any other potential factual issues, Defendants seem to be seeking privileged testimony regarding conversations between Plaintiffs' counsel and its class

13

members.  Even if privilege were not an issue, any representations made by individual members of plaintiffs' class are not relevant to the issue of fraudulent joinder, despite Defendants' repeated assertions to the contrary. A lay person's understanding of the rules of pleading and practice in class-action lawsuits is not material to this court's determination as to whether or not a state law cause of action can be made against either Defendant Barbee or Defendant Weber.

## CONCLUSION

For all the reasons stated in Plaintiffs' initial submission in support of this Motion to Remand, and for all other reasons stated herein, Plaintiffs pray that this court remand this action to the Grant County Circuit Court, and enter an award of costs and fees against Defendants for the wrongful removal of this action, pursuant to 28 U.S.C. §1447(c).

Respectfully submitted,

Dated: October 27, 2008

**KOPP, MCKICHAN, GEYER, SKEMP & STOMBAUGH, LLP**

By: /s/ Matthew Allen
Matthew Allen
Attorney I.D. #1046620
Tyler T. Kieler, Esq.
Attorney I.D. #01053559
Sheila Stuart Kelley
Attorney I.D. #1018962
44 E. Main St.
P.O. Box 253
Platteville, WI 53818
Telephone:  (608) 348-2615
Facsimile: (608) 348-2415
tylerk@kopplaw.net
matthewa@kopplaw.net
sheilak@kopplaw.net

Attorneys for Plaintiffs

14