IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH IRISH, DENISE MARSHALL,
ALLEN MOORE, and SCOTT STILLWELL
on behalf of themselves and all others similarly situated,
a class action,

                            Plaintiffs,

       v.

BURLINGTON NORTHERN SANTA FE RAILWAY
COMPANY, BURLINGTON NORTHERN SANTA FE
RAILWAY CORPORATION, WILLIAM BARBEE,
FRANCIS A. WEBER, JOHN DOE #1, JOHN DOE #2,
ABC INSURANCE COMPANY, DEF INSURANCE
COMPANY,

                        Defendants.

REPORT AND
RECOMMENDATION

08-cv-469-slc

---

REPORT

       This is the class action lawsuit by a group of citizens in the Village of Bagley blaming the

defendant railroad and its employees for the flood of 2007.  Plaintiffs filed their lawsuit in Grant

County Circuit Court; defendants promptly removed it to this court, fearing that they would get

homered and asserting fraudulent spoilation of diversity by plaintiffs.  Plaintiffs hotly dispute

these contentions.

       Before the court for report and recommendation is plaintiffs' motion to remand their case

to state court.[1]  Although plaintiffs' joinder of non-diverse defendants is not fraudulent, this case

*does* fall within the jurisdictional grant of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Therefore, I am recommending that this court deny the motion to remand and decline to award

plaintiffs their fees and costs.

---

    [1]  We are proceeding by way of report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B)
because the parties declined to consent to my jurisdiction over this case and no Article III Judge has yet
agreed to take this case.  In the absence of an assigned district judge, I am submitting this report to Chief
Judge Barbara Crabb for decision after the time for objections has run.

On May 16, 2008, the named plaintiffs filed this proposed class action for negligence and nuisance on behalf of a group of residents of Bagley, Wisconsin whose homes and property were damaged when Glass Hollow Creek flooded in July 2007, allegedly as a result of defendants' failure to clear obstructions from the trestle supporting a railroad bridge over Glass Hollow Drain.  On May 16, 2008, plaintiffs brought suit in Grant County Circuit Court.  The case was randomly assigned to the Hon. George S. Curry, who on May 20, 2008, notified the parties that his son, Nathan Curry, is employed as an attorney in the law firm representing plaintiffs in this lawsuit and invited the parties to file a motion for recusal if they deemed it necessary.[2]

On August 11, 2008, defendants removed this case to federal court.  Defendants argue that diversity jurisdiction exists either under 28 U.S.C. § 1332(a) or under the Class Action Fairness Act, now codified as 28 U.S.C. § 1332(d).  On September 22, 2008, plaintiffs filed a motion to remand their lawsuit to the Grant County Circuit Court.  Dkt. 12.

From the complaint and the documents submitted by the parties, and solely for the purpose of deciding this motion for remand, I draw the following facts:

ALLEGATIONS OF FACT

Plaintiffs Kenneth Irish, Denise Marshall, Hollie Moore and Scott Stillwell are residents and property owners in Bagley, Wisconsin.  They have brought suit on behalf of and as representatives of a class of persons who are residents and property owners in Bagley, Wisconsin.  The class described in the complaint includes those persons, including owners and occupants (including minor children, relatives and other home companions) and those governmental

---

[2]  I mention Judge Curry only because the parties do.  Because neither side accepted Judge Curry's invitation to seek recusal, there is no point speculating about what might have happened.

organizations, non-profit organizations and businesses situated upstream of and/or tributary to the Glass Hollow Drain near Bagley, whose property was damaged or harmed by flooding that occurred on July 17 and 18, 2007.  There are 286 deeded parcels owned by 369 people that fit within plaintiff's geographic definition of the class.   At the time of removal 53 persons within 33 households already had joined this class, and on plaintiffs' information and belief, at least another 25 Bagley households had been affected by the flooding.  *See* Complaint, Attachment A to removal petition (dkt. 1), at Section III, pp. 7-11.

Plaintiffs in their complaint seek damages for real property damage and destruction, reduced market value caused by the flood, damages for personal property damage, including the contents of all homes and motor vehicles, clean up and restoration expenses, damages for inconvenience, stress and other anxieties, punitive damages, and statutory treble damages for willful, wanton and reckless behavior by railroad employees under Wis. Stat. §195.35. Complaint, Exh. A to dkt. 1, at Section IX, pp. 19-20.  As of October, 2008, the assessed valuation of the parcels of property within the geographic boundaries set forth in the complaint totaled  $9,642,140.

Defendant Burlington Northern Santa Fe Corporation is a corporation with its headquarters and principal place of business in the State of Texas.  Defendant Burlington Northern Santa Fe Railway Company is a wholly owned subsidiary of Burlington Northern Santa Fe Corporation with its headquarters and principal place of business in the State of Texas.

Defendant Francis Weber, a resident of Bagley, Wisconsin, is employed by defendant Burlington Northern Santa Fe Railway Company as a flagman.  His job duties include maintenance of the track infrastructure, including the construction, inspection and repair of the track; cutting brush, trees and vegetation and clearing the right-of-way of litter and cargo

3

spillage; and maintenance of the trackbed, including cutting rail, manually compressing ballast, removing and installing ties, and lifting, rolling and adjusting rails.   Weber has no direct responsibility for inspecting or repairing railroad bridges or trestles.

Defendant William Barbee is a resident of Holmen, Wisconsin, and is employed by defendant Burlington Northern Santa Fe Railway Company as a roadmaster.   His job duties include planning, coordinating, prioritizing and supervising maintenance crews to ensure track structure is maintained and upgraded to meet Burlington Northern Santa Fe Railway Company and federal standards.   In addition, he conducts track inspections and maintains contact with field personnel to ensure compliance with quality and safety guidelines.   He also works with local and state agencies to create good public relations.   Barbee has no direct responsibility for inspecting or repairing railroad bridges or trestles.

Defendants John Does 1 and 2 are fictitious names for two adult residents of the State of Wisconsin employed by Burlington Northern Santa Fe Railway Company.   Their job duties include inspecting, investigating, monitoring and maintaining the Burlington Northern Trestle. In their motion to remand, defendants identify John Does 1 and 2 as Jeffrey Haas and Louis Welte, who are responsible for bridge and bridge trestle maintenance.   Hass lives in Iowa and Welte lives in Illinois.

Defendants ABC and DEF insurance companies are fictitious names for insurance companies who had a policy of liability insurance with one of the defendants insuring them against liability for certain accidents.

The Village of Bagley, Wisconsin (approx. pop. 330) sits at the southwestern edge of Wisconsin on the banks of the Upper Mississippi River.   Glass Hollow Creek runs through Bagley.   Defendant Burlington Northern Santa Fe Railway Corporation owns and maintains

railway tracks that run parallel to the Mississippi, through Bagley and across Glass Hollow Creek. Burlington Northern owns and maintains a bridge and bridge trestle that run over the creek. Defendants Burlington Northern Railway Company, Burlington Northern Corporation, Francis Weber, William Barbee and John Does 1 and 2 allegedly failed properly to design, construct, investigate, clean or maintain the bridge trestle. As a result, on July 17 and 18, 2007, the trestle was obstructed by silt, debris and other materials, which prevented rainfall runoff from flowing through the trestle.

Late on the night of July 17, 2007 through the morning of July 18, 2007, a torrential rain (described in the La Crosse Tribune as a "500-year rain") deluged Bagley with over seven inches of rain. According to plaintiffs, because the railroad's bridge trestle was clogged with debris and unable to allow drainage, Glass Hollow Creek overflowed its banks and caused "catastrophic man-made flooding including . . . surface water invasions and . . . sanitary water invasion." Widespread flooding damaged most of the village's homes and businesses. Fifty-three property owners in 33 Bagley households have joined plaintiff's lawsuit; at least 25 other households have been affected by the flood.

## ANALYSIS

### I. Remand Standard

The burden of establishing federal diversity jurisdiction in a removal case rests on the party seeking removal on diversity grounds. *Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000). In determining whether removal was proper under 28 U.S.C. § 1441, it is presumed that plaintiffs may choose their own forum; therefore, a district court must construe the removal

statute narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993); *People of the State of Illinois v. Kerr-McGee Chemical Corp.*, 677 F.2d 571, 576 (7th Cir.1982).

In this case, defendants seek removal from plaintiffs' state court action on alternative theories of diversity jurisdiction: (1) traditional diversity, codified under 28 U.S.C. § 1332(a) and (2) the expanded form of diversity for certain large-stakes, multi-state class actions codified under the Class Action Fairness Act  Defendants bear the burden of establishing at least one of these diversity theories.   I deal with these contentions in turn:

## II. Diversity Jurisdiction under § 1332(a)

Defendants contend that the parties in this case actually are diverse because plaintiffs fraudulently joined two in-state defendants, William Barbee and Francis Weber, for the purpose of defeating complete diversity.  In addition, defendants argue that Barbee and Weber are not the "real parties in interest" because plaintiffs  primarily seek recovery against defendant Burlington Northern; therefore, joinder of the in-state defendants is "improper" and their citizenship should be disregarded when determining diversity.

### A. Fraudulent Joinder

A plaintiff cannot avoid a federal forum by fraudulently joining parties in order to defeat diversity jurisdiction, and F.R. Civ. P. 21 allows a federal court to dismiss any party who is fraudulently joined.  *Schwarz v. State Farm Mutual Auto Insurance Co.*, 174 F. 3d 875, 878 (7th Cir. 1999); *Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 654 (7th Cir. 1992). Defendant bears the burden of showing establish fraudulent joinder.  *Bodine's, Inc. v. Federal*

*Insurance Co.*, 601 F. Supp. 47, 49 (N.D. Ill. 1984); *see also* 16 Moore's Federal Practice § 107.14[2][c] at 107-62-63 (2008).  To establish fraudulent joinder, "defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant."  *Id.*; *see also Faucett*, 960 F.2d at 654-55; *Poulos*, 959 F.2d at 73.  If plaintiffs cannot maintain their suit against the in-state defendants as a matter of law, then defendants' motion for removal would be proper.  *Poulos*, 959 F.2d at 73.

But even if plaintiffs named Barbee and Weber with intent to thwart removal, a litigation strategy intended to defeat jurisdiction, by itself, does not support a finding of fraudulent joinder.  *See, e.g., Saltire Industry, Inc. v. Waller, Landsden, Dortch & Davis*, 491 F.3d 522, 530 (6th Cir. 2007);. *Wolf  v. Bankers Life and Casualty Co.*, 519 F. Supp.2d 674, 682-83 (W.D. Mich. 2007). The court in *Minogue v. Modell,* 2006 WL 1704932 (N.D. Oh. 2006), put it bluntly:

> Attempts to create or defeat diversity jurisdiction are nothing new.
> Litigants have a long history of gaming parties and claims to obtain
> or avoid federal diversity jurisdiction.

*Id.* at *4.

Even so, the court in *Minogue* noted that fraudulent joinder is determined solely on the basis of the claims, that plaintiff's motive is irrelevant, and that all doubts are resolved in favor of remand.  *Id.* (Dicta).

On the other hand, if joinder of a company's employees can be characterized only as an unfair sham, then there is fraud, and the joinder is improper.  *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005).  Joinder is fraudulent when "there has been outright fraud in plaintiff's pleading of jurisdictional facts," *Gottlieb v. Westin Hotel Co.*, 990 F. 2d 323, 327 (7th Cir. 1993), or when plaintiffs join a party or parties against whom they *cannot* recover.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).  Defendants contend that plaintiffs have

engaged in both types of fraud in order to avoid federal jurisdiction and to preserve this case in state court where plaintiffs believe they would have a more favorable forum.

Common sense supports the notion that plaintiffs gain nothing necessary by naming individual railroad employees such as Barbee and Weber –or John Does 1 and 2–as defendants. Their employer, defendant Burlington Northern, likely will indemnify them, so that the allegations against Barbee and Weber will be imputed to Burlington Northern. Perhaps it should not be surprising that some of the representative plaintiffs have reached out to the Weber family–their neighbors, perhaps their friends, until now–to assure the Webers that nobody wants them to be put at risk and that plaintiffs' lawyers assure that this lawsuit will not cost the Webers a dime. In short, joinder of the Wisconsin defendants is transparently tactical but this does not, without more, make it fraudulent.[3]

To establish fraud, defendants contend that regardless what might be true as to the other defendants, as a matter of *law*, Barbee and Weber cannot be held liable to plaintiffs in this lawsuit. The lynchpin question when assessing this contention is whether Barbee and Weber can be said as a matter of law to have had no duty of care to these plaintiffs.[4] Wisconsin law starts with the hopelessly broad exhortation that "everyone has a duty of care to the whole world." *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W. 2d 233, 238 (Wis.

---

[3] Defendants cite these back-channel contacts to support a Rule 11 argument that plaintiffs' attorneys are engaged in a cruel, cynical manipulation of jurisdiction that this court should not condone. But the question is not whether plaintiffs have let their attorneys persuade them to do something that shames them, it is whether these acts sufficiently establish the legal concept of fraudulent joinder. Plaintiffs could have avoided this dilemma by dropping their neighbors from this lawsuit and allowing it proceed in their nearby federal court, but they don't want to do that, so here we are.

[4] The three elements of actionable negligence are (1) a duty owed to the plaintiff; (2) a breach thereof; and (3) an injury proximately caused by the breach. *Walker v. Bignell*, 100 Wis.2d 256, 262, 301 N.W. 2d 447, 451 (1981). In the instant case, at this early stage, breach and proximate cause are disputed fact questions that cannot be a basis for finding fraudulent joinder of Barbee or Weber.

1998).  A narrower, more practical formulation is that "[t]he duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act . . .." *Rockweit v. Senecal*, 197 Wis. 2d 409, 419-20, 541 N.W. 2d 742, 747 (Wis. 1995).  The duty extends to omissions by individuals who may cause harm.  *Wal-Mart Stores, Inc.*, 219 Wis. at 260, 580 N.W.2d at 238.

As a flagman for the railroad, Weber was responsible for maintenance of the track infrastructure and trackbed as well as clearing the right-of-way of litter and cargo spillage. Weber affidavit, dkt. 16, at ¶3.  As roadmaster for the railroad, Barbee was responsible for maintaining track structures, performing track inspections, insuring compliance with quality and safety guidelines, and working with local, county and state agencies to create good public relations.  Barbee affidavit, dkt. 17, at ¶3.  In short, both Barbee and Weber had duties to insure that defendants' railways were properly maintained.  Plaintiffs allege that Barbee and Weber violated these duties by failing to inspect, investigate, monitor or maintain the Burlington Northern bridge trestle.  Although Barbee's and Weber's job description duties focus on the tracks and railways, for the purpose of determining tort liability,  it is neither unrealistic nor unreasonable to infer that their duty of care extended to ensuring that the areas surrounding the tracks and rail lines were not likely to harm other people in the vicinity.  They were actually out there on site, with inspection responsibilities; therefore, if there was a blockage on the trestle severe enough to be noticeable to someone on the tracks, then it is not legally implausible for plaintiffs to suggest that Barbee and Weber owed a duty of care to plaintiffs.  Put another way, however unlikely an actual finding of liability against these two men, I cannot find that plaintiffs simply *cannot* recover against Barbee and Weber.

Defendants point out that Barbee and Weber's explicit job duties and responsibilities did "not include the inspection, maintenance or monitoring of bridges or bridge trestles." Barbee affidavit, dkt. 17, at ¶4; Weber affidavit, dkt. 16, at ¶4. In addition, defendants have submitted the affidavits of BNSF employees Louis Welte (a resident of Illinois whose job title is "Supervisor of Structures") and Jeffrey Haas (a resident of Iowa whose job title is "Bridge Inspector") who expressly state that *they* were (and are) responsible for supervising and inspecting the bridge and bridge trestles in and around Bagley, Wisconsin, and that Barbee and Weber were not. Haas affidavit, dkt. 19, at ¶¶3-4, Welte affidavit, dkt. 18, at ¶¶3-4. As defendants acknowledge, Barbee and Weber are defendants John Does 1 and 2, who are described in ¶¶ 21- 30 of plaintiffs' complaint.

The fact that plaintiffs named John Does 1 and 2 as defendants in addition to Barbee and Weber undercuts the inference that plaintiffs intentionally named Barbee and Weber as defendants *in place of* the railroad employees actually responsible for bridge and trestle inspection and maintenance, an inference that would have supported defendants' assertion of fraud. Rather, plaintiffs have cast a wide net, asserting tortious conduct by every single railroad employee who had any inspection, reporting or repair responsibilities with regard to the trestle, the bridge on the trestle or the track near and over the bridge.

This is a common pleading tactic and it is not necessarily improper. Defendants have not shown that Barbee and Weber had no duty of care as a matter of law. The fact that Barbee and Weber's specific job duties did not extend to supervising the bridge or trestle does not foreclose the possibility that they had a common law duty to report obvious hazards associated with the trestle that might cause injury to area residents. Under Wisconsin law, employees are not exempt from common law negligence simply because they are not responsible for a specific

10

element of their job.  *See Wal-Mart Stores, Inc.*, 219 Wis. at 259-261, 580 N.W. 2d at 237-238; *see also*,  *McNeese by Eisenberg v. Pier*, 174 Wis. 2d 624, 631, 497 N.W.2d 124, 127 (Wis. 1993)("'the particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.'").   An employee has a duty to exercise ordinary care when either doing something or failing to do something that "a reasonable person would foresee that by his or her action or failure to act, he or she will subject a person or property to an unreasonable risk of injury or damage."  *Wal-Mart Stores, Inc.*, 219 Wis. at 261, 580 N.W. 2d at 238.[5]

Obviously, there are some gigantic material fact questions that have to be answered before liability vests for *any* defendant, including: (1) Was the trestle obstructed by debris in July '07?  (2) Was any such obstruction sufficiently obvious to be seen by railroad employees working in the area?   (3) Would any such obstruction have raised a genuine sufficiently foreseeable risk of possible flooding as to trigger a duty for railroad employees to report and to act?   (4) Was the obstruction big enough and the risk of flooding from that obstruction foreseeable enough that even railroad workers with no direct responsibility for the bridge or the trestle should have seen it and should have reported it? (5) If there actually was an obstruction, was it a proximate cause of the flooding that occurred during the "500-year rain" on July 17-18,

---

[5]  Suppose Barbee and Weber had been inspecting track together near Glass Hollow Creek when they saw that the trestle was severely damaged and might collapse under the weight of a fast-approaching freight train.  Haas and Welte were not in the vicinity; if they had seen this damage in the past, they had not reported it.  Would it be reasonable for Barbee and Weber to take the position that they had no duty to report what they saw because they don't do trestles?  Would the owners of the freight that plunged from the collapsed bridge be legally barred from naming Barbee and Weber in their subsequent lawsuit because their job descriptions did not assign them the tasks of inspecting bridges and trestles?  These questions virtually answer themselves.

2007?  Then there are fact questions regarding what, if anything, Barbee, Weber, Haas and Welte saw, suspected, knew, said, did, or failed to say or failed to do.[6]  But these all are fact questions and it at this early phase of this lawsuit, it appears that they all are disputed. Defendants cannot show by a preponderance of the evidence that, as a matter of law, Barbee and Weber owed no duty of care to any of these plaintiffs and that plaintiffs cannot recover against them.  *See, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006).

Defendants argue that plaintiffs' lawyers violated Rule 11 by including Barbee and Weber as defendants.  Defendants contend that because members of plaintiffs class communicated to Francis Weber's wife that they knew he was not responsible for the flood, plaintiffs' lawyers were aware that Weber was not actually responsible and therefore his joinder was fraudulent and done for the sole purpose of defeating diversity.  Defendants' argument is unpersuasive.  Whether members of plaintiffs' class told Mrs. Weber that they knew defendant Weber was not responsible for the flooding has no bearing on whether he was legally responsible or liable for any of the damage caused by the alleged man-made flooding.  As individuals who are responsible for maintenance and safety of the railways around Bagley, it was not mere speculation on the part of plaintiffs' lawyers to include Barbee and Weber as liable for the injuries suffered by the proposed plaintiff class.  Therefore, the joinder of Barbee and Weber is not fraudulent.

---

[6]  There also are significant questions about whether this lawsuit is appropriately maintained as a class action, but those questions are not relevant to determining whether Barbee or Weber are fraudulently joined to this lawsuit.

B. Real Party in Interest

In addition, defendants suggest that plaintiffs' joinder of the in-state defendants should be disregarded because they are merely "nominal defendants" and not the real party in interest. "A federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Savings Assn. v. Lee*, 446 U.S. 458, 461 (1980). In determining the "real party in interest," a court should look to "the essential nature and effect of the proceedings," *Adden v. Middlebrooks*, 688 F. 2d 1147, 1150 (7th Cir. 1982) and whether the party has "a substantial stake in the outcome of the case." *Wisconsin v. Abbott Laboratories*, 341 F. Supp. 2d 1057, 1061 (W.D. Wis. 2004). Also, the real party in interest is the party "who, according to the applicable substantive law, has the duty sought to be enforced or enjoined." *Eichmann v. Hunter Automated Machinery, Inc.*, 167 F. Supp. 2d 1070, 1072 (E.D. Wis. 2001); *cf. Adden v. Middlebrooks*, 688 F.2d at 1153 ("It is appropriate for a federal court to consider state law as a factor in determining whether the State is the real party in interest.")

In this case, plaintiffs have brought negligence and nuisance claims against all defendants. As discussed above, an element of both claims is whether the defendants owed a duty of care to the plaintiffs, and under Wisconsin law, plaintiffs could sustain these claims against the corporate and the individual defendants, both in-state and out-of-state. Defendants cannot establish as a matter of law that Barbee and Weber owed no duty to plaintiffs. To the contrary and with full appreciation for defendants' arguments, it is reasonable to infer that each man had such a duty. Therefore, at this stage, Barbee and Weber cannot be called "nominal defendants" because they have a substantial stake in these proceedings.

Defendants argue that Barbee and Weber are not the real parties in interest because plaintiffs predominantly seek recovery against Burlington Northern and plaintiffs do not allege

13

any acts by Barbee and Weber distinct from the other defendants.   Although defendant Burlington Northern undoubtedly would bear the brunt of any finding of liability and damages, the real party in interest inquiry does not depend on which party has the deepest pocket. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 543-54, 593 N.W. 2d 445, 454 (Wis. 1999)("A real party in interest is 'one who has a right to control and receive the fruits of litigation.'")  Regardless what their neighbors are purporting to them, and regardless how minuscule their roles in the events that unfolded, Barbee and Weber are parties with a stake in the litigation and they each have a legal interest to protect. *Id.* ("The basic test is . . . whether the defendant will be fully protected when the judgment in behalf of the plaintiff is discharged.").

Even if the claims against Barbee and Weber are not distinct from those against defendant Burlington Northern, this does not establish that these men are nominal parties. As explored in the previous section, each and every defendant might be at fault for breach of his/its duty of care based on different acts and omissions.  At this early stage of the lawsuit, plaintiffs are not required to know the details of each defendant's involvement in the design, construction, inspection and maintenance of the bridge and its trestle.  It is sufficient that plaintiffs provide defendants notice of their claims, which they have done.  Although the most likely outcome is that Weber and Barbee will be shunted to the periphery of this case (or out of it), this is irrelevant to the decision on diversity.   "There is never a presumption in favor of federal jurisdiction, but rather the basis for such jurisdiction must be affirmatively evidenced by the party invoking it." *Adden v. Middlebrooks*, 688 F.2d at 1150.  Barbee and Weber are not nominal parties.  They are properly joined as defendants.  Thus, plaintiffs' motion to remand on the

ground that this court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a) should be granted, *unless* the Class action Fairness Act dictates otherwise.  And it does:

III. Class Action Fairness Act Jurisdiction

Defendants invoke CAFA as a basis for this court's jurisdiction over plaintiffs' lawsuit. CAFA creates federal jurisdiction over (and thus allows removal of) multi-state class actions with substantial stakes.  *Bullard v. Burlington Northern Santa Fe Railway Co.*, 535 F.3d 759, 761 (7th Cir. 2008).  CAFA allows federal courts to exercise jurisdiction over class actions where only minimal diversity exists between the parties and the amount in controversy exceeds $5,000,000 in the aggregate and the number of members of all proposed classes is 100 members or more. 28 U.S.C. § 1332(d)(2) & (d)(5)(B); 5 *Moore Federal Practice*, § 23.63[2][a], at 23-308, -309 (2008).  If these criteria are met, there are three exceptions to CAFA jurisdiction.

As always, the party asserting federal jurisdiction bears the burden of proving its existence.  *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 679-80 (7th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005); *see also Bullard v. Burlington Northern Santa Fe Railway Co.*, 556 F.Supp. 2d 858, 859 (N.D. Ill. 2008).  Here, defendants have a shot at establishing CAFA jurisdiction if they can demonstrate that, within the limits of the claims actually made by plaintiffs regarding their proposed class, there is a reasonable probability that the jurisdictional requirements will be met.  *Brill*, 427 F.3d at 449; *see also In Re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Jurisdiction is determined as of the instant of removal.").  "[P]art of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands." *Brill*, 427 F.3d at 449; *see also St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291-93 (1938).  In

this case, defendants must demonstrate that plaintiffs' proposed class contains at least 100 members and that the amount in controversy exceeding $5,000,000.  28 U.S.C. § 1332(d)(2) & (d)(5)

With respect to plaintiffs' proposed class, defendants argue that plaintiff's class is drawn so broadly that it *could* include up to 369 different persons and entities.  Dft. Br., dkt. 14, at 19-20.  Defendants base this argument on the 2007 Real Estate Tax record for the deeded parcels located within the geographical area described by plaintiff's class, which shows 286 deeded properties owned by 369 different persons.  Borg Affidavit, dkt. 15, Ex. 4 & 5.  Also, according to evidence offered by defendants, most of the homes in Bagley were affected by the flooding.  Borg Affidavit, dkt. 15, Ex. 2.  In addition, the area described by the complaint has a tax assessed value in excess of $9,000,000.  Dft. Br., dkt. 14, at 19-20.

In reply, plaintiffs do not dispute the accuracy of defendants' numbers.  Instead, plaintiffs contend that because significantly less than 100 people have joined the class the class so far, and because the class has not expanded in the year since plaintiffs filed their class action, it is unlikely ever to equal or exceed 100 members.

But § 1332(d)(1)(B) states that

> The term "class members" means the persons (named or unnamed) *who fall within the definition of the proposed or certified class* in a class action. [Emphasis added].

Then § 1332(d)(5)(B) states that CAFA shall not provide original federal jurisdiction in any class action in which "the number of members of all *proposed* plaintiff classes in the aggregate is less than 100." [Emphasis added].

Therefore, the relevant question is whether 100 or more people fall within the definition of the class proposed by the plaintiffs in their complaint. *See Cunningham Charter Corp. v. Learjet,*

16

*Inc.*, ___ F. Supp.2d ____, 2008 WL 3823710 at *4, n.3 (S.D. Ill., Aug. 13, 2008) (exact size of the class need not be determined until later; defendant's burden is simply to show that there are at least 100 potential class members).  The indisputable answer to this question is "Yes." Therefore, it is irrelevant that less than 100 people actually had joined the class at the time defendant removed it, and it is irrelevant that plaintiffs predict that less than 100 people actually will join their lawsuit.  The proposed class hasn't even been certified yet, so no one has been required to make a final decision whether s/he wants to get in or stay out.[7]  Plaintiffs, who carefully crafted their complaint to evade federal diversity jurisdiction were not as careful to avoid CAFA.  Now it's too late:

> While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.  Whether defendants have satisfied requirements of CAFA, including its 100-person minimum threshold, is determined at the time of removal

*Bullard v. Burlington Northern Santa Fe Railway Co.*, 556 F.Supp. 2d 858, 860 (N.D. Ill. 2008), quoting *Hart* 457 F.3d at 681 (in turn quoting S. Rep. 14, 109th Cong. 1st Sess. 43 (2005)).

In short, plaintiffs' proposed class meets CAFA's numerosity threshold.

Plaintiffs assert that their lawsuit does not meet CAFA's damage threshold of five million dollars, but clearly it does.  Plaintiffs are seeking compensatory, consequential, incidental, against a baseline of $9 million in real property, plus personal property damage to the furniture, possessions and motor vehicles associated with hundreds of residences, and all concomitant

---

[7]  A cynic might suspect that some villagers are waiting until after remand to join this lawsuit so as to ensure that the actual number of class members did not prematurely exceed 100.  This court is too pollyannaish to suspect such tactical maneuvering.  But it doesn't matter: the statutory inquiry is objective. The only way that plaintiffs could have evaded CAFA's numerical threshold would have been to have defined their class so that no more than 99 people possibly would fit the definition.

emotional distress experienced by the property owners.  The requested actual damages are well past the five million dollar mark and we haven't even factored in plaintiffs' demand for statutory treble damages for recklessness, plus their demand for punitive damages against a railroad company whose market capitalization exceeded $25 billion and had fiscal year profits in 2008 of $1.8 billion[8]  As a result, defendants have met their burden in establishing that plaintiffs' proposed class action falls within the jurisdiction of CAFA.

Even so, plaintiffs would be entitled to remand if they establish that their case fits within one of CAFA's two express exceptions, the home-state or local controversy provisions, § 1332(d)(4)(A) & (B).  It is plaintiffs' burden to prove the exception: "whenever the subject matter of a case qualifies it for removal, the burden is on a plaintiff to find an express exception.'" *Hart*, 457 F.3d at 680-81 (citing *Breur v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003)); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1019 (9ᵗʰ Cir. 2007); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5ᵗʰ Cir. 2006).

To remand under the local-controversy exception, plaintiffs must show that two-thirds of the plaintiffs and at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims of the plaintiff class are citizens of the state in which the suit was originally filed.  28 U.S.C. § 1332(d)(4)(A)(i)(I)-(II).  In addition, the principal injuries resulting from defendants' alleged conduct must also occur in said state. 28 U.S.C. § 1332(d)(4)(A)(i)(III).

---

[8]  *See http://resources.bnet.com/topic/Burlington+northern+santa+fe+corp.+and+dividend.html*

Every member of plaintiffs' class is from Wisconsin and all of their injuries occurred in Bagley.  The parties dispute whether the remaining prongs of the local controversy exception apply.  Plaintiffs offer no proof that the relief sought from the in-state defendants–Weber and Barbee–is "significant" or that these in-state defendants' actions form a "significant" part of plaintiffs' claims; in fact, their brief merely parrots the language of the statute.  Plt. Br., dkt. 13, at 8-10.  Plaintiffs raise no additional arguments in their reply brief.  Plt. Reply, dkt. 23.)  Because plaintiffs bear the burden of persuasion, this lack of evidence would be sufficient to dismiss plaintiffs' assertion that the local controversy exception applies.

However, the few facts before this court prove the opposite: the acts and omissions attributed to Weber the flagman and Barbee the roadmaster do not form a significant basis of plaintiffs' claims and plaintiffs could not obtain "significant relief" from them.  Relief is "significant" if relief sought from the in-state defendants forms a significant portion of the entire relief sought.  *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006); *see also Robinson v. Cheetah Transportation*, No. 06-0005, 2006 WL 468820, at *3 (W.D. LA Feb. 27, 2006) ("whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment"); *Kearns v. Ford Motor Co.*, No. 05-5644, 2005 WL 3967998, at *10 (C.D. Cal. 2005).  When interpreting "significant basis," courts have followed a similar approach, holding that a defendant's conduct forms a "significant basis" of the plaintiff class' claim when it represents a large part of the claim.  *See Matera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70, 78-79 (S.D.N.Y. 2006) (in-state defendant employed a majority of

19

proposed plaintiff class and would bear a large portion of relief sought); *see also Evans*, 449 F. 3d at 1166-68.

Interpreting "significant" to mean the larger portion or a sizeable portion comports with the intent of CAFA to limit these exceptions to truly in-state disputes. *Cf. Evans,* 449 F. 3d at 1163 ("CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'") *See also* S. Rep. No. 109-14, at 40 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3 (providing the example of the relative insignificance of an insurance salesman in a class action for fraud against the insurance company).

As noted in Section II above, Weber and Barbee had no actual job responsibilities regarding the bridge or the trestle and there is no allegation in the complaint that they assumed a *de facto* duty to the plaintiffs based on what they might have seen that their co-workers with genuine responsibilities for the bridge and the trestle did not.  The joinder of Weber and Barbee to this lawsuit may not be fraudulent, but it is palpably tactical: these men were added to the lawsuit to defeat diversity, not because there is anything significant about their acts or omissions that would have caused the Bagley flood.  Equally clearly, plaintiffs are not seeking significant relief from Weber and Barbee. These guys are line workers who probably don't have two spare nickels to rub together once the bills get paid, and some of their former friends who now are suing them are on record disavowing any intent to recover any relief from them at all.  This lawsuit is a battle between a Wisconsin village and a Texas railroad. Weber and Barbee are insignificant pawns sacrificed by plaintiffs in the opening skirmish over jurisdiction.  Therefore, the local controversy exception does not apply in this case.

Next, under the home-state exception, the district court shall decline jurisdiction when "two-thirds or more of the members of all the proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Because all of the plaintiffs are from Wisconsin, the question is whether the primary defendants are from Wisconsin. Plaintiffs focus entirely on the question whether defendants Barbee and Weber are properly defined as "primary defendants." As noted above, they are not. They're not even *secondary* defendants; tertiary best describes their role in these proceedings. But even if Weber and Barbee were to qualify as primary defendants, then Jeffrey Haas (from Iowa) and Louis Welte (from Illinois) would qualify as well, not to mention the railroad from Texas. By this measure, 60% of the "primary" defendants would be from outside Wisconsin.

Although the Seventh Circuit has not addressed whether 1332(d)(4)(B) requires all or merely some of the primary defendants to be from the same state as two-thirds of plaintiffs, other courts have found the statute requires that *all* of the primary defendants must be from the plaintiffs' home state. *See Anthony v. Small Tube Mfg. Corp.,*535 F. Supp.2d 506, 515 (E.D. Pa. 2007); *Brook v. United Health Group Incorporated,* 2007 WL 2827808 (S.D.N.Y. Sept, 27, 2007*); Robinson*, 2006 WL 3322580, at *3 ("evident from the statute's use of the phrase 'the primary defendants' rather than 'a primary defendant', 'the plain language of the statute requires remand only when all of the primary defendants are residents of the same state in which the action was originally filed'"); *cf. Frazier v. Pioneer Americas LLC,* 455 F.3d 542, 546 (5th Cir. 2006). This reading is in line with the intent of the exception, namely to remand a case to state court when it is almost entirely an in-state dispute. The instant lawsuit is not primarily an in-state dispute.

Plaintiffs have one last shot at remand: a federal court may decline to exercise jurisdiction under CAFA even though the jurisdictional elements are present if the interests of justice and the totality of the circumstances dictate otherwise.  The interest of justice inquiry under CAFA allows the court to consider factors such whether the claims involve matters of national or interstate interest, what law will govern the parties dispute, whether the class action has been pled to avoid federal jurisdiction, whether the action was brought in a forum with a distinct nexus with the class members and whether the proposed plaintiffs' class is predominantly composed of citizens from the state in which the action was filed.  28 U.S.C. § 1332(d)(3)(A)-(E).

However, a court may consider these factors only if more than one-third and less than two-thirds of plaintiffs' class and the primary defendants are citizens of the same state. 28 U.S.C. § 1332(d)(3).  Plaintiffs' class is composed entirely of Wisconsin residents.  Second, as discussed in reference to the home state exception, the use of the phrase "the primary defendants" requires that all of the primary defendant be citizens of the state in which the action was originally filed.  The railroad is a primary defendant–and by any logical measure the *only* primary defendant–and it is not a citizen of Wisconsin.  Therefore, the court cannot consider whether the interests of justice counsel in favor of remand to state court.

In summary, defendants have shown that this court has jurisdiction under CAFA and plaintiffs cannot show that any of CAFA's jurisdictional exceptions apply.  Therefore, plaintiffs' motion for remand to the Grant County Circuit Court should be denied.

22

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that the motion to remand filed by plaintiffs Kenneth Irish, Denise Marshall, Hollie Moore and Scott Stillwell be DENIED and that their request for attorney's fees be DENIED.

Entered this 5th day of January, 2009.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of                                                                    Telephone
STEPHEN L. CROCKER                                                        (608) 264-5153
U.S. Magistrate Judge

January 5, 2009

Matthew C. Allen
Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP
P.O. Box 253
Platteville , WI 53818

Timothy R. Thornton
Briggs and Morgan, P.A.
80 South Eighth Street, Suite 2200
Minneapolis , MN 55372

      Re:___Kenneth Irish, et al. v. Burlington Northern Santa Fe Railway Co., et al.
           Case No. 08-cv-469-slc

Dear Counsel:

      The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

      The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

      In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before January 5, 2009, by filing a memorandum with the court with a copy to opposing counsel.

      If no memorandum is received by January 5, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

                  Sincerely,
                  /s/ M. Hardin for
                  Connie A. Korth
                  Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**

26