UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell, on behalf of themselves and on behalf of all others similarly situated, a class action, | Civil File No. 08-469 |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE STEPHEN CROCKER** |
| BNSF Railway Company, Burlington Northern Santa Fe Corporation, William Barbee, Francis A. Weber, John Doe #1, John Doe #2, ABC Insurance Company and DEF Insurance Company, | |
| Defendants. | |

---

## INTRODUCTION

Magistrate Judge Crocker correctly concluded that the Class Action Fairness Act (CAFA) affords federal removal jurisdiction. The Report and Recommendation carefully considered and rejected plaintiffs' arguments based on both the facts as pled in the complaint and precedent as articulated by the Seventh Circuit. This analysis led inescapably to the recommendation that plaintiffs' quest for remand be denied.

In the face of the Magistrate's well-reasoned and thorough opinion, plaintiffs disavow this Court's jurisdiction. In support of that pronouncement, plaintiffs raise a menagerie of objections – none of which were mentioned in the motion papers before the Magistrate Judge. The undisputed evidence presented in support of CAFA jurisdiction is said to be inadmissible because the data establishing requisite numerosity was not affixed

2283339v1

to the removal papers and purportedly does not pass Rule 56 muster. Yet plaintiffs' own allegations place this dispute within the realm of CAFA jurisdiction.

If that were not enough, the evidence relied upon by the Magistrate Judge clearly warranted the exercise of CAFA jurisdiction. Plaintiffs do not purport to rebut or even to dispute that record. Rather, they raise anachronistic objections to admissibility. But the invocation of CAFA requires nothing more than what BNSF has done. Plaintiffs' desperate attempt to constrain the proper extension of this Court's jurisdiction is overwhelmed by the pleadings, the facts, and the law.

Plaintiffs' only substantive objection takes the Magistrate's numerosity conclusion to task.[1] The railroad is faulted for failing to establish with "legal certainty" the availability of CAFA jurisdiction. According to plaintiffs, BNSF must prove – at this preliminary stage – that the railroad is liable to every class member for purported water damage. Such a showing is neither logical nor required. The Court need look no further than the complaint to realize that the proposed class, as defined by plaintiffs, cannot number less than 100. The objections to the R&R are unfounded.

---

[1] Plaintiffs have not objected to the Magistrate's conclusion that the exceptions to CAFA jurisdiction do not apply. Any subsequent assertion of such objections are precluded.

BACKGROUND

A.      This Lawsuit

In July 2007, a record rainstorm poured down upon Bagley, a village in southwestern Wisconsin situated on the banks of the Mississippi River. The torrent caused the River and nearby waterways to overflow their banks. Plaintiffs allege that during the historic weather-event Bagley residents sustained significant damages from high water, and down playing the forces of nature plaintiffs blame the railroad for the inundation of a geographical area that encompasses the entire town.

According to the complaint "[d]efendants caused catastrophic man-made, preventable floodings and water invasions onto the Plaintiff Class' properties." Compl. ¶ 4. Defendants are said to have "caused floodings of the citizens of Bagley including both the main Village of Bagley north of the Railroad Trestle and the River Lakes Manufactured Housing subdivision south of the Railroad Trestle." *Id.* ¶ 5. Taking the allegations at face, the damages suffered by the "plaintiff class" are solely attributable to the railroad, and the harm supposedly wreaked extended throughout the village and the nearby trailer park. The complaint insists that the flooding of the geographic area where the class members reside and own property was exclusively attributable to defendants' acts and omissions.

The complaint names four plaintiffs and comprehensively delineates the putative class. "Plaintiff Class" includes "Representative Plaintiffs, the Other Retained Plaintiff Class Members who are not named as Representative Plaintiffs but who are identified herein below in this Part and <u>all other members of the Plaintiff Class as defined herein</u>."

Compl. ¶ 35. The class definition includes "occupants and owners, those governmental organizations, those non-profit organizations and those businesses, including insurers, and subrogees, who were damaged or injured by these man-made preventable floodings and water invasions," as well as "minor children, relative, and other home companions of the Plaintiff Class Members." *Id.* ¶¶ 36-37.

The class's geographic scope covers all persons "who were and are situated upstream and/or tributary to the Glass Hollow Drain . . . in and near the Village of Bagley . . . who sustained damage and injury." *Id.* ¶ 38. And the action is brought on behalf of the named plaintiffs as well as "all other persons similarly situated." *Id.* ¶ 39. Fifty-eight class members[2] who are located all over town are identified and "at least another 25 households" are said to have been injured. *Id.* ¶¶ 40, 42. The complaint neither limits the number of putative class members nor restricts class size.

Plaintiffs aver that "[a]ll members of the Plaintiff Class predicate their claims upon the same factual scenario of causation . . . namely, these Defendants obstructed the Railroad Bridge Trestle, causing upstream and tributary water invasions onto their properties and persons resulting in catastrophic losses to the Plaintiff Class." *Id.* ¶ 44. Thus, each of the putative class members' claims are premised on the same legal theories and arise from the same factual grounds. *Id.* ¶ 45. Notably absent from the complaint is any limitation on the damages sought or suggestion that any of the proposed class members (*i.e.* all Bagley residents and property owners) did not sustain damage. Hence

---

[2] The list of plaintiffs in paragraph 40 of the complaint contains 54 individuals. Together with the named plaintiffs, there are, thus far, 58 listed class plaintiffs.

according to the complaint, everybody and everything that got wet within the defined geographic area – all of Bagley and the adjacent trailer park – have BNSF to blame.

### B. The R&R

The R&R recommends that jurisdiction be retained. In a detailed and cogent opinion, Magistrate Judge Crocker analyzed each of plaintiffs' arguments in favor of remand and properly determined that the complaint, as pled, invokes CAFA jurisdiction. Because defendants demonstrated by a preponderance of the evidence that the proposed class would necessarily include more than 100 members and unquestionably seeks in excess of $5,000,000 in damages and because "plaintiffs [did] not dispute the accuracy of defendants' numbers," the R&R concluded that "defendants [] met their burden in establishing the plaintiffs' proposed class action falls within the jurisdiction of CAFA." R&R at 16, 18. Plaintiffs' meritless objections followed.

## ARGUMENT

### I. STANDARD OF REVIEW

The Court conducts a "de novo determination upon the record . . . of any potion of the Magistrate Judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b). "After such a *de novo* review, the district judge may accept, reject, or modify the recommended decision." *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). If the conclusions below are correct, the district court will "adopt the magistrate judge's report and recommendation as its own." *See Vang v. Litscher*, No. 02-C-298-C, 2003 WL 23095717 (W.D. Wis. Feb. 18, 2003) (adopting Report and Recommendation) (Crabb, J.).

## II. ADMISSIBLE EVIDENCE SUPPORTS CAFA JURISDICTION

### A. The jurisdictional inquiry is not restricted to the removal papers

While never challenging authenticity or accuracy, plaintiffs ordain that the evidence submitted in opposition to the motion to remand must be disregarded because those data and affidavit testimony were not affixed to removal pleadings. Relying on inapplicable and non-binding case law, plaintiffs contend that the jurisdictional analysis must be limited to the complaint and removal petition. The Seventh Circuit disagrees.

The propriety of removal depends upon jurisdictional circumstances existing when the case was removed. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993). These circumstances are assessed by "looking at plaintiff's state court complaint, along with the record as a whole." *Id.* The pertinent inquiry focuses upon whether the facts, at the time of removal, support federal jurisdiction. *See id.* Importantly, "a plaintiff may not manipulate the process to defeat federal jurisdiction and force a remand once the case has been properly removed." *Id.*

The Seventh Circuit has spurned the notion that the consideration of post-removal evidence is precluded. *Harmon v. OKI Systems*, 115 F.3d 477, 480 (7th Cir. 1997). Regardless of when evidence was entered into the record, "[t]he test should simply be whether the evidence sheds light on the situation which existed when the case was removed." *Id.* *Harmon* endorsed a district court's consideration of post-removal-petition evidence – *i.e.* interrogatory answers – in concluding that removal jurisdiction could be appropriately exercised. *Id.* at 479.

Like in *Harmon*, Magistrate Judge Crocker considered the record as a whole to assess the propriety of removal and availability of CAFA jurisdiction.[3]  *Id*. Acknowledging plaintiffs' failure to dispute the substantive validity of the proffered evidence, the Magistrate Judge reviewed the property tax records and other data and, concluded, based upon the area and numbers implicated by plaintiffs' class definition, concluded that CAFA's numerosity threshold had been met.  In sum, the R&R found that BNSF had made the requisite jurisdictional showing, which plaintiffs had failed to rebut.

That analysis comports with the well accepted approach: many other courts have had no hesitation about reaching beyond the confines of the removal petition to evaluate a defendant's access to CAFA jurisdiction.  *See McLoughlin v. People's United Bank, Inc.*, No. 3:08-CV-944, 2008 WL 4935938, at *2 (D. Conn. Nov. 19, 2008) ("federal courts may look outside [the removal pleadings] to other evidence in the record" when determining the propriety of CAFA jurisdiction; unrebutted evidence submitted in opposition to remand demonstrated the availability of CAFA jurisdiction); *Goddard v. Google, Inc.*, No. C08-2738, 2008 WL 4542792 (N.D. Cal. Oct. 10, 2008) ("In determining whether the [CAFA] jurisdictional requirement has been met, the court may consider evidence submitted subsequent to the notice of removal, including evidence

---

[3]     Alternatively, if the Court deems the undertaking necessary, defendants will amend the removal petition to include the evidence submitted in opposition to the remand motion.  *See* 28 U.S.C. § 1653 ("[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000) (remanding for failure to amend removal petition pursuant to § 1653 as instructed by appeals court); *County Materials Corp. v. Roseland*, No. 08-572, 2008 WL 4722500 (W.D. Wis. Oct. 22, 2008) (Crocker, J.) (affording defendant opportunity to amend notice of removal to cure jurisdictional deficiency).

submitted in conjunction with an opposition to a motion to remand."); *Kitson v. Edwardsville*, 240 F.R.D. 610, 611 (S.D. Ill. 2006) ("evidence submitted by the Bank in support of its brief in opposition to remand is very useful to the Court in ascertaining whether the size of the class and the amount in controversy in this case satisfy the prerequisites" for CAFA jurisdiction).

This clear line of precedent demonstrates that Magistrate Judge Crocker properly considered the unrebutted evidence submitted in opposition to the motion to remand.[4] Plaintiffs' objection on this point comes up woefully short.

---

[4] Plaintiffs also contend that BNSF's evidence – which, drew no objection before the Magistrate Judge – fails to satisfy Rule 56(e). Plaintiffs go on to complain that record documents are neither sworn to nor certified by a governmental body. These challenges are specious for several reasons. First, no binding authority requires jurisdictional evidence to comply with summary judgment standards or to be certified by the government. Second, Rule 56 simply calls for evidence to be attached to the affidavit and to be authenticated. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) (interpreting Fed. R. Civ. P. 56(e)). The Borg Affidavit clearly satisfies requisite evidentiary standards: her testimony is sworn and attests to the validity and authenticity of the attached documents. Finally, the property information, Exhibit 4 to the Borg Affidavit, as well as the newspaper and other factual accounts of the July 17, 2007 storm event, are publicly available. *See* http://grantcountylandrecords.com/GCSWebPortal/Search.aspx (property tax records publicly available); http://www.crh.noaa.gov/arx/?n=jul1807 (information maintained by National Weather Service, an agency of the United States Department of Commerce). Not only is the Court permitted to take judicial notice of public records, but the applicable rules of evidence provide for the admissibility of public records. *See, e.g.*, *520 South Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1138, n. 14 (7th Cir. 2008) ("A court may take judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies."); Fed. R. Evid. 803(8); 901(b)(1)(7). Plaintiffs' attempt to obviate jurisdiction on the basis of contrived evidentiary deficiencies should be rejected out of hand.

### B. The face of the complaint affords CAFA jurisdiction

Plaintiffs next argue that BNSF's failure to identify other potential class members by name prevents the attainment of CAFA numerosity. Objection at 14. Yet to satisfy numerosity, the railroad need only demonstrate that 100 or more members are encompassed by the class as defined by the complaint. R&R at 16; *see also* 28 U.S.C. § 1332(d)(1)(B)(defining "class members" as any person or entity falling within the definition of the proposed class). As Magistrate Judge Crocker observed, although plaintiffs "crafted their complaint to evade federal diversity jurisdiction, [they] were not as careful to avoid CAFA." R&R at 17. As pled, the complaint demonstrates that a certified class would perforce encompass more than 100 members. Neither an exact head count nor roll call is required.

As proposed by plaintiffs the class includes <u>all</u> persons or entities damaged by the alleged flood, including but not limited to occupants and owners, governmental organizations, non-profit organizations, businesses, including insurers and subrogees, as well as "minor children, relatives, and other home companions." Compl. ¶¶ 36-37. The complaint identifies 58 specific adults and 37 discrete parcels of property. The complaint acknowledges the inclusion of at least another 25 households, bringing the admitted total to at least 74 adults. *Id.* ¶¶ 40-42. Additional individuals – whether a property insurer, child or other relative of the named individual – are indisputably embraced by the class allegations; hence the number of proposed members most certainly exceeds 100.[5]

---

[5]   Notably, plaintiffs cannot, in good faith, limit the size of the class or the amount in controversy. *See Fiore v. First Am. Title Ins. Co.*, No. 05-CV-474, 2005 WL 3434074, at

Besides that, the geographical scope of the proposed class extends to all persons "who were and are situated upstream and/or tributary to the Glass Hollow Drain as it attempts to flow through the Burlington Northern Santa Fe Railroad Bridge Trestle [] in and near the Village of Bagley." (*Id.* ¶ 38.) The metes and bounds of this spatial demarcation covers every Bagley resident – of which there are over 300.[6] *See* http://www.grantcounty.org/business/population.html (2000 census information).

The complaint provides no basis for excluding anyone within the boundaries of the class, and a resident's presence in Bagley on the day of the flood is of no import because a water invasion would damage property regardless of owner and occupant whereabouts. The so-called eight categories of damage that supposedly must have been suffered to be included in the class is yet another canard. Paragraph 67 of the complaint merely describes the type of damages for which redress is sought, not the qualifications of class membership.

---

*3 (S.D. Ill. Dec. 13, 2005) (any attempt to cap class recovery at $5,000,000 is effective only if a limiting allegation can be made in good faith; class counsel cannot, in good faith, allege such limitations).

[6]   The complaint allegations confirm that the flood affected residents all over Bagley, regardless of exact parcel or chattel location. Specifically, paragraph 40 identifies certain class members and their Bagley situs. Those addresses are sprinkled throughout the community and are not confined to a discrete section of the town. For example, the nine allegedly damaged properties owned by thirteen class members, which are located on Budweiser Lane, are nowhere near Burlington or Walnut Avenues, where five other properties owned by eight class members were purportedly damaged. *See* Borg Aff. Ex. 4(c) (map of Bagley). The properties on Budweiser Lane and Walnut Avenue could not have been drenched while everything, or for that matter anything, in between stayed dry.

Plaintiffs, as masters of their complaint, have defined a class that necessarily numbers more than 100 persons. For CAFA jurisdiction to be exercised, nothing more is required. The exact size of the class need not be counted. *Cunningham Charter Corp. v. Learjet, Inc.*, No. 07-CV-233, 2008 WL 3823710, at *4, n.3 (S.D. Ill. Aug. 13, 2008) ("exact size of the class" not necessary element to the determination of CAFA jurisdiction). Rather, the dispositive consideration is whether the class, as defined by the complaint, comprises at least 100 potential members. *Id.* Based on plaintiffs' all-encompassing and all-Bagley class definition, the answer must indisputably be yes. R&R at 17. As pled, the complaint cannot be read to be on behalf of fewer than 100 members. Plaintiffs' objection on this point is vitiated by their own pleadings.

### III. PREPONDERANCE OF THE EVIDENCE DETERMINES CAFA JURISDICTION

Unburdened by applicable legal authority, plaintiffs maintain that the railroad must establish CAFA jurisdiction with "legal certainty" and that the railroad's supposed failure to do so warrants remand. Objection at 14. Plaintiffs thereafter incredibly assert that, in order to sustain CAFA jurisdiction, BNSF would be obligated to prove its own liability as to each potential class member. Objection at 17. Neither contention can be taken seriously. What the complaint alleges, not what the evidence will ultimately show, determines jurisdiction.

#### A. Plaintiffs must make the legal certainty showing

Plaintiffs transpose the jurisdictional burden. A proponent of federal subject matter jurisdiction – whether premised on diversity or CAFA – in the Seventh Circuit

need only "prove those jurisdictional facts by a preponderance of the evidence."[7] *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). "Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id.* Thus to remain in this forum BNSF need only show that the aggregate amount in controversy exceeds $5 million and that, if certified, the putative class would number more than 100. *Id.*

Plaintiffs erroneously decry the Magistrate Judge's failure to impose a "legal certainty" standard. Yet, parties seeking to invoke federal jurisdiction in the Seventh Circuit have been held to a legal certainty standard only when the aggregate amount of controversy cannot be readily discerned: "[o]nly if it is legally certain that the recovery (from the plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." *Id.* Accordingly, the challenger, rather than the proponent of federal jurisdiction, was

---

[7] The Circuits disagree whether the numerosity requirement – a class composition of more than 100 members – is jurisdictional or is a CAFA exception. *Compare Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007) (numerosity requirement is jurisdictional) *with Frazier v. Pioneer Americas, LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (numerosity requirement is an exception); *see also PHLD Partnership v. Arch Specialty Ins. Co.*, 565 F. Supp. 2d 1342, 1344, n. 1 (S.D. Fla. 2008) (discussing the circuit split). If jurisdictional, the burden would be on the removing party, but if the 100 member requirement is an exception, the burden would be on the party seeking remand. *Id.* Although the Seventh Circuit has not expressly ruled, the court has interpreted the requirements of 28 U.S.C. § 1332(d)(5), which include the numerosity element, to be prerequisites to CAFA jurisdiction; thus the burden probably rests on the proponent of jurisdiction. *Hart v. Fedex Ground Package Sys., Inc.*, 457 F.3d 675, 679 (7th Cir. 2006).

required to prove that the amount in controversy could not meet the jurisdictional threshold to a legal certainty. *Id.* Applying that standard to this case, plaintiffs, not the railroad, bear the legal certainty burden. Hence only if it is legally certain that the class as defined by the complaint will be less than 100 in number may this case be dismissed for want of CAFA jurisdiction.

Even if the Seventh Circuit were to impose the legal certainty standard on CAFA numerosity, plaintiffs would still be unable to overcome the railroad's jurisdictional showing. Defendants have proffered reliable and publicly available evidence establishing that well over 100 parties are encompassed by the class definition. The flood water is said to have engulfed a geographic area that includes a town of over 300 residents, the flood is blamed on the railroad and no property within the defined area is alleged to have escaped water invasion injury. The Magistrate Judge properly relied on plaintiffs' allegations and BNSF's evidence, while noting that plaintiffs did not "dispute the accuracy of defendants' numbers." R&R at 16.

Plaintiffs cannot deny that evidence demonstrating or even indicating that the proposed class is fewer than 100 persons cannot be found in the record. Instead plaintiffs raise a grab bag of "what ifs" in a futile attempt to depopulate the geographic area encompassed by the class definition. Because plaintiffs have failed to prove, with legal certainty or at all, that CAFA jurisdiction does not lie, the Magistrate Judge's recommendation should be adopted.

**B.     Defendants do not have to prove their own liability**

Plaintiffs finally argue that federal jurisdiction is lacking because defendants have not proven that every proposed class member has actually suffered damages of eight different kinds and that all of those injuries were caused by the railroad. Applying plaintiffs' reasoning, federal jurisdiction would not only be conditioned upon whether the plaintiffs will ultimately prevail, but also on whether defendants have proven plaintiffs' case for them. This rationale not only defies logic, but placing a CAFA removing defendant in such a predicament contradicts long standing precedent.

"[I]f a complaint sets out a dispute substantial enough to come within the diversity jurisdiction, the plaintiff's inability to prove an injury exceeding the minimum amount in controversy does not affect jurisdiction." *Pratt Central Part Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350, 351 (7th Cir. 1995) quoting *Mt. Healthy City Sch. Dist. Bd. of Education*, 429 U.S. 274, 277 (1977).[8] As one court explained, "a defendant

---

[8]  The *Pratt* court reasoned:

> Requiring the plaintiff to prevail on the merits (or to recover more than $50,000) as a condition of federal jurisdiction would create two kinds of undesirable costs. First there would be a heightened cost of jurisdictional inquiry at the outset of the case. A judge would need to conduct proceedings, potentially complex, to determine whether the claim had sufficient substance to meet the jurisdictional requirements. In federal-question cases this inquiry would be a doppelganger of the inquiry on the merits. In diversity cases this inquiry would probe the gravity of the plaintiff's injury, calling for fact-finding proceedings that would presage the work of the jury. Yet the only purpose of making the inquiry would be to determine which court hears the case, a decision that ought to be taken swiftly. To make the "which court" decision expeditiously and cheaply, a judge must simplify the inquiry, and, as both [*St. Paul v. Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)] and [*Bell v. Hood*, 327

is generally *not* obligated to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to putative class members at the pre-certification stage of the litigation." *Cram v. Electronic Data Sys. Corp.*, No. 07-1842, 2008 WL 115438, at *2 (S.D. Cal. Jan. 8, 2008) (emphasis in original) (evaluating CAFA jurisdiction); *see Cram v. Electronic Data Sys. Corp.*, No. 07-1842, 2008 WL 239552, at *3 (S.D. Cal. Jan. 25, 2008) (defendant "was not required to produce any records to prove or disprove liability to putative class members . . . at this stage of the litigation").

To stay in federal court, a class action defendant need only come forward with facts showing that it is more likely than not that CAFA applies, assuming the truth of the allegations in the plaintiff's complaint. *Id.*; *see also Klassy v. Physicians Plus Ins. Co.*, 276 F. Supp. 2d. 952, 955 (W.D. Wis. 2003) (allegations of complaint must be taken as true in analyzing motion to remand).

Assuming the truth of plaintiffs' class allegations, as the Court must do, the availability of CAFA jurisdiction is self evident. The class is defined to include all persons within a geographic area that was covered by flood waters on July 17 and 18,

---

> U.S. 678 (1946)] observe, the judge must give the plaintiff the benefit of the doubt. The second kind of costs falls on the parties. If a judge dismisses a case for want of jurisdiction well into the litigation, the parties repair to state court – where they must bear the expense of litigation a second time, imposing unnecessary costs on the state tribunal in the process. By contrast, a conclusive decision on the merits, even if in the defendant's favor (or in the plaintiff's for less than $50,000), ends the controversy, promoting both public and private interests in achieving peace.

60 F.3d at 351-52 (internal citations omitted).

2007. All putative class members seek recourse for the same claimed injuries – including but not limited to real and personal property damage, diminution in property value, costs of clean-up, statutory treble damages and punitive damages. The railroad is accused of being solely responsible for the class's injuries because the complaint only pursues recovery for damages caused by a BNSF-made and preventable flood, which supposedly inundated the entire geographic area described in the complaint.

Well over 100 different persons and entities reside and own property within the physical boundaries of the area taken in by the class definition, and the complaint does not numerically limit class membership. Whether plaintiffs will prevail on the merits or whether each resident and property owner actually suffered damage caused by the railroad are of no moment. Instead, access to federal jurisdiction depends upon whether the proposed class satisfies the CAFA thresholds. R&R at 16. On the record before the Court, the proposed class, as defined by the complaint, clearly exceeds CAFA's 100-member threshold.

Speculation about how various residents were caused to get wet, who might have sustained water damages, what those damages might be and where various residents were when the water rose cannot obviate the class definition set forth in the complaint. That pleading coupled with BNSF's evidence compels the conclusion that the prerequisites of CAFA jurisdiction have been satisfied. Nothing more is required at this stage of the litigation.

## CONCLUSION

The R&R is neither unreasonable nor incorrect. As required by applicable law, Magistrate Judge Crocker properly concluded that CAFA jurisdiction has been invoked. Despite plaintiffs' attempts to evade the evidentiary and procedural standards of this Court in favor of a courthouse populated by a judge who is the father of a member of plaintiffs' law firm, the complaint, as pled, establishes that the proposed class numbers more than 100 members and involves in excess of $5 million. Defendants have corroborated these allegations with admissible evidence, which plaintiffs have chosen not to refute. Simply put, CAFA affords federal jurisdiction, and plaintiffs' objection must be overruled.

Dated: February 3, 2009

**BRIGGS AND MORGAN, P.A.**

By: /s Timothy R. Thornton
    Timothy R. Thornton (#109630)
    Robin Caneff Gipson (#293428)
    Molly M. Borg (#0331922)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2157
(612) 977-8400
**ATTORNEYS FOR DEFENDANTS**