IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH IRISH, DENISE MARSHALL,
ALLEN MOORE, AND SCOTT STILLWELL
on behalf of themselves and all others similarly
situated, a class action,

         OPINION AND ORDER

      Plaintiffs,

         08-cv-469-slc

   v.

BNSF RAILWAY COMPANY,
BURLINGTON NORTHERN SANTA
FE RAILWAY CORPORATION, WILLIAM
BARBEE, FRANCIS A. WEBER, JOHN
DOE #1, JOHN DOE #2, ABC
INSURANCE COMPANY and DEF
INSURANCE COMPANY,[1]

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Plaintiffs Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell filed this

class action in the Circuit Court for Grant County, Wisconsin, seeking damages resulting

from a 2007 flood in the town of Bagley, Wisconsin.  Plaintiffs contend that the damages

---

  [1] Defendant BNSF Railway Company has advised the court that it was identified
erroneously as Burlington Northern Santa Fe Railway in plaintiffs' complaint.  I am
correcting the record to show its correct name.

1

were caused by man-made, preventable flooding onto plaintiffs' property attributable to the failure of defendants BNSF Railway Company, Burlington Northern Santa Fe Railway Corporation, William Barbee, Francis A. Weber and John Does #1 and #2 to design, construct and maintain the railway bridge and bridge trestle in and near Bagley.

Defendants removed the suit to this court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), whereupon plaintiffs filed a motion to remand it to state court, contending that it does not meet the criteria for federal diversity jurisdiction under either the diversity provisions of § 1332(a) or the special provisions of § 1332(d).  As to § 1332(a), they argued that plaintiffs were not of diverse citizenship from defendants.  As to § 1332(d), they argued that defendants had nothing but speculation to support their contentions that the plaintiff class would consist of 100 persons or more and that the damages sought would exceed $5,000,000.  They asserted in addition that their suit fell within one of the exceptions to the Act.

Because John Shabaz was on medical leave when the case was filed, it was assigned to United States Magistrate Stephen L. Crocker, pending the parties' determination whether they would agree to have him preside over the case.  The parties have made their determination; the case will be assigned to a visiting federal judge for trial.  Until that assignment can be made, I will decide any substantive issues that must be resolved.

The magistrate judge filed a report and recommendation under 28 U.S.C. §

2

636(b)(1), dkt. #27, recommending denial of plaintiffs' motion to remand and their accompanying motion for fees and costs incurred in bringing the motion.  (Although § 636(b)(1)(A) does not include motions to remand among the list of pretrial matters that magistrate judges cannot determine, these motions are sufficiently similar to the matters that are specifically prohibited that it was appropriate for the magistrate judge to proceed by report and recommendation, particularly when the motion to remand concerns a class action.)  The magistrate judge found that plaintiffs had not acted fraudulently in naming Wisconsin residents Barber and Weber as defendants but that the case should stay in federal court because it met the requirements of the Class Action Fairness Act (which does not require complete diversity between plaintiffs and defendants).  He found that the plaintiff class was likely to encompass 100 or more persons, 28 U.S.C. § 2241(d)(5)(B); plaintiffs' damages could easily exceed $5,000,000, § 2241(d)(2); and the case did not fit within either of the Act's express exceptions to federal jurisdiction.  § 1332(d)(4)(A) & (B)

Plaintiffs filed 26 pages of objections, focusing solely on the magistrate judge's determination that the plaintiff class would exceed 100.  They have not objected to his determination that the damages could exceed $5,000,000 or his conclusion that the case does not come within any exception to the Act.

OPINION

3

Motions to remand raise interesting questions about the placement of the burden of proof and the standard of proof that the party with the burden must meet in order to establish the existence of federal jurisdiction.  The Court of Appeals for the Seventh Circuit took on these questions in Meridian Security Ins. v. Sadowski, 441 F.3d 536 (7th Cir. 2006).  (The case arose under the Telephone Consumer Protection Act, 47 U.S.C. § 227, but the discussion of pleading standards and procedures is applicable to any case in which the existence of diversity jurisdiction is at issue.)  Meridian filed the suit in federal court under § 1332(a), alleging diversity of citizenship between it and its insured and seeking a declaratory judgment that it did not have to indemnify its insured for damages incurred in sending unsolicited advertising faxes to prospective customers.  After discussing the proper treatment of an indemnity claim in determining the amount in controversy, the court of appeals turned to the district court's holding that remand to state court was proper because Meridian had not proved by "a reasonable probability that jurisdiction existed."  The court disavowed this reasonable probability language as infelicitous and misleading.  Id. at 540.

The court of appeals acknowledged that the proponent of jurisdiction has the burden of proof, but the burden applies only to contested jurisdictional facts, which must be proven by a preponderance of the evidence.  Id. at 542.  "[J]urisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable "fact."  Id. at 541.  When it comes to a claim for damages, for example, once the proponent of jurisdiction has made a good faith claim (if she

4

is the plaintiff bringing suit in federal court) or a good faith estimate (if she is a removing

defendant), supported by uncontested factual allegations or contested factual allegations that

have been established in an evidentiary hearing by admissible evidence, federal jurisdiction

follows unless the judge concludes that it is legally impossible for the recovery to exceed the

jurisdictional minimum.  Id. at 542-43.  Uncertainty about the plaintiff's ability to prove his

claim or about the final amount of damages does not justify dismissal.  Id. at 543.

Meridian Security Ins. concerned the amount in dispute, but the holding of the case

applies equally to the prediction of class size, an element not present in the mine run

diversity case but critical to removal under the Class Action Fairness Act.  In this case,

plaintiffs listed by name in their complaint 53 class members who were either representative

plaintiffs or "other retained plaintiff class members" not named as representative plaintiffs.

Plaintiffs described the remaining, unnamed members of the plaintiff class as including all

> those persons, including occupants and owners, those government organizations, those non-profit organizations and those businesses, including insurers, and subrogees, who were damaged or injured by these man-made, preventable floodings and water invasions . . . minor children, relatives and other home companions of the plaintiff class members residing within and/or occupying the homes.

Plts.' Cpt., dkt. #2, at 7, ¶¶ 5 & 7.  At paragraph 42 of their complaint, plaintiffs alleged

that, in addition to the 53 named representative plaintiffs and retained plaintiff class

members, "at least another 25 households have been affected and therefore the total number

of Plaintiff Households affected approximates 58 with at least 74 adult household members

5

affected.  The Plaintiff Class is so numerous that joinder of each and every member of the Plaintiff Class is impracticable . . . ."

When defendants removed this case, they argued that plaintiffs' pleadings showed that the class encompassed more than 100 persons, when the households, government offices and commercial enterprises were included, along with children and other as yet unnamed occupants of property in Bagley.  In affidavits submitted in opposition to plaintiffs' motion to remand, defendants submitted exhibits from the Begley public property records showing that 286 separately deeded properties were located within the geographical class area described in the complaint and that the properties are owned by 369 different persons and entities.  The magistrate judge considered this evidence in reaching his decision that 100 persons or more fell within plaintiffs' class definition.  § 1332(d)(1)(B) ("The term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.")

Plaintiffs take issue with the magistrate judge's consideration of the evidence defendants submitted, asserting that he should have ignored it because it was untimely and inadmissible.  According to plaintiffs, defendants had only one opportunity and one way in which to introduce any evidence, which was by attaching admissible documents to their notice of removal.  When they failed to do this, defendants lost their chance to try to show that plaintiffs' proposed class encompassed 100 members or more.  In support of their

6

argument, plaintiffs cite Chase v. Stop 'n Save Warehouse Foods, Inc., 110 F.3d 424 (7th

Cir. 1997), but misconceive its holding.  In Chase, the court of appeals ruled that a court

could look outside the record to determine whether the amount in controversy had been met

for removal of a diversity action, but that in doing so, the court "is limited to examining only

that evidence of amount in controversy that was available at the moment the petition for

removal was filed." Id. at 428 (citing In re Shell Oil Co., 970 F.2d 355 (7th Cir. 1992) (per

curiam)).  In neither Chase nor Shell did the court of appeals hold that a party is limited to

only the evidence it submits with its notice of removal.  Rather, the court held that a party

cannot rely on any action or change in circumstances occurring after removal to support a

remand.  In both cases, the court of appeals held that a plaintiff could not avoid federal court

by filing a stipulation after removal saying that he or she was seeking less than the

jurisdictional amount as damages.  Instead, the court is to examine the grounds for

jurisdiction as of the time the notice of removal was filed.

In this case, defendants did not cite newly created evidence in support of their brief

in opposition to remand; they simply adduced evidence of the facts that existed as of the

time plaintiffs filed their complaint in state court.  The evidence was neither untimely nor

inadmissible. (Plaintiffs say that the evidence was not certified or sworn to as required under

Fed. R. Civ. P., but they are wrong.)  The magistrate judge acted properly when he

considered it.

7

Plaintiffs' overarching objection goes to the magistrate judge's decision that the plaintiff class could encompass more than 100 persons. They do not contest the accuracy of the tax records or property descriptions, but argue that the evidence was insufficient to support the magistrate judge's finding because it does not establish that every resident of Bagley incurred damages. They say that defendants did not show either that all of the residents were home when the flooding occurred and living within the path of the flooding or that each resident sustained the specific and multi-faceted damage that each representative plaintiff and retained plaintiff class member has alleged and which class membership requires. Moreover, they assert, defendants have not shown that all of the residents can satisfy the "geography test," which requires a showing that each potential plaintiff lived "upstream and/or tributary to" the Glass Hollow Drain.

A fair reading of the pleadings shows that plaintiffs anticipated that the class would be greater than the 53 persons named in the complaint. Why else would plaintiffs provide in their complaint for a third group of plaintiffs? That they thought the class would grow is evident from their use of the words, "at least" in referring to the number of class members and the total number of affected households in paragraphs 41 and 42 of the complaint. This alone would be sufficient to meet the Act's requirement of 100 plaintiffs, but defendants demonstrated that several hundred persons could fall within the class definition. At this point, the only question is whether plaintiffs have shown that it is a legal certainty that this

8

jurisdictional requisite will not be met.  <u>Meridian Security Ins.</u>, 441 F.3d at 541.  As the magistrate judge concluded, it is not.

One final matter.  Plaintiffs included in their objections a complaint that the magistrate judge acted improperly when he consulted the internet to determine the corporate defendants' net worth.  Having abandoned any objection to the conclusion that the damages could exceed $5,000,000, they have no reason to object to his going outside the record to consider this fact.  In any event, it had no bearing on the question of damages; the record proof on that point shows that the homes and personal property subjected to flooding are worth more than $5,000,000.  The assessed value of the homes in the area exceeds $9,000,000 and the homes are only one category of damages claimed.


ORDER

IT IS ORDERED that the report and recommendation issued by the United States Magistrate Judge on January 5, 2009, is ADOPTED and the motion to remand filed by plaintiffs Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell is DENIED, as

is their requests for fees and costs incurred in seeking remand.

Entered this 4th day of February, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

10