UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell, on behalf of themselves and on behalf of all others similarly situated, a class action, | Civil File No. 08-469 |
| Plaintiffs, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT AND PARTIAL MOTION TO DISMISS** |
| BNSF Railway Company, Burlington Northern Santa Fe Corporation, William Barbee, Francis A. Weber, John Doe #1, John Doe #2, ABC Insurance Company and DEF Insurance Company, | |
| Defendants. | |

---

## INTRODUCTION

This motion is yet another maneuver aimed at foiling the exercise of this Court's jurisdiction. Having failed in previous attempts to escape federal court, plaintiffs now want to purge the complaint of class allegations. The purpose and effect of this latest scheme amounts to forum manipulation. On top of that, the stratagem abandons absent class members who until recently plaintiffs asserted they would adequately represent. Apparently the opportunity to "hometown" the railroad is more important to plaintiffs' counsel than the interests of the class on whose behalf this action was said to have been brought.

Plaintiffs could have avoided federal court by simply not pleading a class action that exceeded 100 members and put $5,000,000 in controversy. But, despite contrary

2320147v4

designs, the complaint asserted just that – piquing Class Action Fairness Act ("CAFA") jurisdiction, which BNSF promptly invoked. Rather than conceding the obvious proprietary of removal, plaintiffs strived to return to state court. The cost of plaintiffs' obstinance has been significant – dozens of pleadings have been interposed and great quantities of time and money have been spent.

Plaintiffs' abuse of the process cannot be indulged. At the very least plaintiffs must bear the substantial fees and costs engendered by their assertion and later disavowal of a federal cause of action. And regardless, the plot to hold the individual defendants in this case must now be rejected: neither Frank Weber nor William Barbee are charged with the duties that they supposedly breached, and the joinder of these low-level BNSF employees had as its singular purpose the frustration of federal jurisdiction. Plaintiffs' motion should be denied, and Weber and Barbee should be dismissed.

## BACKGROUND

The Court is already familiar with the procedural posture of this case. Plaintiffs brought this putative class action in Grant Count Circuit Court on behalf of all similarly situated property owners and occupants – *i.e.* virtually the entire population of Bagley. Based upon the complaint's sweeping class allegations, significant amount in controversy, and manipulative joinder of individual railroad workers, defendants promptly removed.

Plaintiffs sought remand – never once mentioning a complaint amendment or disclaiming class action appropriateness. Magistrate Judge Crocker concluded that CAFA's jurisdictional prerequisites had been satisfied and that this case should stay in

federal court. (Jan. 5, 2009 R&R.) Displeased with the forum afforded by the complaint, plaintiffs objected to the Magistrate's recommendation. Judge Crabb almost immediately ratified the R&R, which should have ended the jurisdictional debate.

Following the confirmation of federal jurisdiction, plaintiffs sought to duck merits-based discovery and heralded, for the first time, the abandonment of class action certification. In furtherance of that procedural obfuscation, plaintiffs sought a protective order that would preclude necessary and relevant discovery. That motion has yet to be decided.

Now mired in an unwanted forum – and three months beyond the December 15, 2008 deadline for amending pleadings – plaintiffs conjure up another federal court avoidance canard. By excising class action allegations from a complaint (still captioned a "class action"), plaintiffs hope to return to their hometown venue, complete with a presiding judge who is the father of a lawyer in the plaintiffs' law firm and who has refused voluntarily to recuse himself.

This Rule 15 legerdemain is the paradigm of forum manipulation. Plaintiffs' motion to remand, discovery stonewalling, and class action repudiation demonstrate that they will resort to any means to control the place of this litigation. Such chicanery necessarily admits that plaintiffs' specious claims cannot pass the procedural and evidentiary muster to which they would be held in a federal forum. For that reason alone, this jurisdictional gambit must fail.

The federal courts have no interest in indulging venue machinations, and the rules of civil procedure were not promulgated to facilitate such schemes. Nothing prevented

plaintiffs from bringing a simple four claimant complaint in the first place. And if plaintiffs had promptly sought to amend shortly after this lawsuit was commenced, the time and resources that this Court and defendants have been forced to expend could have been conserved. As it is, however, plaintiffs' tactics compel the conclusion that this motion is improperly motivated, fatally tardy, and highly prejudicial. At the very least plaintiffs must bear the costs that their venue scam has inflicted upon defendants.

## ARGUMENT

### I. NO GOOD CAUSE TO JUSTIFY SCHEDULING ORDER RELIEF

"Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Campania Mgmt. Co., v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th Cir. 2002). Specified deadlines must be taken seriously: the scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Reins. of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted). To get more time, plaintiffs "must show that, even having exercised due diligence, [they] could not have reasonably met the . . . deadline." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 975 (W.D. Wis. 2008) (Crabb, J.).

The scheduling order set December 15, 2008 as the drop dead date for pleading amendments. Plaintiffs do not pretend that they could not have asked for leave to recast their pleadings before that cutoff. In fact, plaintiffs offer nothing by way of explanation for their delay in bringing this motion or for their lack of due diligence. To make matters

worse, plaintiffs steadfastly advocated their class claims – to the parties and the Court during the Rule 16 conference, in their motion to remand, and by way of their R&R appeal.

This motion blithely ignores plaintiffs obligation to proffer new facts or unforeseen circumstances that could support a belated amendment or demonstrate due diligence. Accordingly plaintiffs have not come close to showing a good faith justification for this untimely request. Trepidation over the rigors of litigation in federal court does not constitute good cause sufficient to excuse hopelessly late motion practice. Plaintiffs have not carried their Rule 16 burden; leave to amend should be denied.

## II.  FORUM MANIPULATION SHOULD NOT BE ENCOURAGED.

### A.  Pleading amendments are allowed only when "justice so requires."

Even if plaintiffs could overcome the scheduling order and Rule 16 show-stoppers they face, Rule 15 presents even more insurmountable obstacles. Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that leave should only be given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Seventh Circuit reads the rule to sanction the denial of bad faith attempts to amend. *Textor v. Bd. Of Regents of N. 111 Univ.*, 711 F.2d 1387, 1391 (7th Cir. 1983) (leave to amend should be rejected when a motion is brought in bad faith). *United States Labor Party v. Oremus*, 619 F.2d 683, 692 (7th Cir. 1980) (pleadings amendments that could have been presented earlier demonstrate bad faith warranting denial); *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (late and prejudicial amendments precluded).

A party's failure to proffer support for an untimely motion to amend – as in this case – alone justifies rejection. *See Yates v. Village of Brown Deer*, No. 06-C-665, 2007 WL 2874944, at *5 (E.D. Wis. Sept. 28, 2007 (failure to even attempt to rationalize complaint amendment delay compels denial). As one court explained, Rule 15(a) is not a device for coddling plaintiff tribunal preferences:

> The liberal amendment provisions of Rule 15(a) are designed to help the parties and the court reach the merits of a dispute; they should not be applied in a manner that frustrates that very function. <u>Such frustration would result if a plaintiff were permitted to amend a complaint solely to manipulate the forum in which the complaint will be heard</u>.

*Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1087 (C. D. Cal. 1999).

The procedural context of this case prevents plaintiffs from demonstrating that the interests of justice would be served by allowing the amendment. In fact, the contrary is true: class representatives would be allowed to throw the class under the bus to promote forum shopping, and defendants would be deprived of the forum to which they are entitled.

Plaintiffs' utter failure to proffer a justification for their amendment speaks volumes. The only explanation for why plaintiffs' lawyers would decimate a complaint by forsaking the claims of a class and scrapping the claims of "the other [54] Retained Class Members" and "at least another 25 households" is forum manipulation. (Compl. ¶¶ 40, 42.)

**B.    Justice would be subverted by forum manipulative amendments.**

The proposed amendment is unquestionably and exclusively intended to shanghai this action back to state court. The CAFA's legislative intent abhors such tactics:

2320147v4

6

> CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction. The statutory language notes that class action lawsuits are an important and valuable part of the legal system because they allow aggregation of claims so that a defendant faces only a single action. Furthermore, CAFA states that there have been abuses of the class action device, including that state and local courts are keeping cases of national importance out of Federal court. According to the relevant Senate Report, CAFA was necessary because the previous law enabled lawyers to game the procedural rules and keep nationwide or mulit-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests. CAFA provides defendants with access to federal courts, making it harder for plaintiffs' counsel to game the system by trying to defeat diversity jurisdiction, creating efficiencies in the judicial system by allowing overlapping and copycat cases to be consolidated in a single federal court, and placing the determination of more interstate class action lawsuits in the proper forum-the federal courts.

*Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407-08 (6th Cir. 2008) (denying remand despite complaint amendment) (internal quotations and citations omitted).

The legislative history reprehends the exploitation of Rule 15's liberal pleading amendment policies for the purpose of shopping forums:

> Current law . . . is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be "ousted" by later events. Thus, for example, changes in the amount in controversy after the complaint has been removed would not subject a lawsuit to be remanded to state court . . . Sound policy reasons support this rule. If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court . . . Similarly, a defendant prevailing on the merits always shows that the amount in controversy, at the end of the day, is zero. Thus, if subsequent events could unravel a federal court's jurisdiction, a defendant could prevail on the merits, only to have the federal court conclude that it lacks jurisdiction to enter a judgment.

S. Rep. No. 109-14, at 70-71, *reprinted in* 2005 U.S.C.A.A.N. 66.

Federal courts stand ready to just say no to federal question and diversity jurisdiction defeating amendments. In *Payne v. Parkchester North Condominiums*, for example, a state court complaint asserted several claims, including some that had federal jurisdiction ramifications. 134 F. Supp. 2d 582, 583 (S.D.N.Y. 2001). As should have been expected the case was removed. *Id*. The plaintiffs thereafter scrambled to restate the complaint so that the action could return to state court. *Id*.

The district court disdained the attempt based on the "crucial" consideration of "whether the plaintiffs have tried to manipulate the forum." *Id*. at 584. After reviewing precedents throughout the nation, the court identified three rationales – time and resources conservation, Congressional intent, and a sense of fair play – for rejecting amendments contrived to vitiate removal jurisdiction. *Id*. (citing *Hammond v. Terminal R.R. Ass'n*, 848 F.2d 95, 97 (7th Cir. 1988); *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1198, 1201-02 (S.D. Ind. 2001); *Olmstead v. Beverly Enters.-Fla., Inc.*, Nos. 96-1941-Civ.-T-17B, 96-2597-Civ.-T-17, 1997 WL 155410, *3 (M.D. Fla. Mar. 17, 1997); *Bradford v. Olympic Courier Sys., Inc.*, No. CV 96-5693, 1997 WL 570720, *1-3 (E.D.N.Y. Sept. 2, 1997); *Greenwald v. Palm Beach County*, 796 F. Supp. 1506, 1506-07 (S.D. Fla. 1992)) (other citations omitted).

The rationale for refusing to condone jurisdictional gamesmanship is equally applicable to this case:

> When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to

>state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the] plaintiff ... cannot be condoned.

*Id*. at 584-85 (quoting *Austwick v. Bd. of Educ.*, 555 F. Supp. 840, 842 (N.D. Ill. 1983)). The course of this litigation exemplifies how judicial resources can be wasted by the jurisdictional jockeying of opportunistic plaintiffs.

The attempt to divest the court of jurisdiction by means of pleading manipulation was flatly rejected in *Clinco*. The *Clinco* plaintiffs sought to add non-diverse parties to a complaint that had been removed. 41 F. Supp. 2d at 1081-82. The attack on diversity jurisdiction was rebuffed as forum shopping. The court explained that "[w]hen a case has been removed to federal court, . . . Rule 15(a)'s presumption of the amendment's validity cannot apply. Once a case has been removed, a diversity-destroying amendment could be motivated by the plaintiff's desire to gain procedural advantage by returning to state court rather than a desire to reach the merits." *Id*. at 1087-88. Hence, amendments that "could be" motivated by forum shopping should not enjoy the same favorable treatment as Rule 15 would otherwise afford.

For that reason, federal courts routinely deny amendments that smack of forum manipulation. *See, e.g., Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804-05 (9th Cir. 1987); *Bevels v. Am. States Ins. Co.*, 100 F. Supp. 2d 1309, 1312-13 (M.D. Ala. 2000). *See also Roberts v. Standard Ins. Co.*, No. 04 C 2027, 2004 WL 2367741, at *3 (N.D. Ill. Oct. 15, 2004) (having "the sole purpose of defeating the court's diversity jurisdiction . . . militates heavily in defendant's favor against granting the amendment") (citation omitted). The legal principle is the same regardless of whether CAFA, federal question

or diversity jurisdiction is at issue – jurisdictional circumvention in any grab mocks federal rule intent. *Payne*, 134 F. Supp. 2d at 584-85. Forum manipulation is the obvious motivation for the motion to amend: why else would those lawyers jettison hundreds of potential claimants, only to reassert many of those claims if this case were to be returned to the familiar and familial environs of the local courthouse.

        C.        **<u>The forum shopping that is afoot cannot be tolerated.</u>**

Plaintiffs do not explain why they did not ask to amend by the December 2008 deadline or why the request followed immediately on the heels of CAFA jurisdiction confirmation. Although the basis for federal jurisdiction has been manifest since the action was removed in August 2008, plaintiffs did not recant class action allegations until they realized that their pleadings had ensnared this action in federal court. In view of plaintiffs' manipulative designs it certainly cannot be said that "justice so requires" this amendment. Fed. R. Civ. P. 15(a). Instead, allowing the amendment would contrive the purpose and intent of the rule. *Clinco*, 41 F. Supp. 2d at 1087.

The jurisdictional subterfuge to which plaintiffs have resorted is not novel. Federal courts have long spurned forum manipulation forays that are indistinguishable from the ruse that plaintiffs have asked this Court to endorse. The *Payne* court recognized the jockeying between state and federal court for what it was: "a drain of the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [like that] cannot be condoned." 134 F. Supp. 2d at 584 (quotation omitted). Importantly, "allowing a plaintiff to destroy removal jurisdiction by amending

his complaint to eliminate all federal [claims] is violative of [legislative] intent." *Olmstead*, 1997 WL 155410, at *3.

Plaintiffs apparently rely on the liberality of Rule 15[1] and nothing else. But the principles of fairness underlying pleading amendment policies have no bearing on this case. Plaintiffs chose not to file a brief and thus offer nothing in support of their request to amend. Such silence is not surprising – all plaintiffs could say is that they are prepared to do anything to escape a federal forum. That objective implicates the Supreme Court's admonition about "forum manipulation concerns [being] legitimate and serious." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988). The high court emphasized that those concerns must be carefully considered in the "amend and remand" analysis in order to "guard against forum manipulation." *Id*. n.12. *Carnegie-Mellon* was not about to allow Rule 15 finagling to become a means for jurisdictional shuffling.

Plaintiffs cannot seriously argue that the proposed amendment would not be prejudicial. The prejudice is palpable – BNSF has been forced to respond to a motion to remand, a motion for a protective order, and now a motion to amend. Granting this motion at this stage of the litigation would render defendants' considerable efforts and expenditures for naught. Blatant forum manipulation – the indisputable purpose of this motion – is unquestionably an illegitimate reason for amending a complaint. *Carnegie-Mellon*, 484 U.S. at 357.

---

[1] Plaintiffs' cursory motion references other federal rules. None of the cited rules, however, apply and therefore do not warrant a response.

"[T]he plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[W]hile it is true that the well-pleaded complaint rule allows a plaintiff to decide whether or not to allege federal claims, the rule does not give plaintiffs free reign to forum shop." *Payman v. Lee County Cmty. Hosp.*, 338 F. Supp. 2d 679, 684 (W.D. Va. 2004) (citation omitted). The law is clear: the invocation of federal jurisdiction cannot be thwarted by *ad hoc* complaint amendments.

### III.   PLAINTIFFS MUST BEAR THE COST OF THEIR SHENANIGANS

The attempt to manipulate the forum has put defendants to considerable expense. Specifically, plaintiffs' repeated assaults upon federal jurisdiction compelled defendants to oppose remand, to oppose the protective order, and most recently to oppose the restatement of the complaint – to the tune of tens-of-thousands of dollars. And, the drum beat does not stop with these performances. If plaintiffs were allowed to amend, a remand would undoubtedly be played. The railroad would again vehemently oppose. Thereafter, nothing would prevent plaintiffs from reprising class action allegations or joining as named plaintiffs the 54 "other Retained Class Members" and "at least another 25 households" who to facilitate this motion have conveniently been left behind. (Compl. ¶ 40.) Such re-orchestration of this litigation would perforce start the motion practice music all over again and may well lead to another removal engagement.

Plaintiffs rigorously fiddle to flee this Court for the singular purpose of securing a more favorable audience. Such dissonance more than justifies lowering the curtain on the pending motion. But if the Court were inclined to give an ear to the amendment,

plaintiffs must be held responsible for the costs their jurisdictional noise has caused. Justice most certainly requires that plaintiffs pay the piper for the cacophony of motions that they have trumpeted.

Federal courts have put the cost of abusing the rules on the abuser. For instance, after the complaint in *Galva Union Elevator Co. v. Chicago & North Western Transp. Co.*, had been removed, the plaintiff sought dismissal without prejudice, in order to re-plead the case so as to prevent removal. 498 F. Supp. 26, 27 (N.D. Iowa 1980). The court conditionally granted the motion, subject to the defendant being reimbursed for costs and attorney fees. *Id*. at 27-28. *See also Bishop v. W. Am. Ins. Co.*, 95 F.R.D. 494, 494-95 (N.D. Ga. 1982) (taxing costs against a plaintiff who moved to dismiss an action that had been filed in state court but removed to federal court).

These plaintiffs deserve the same medicine. They have gamed the process ever since this Court's jurisdiction was invoked. Parties cannot be allowed to engage in forum manipulation without being held responsible for the considerable and unnecessary expenses spawned by such endeavors.

## IV. REGARDLESS, BARBEE AND WEBER SHOULD BE DISMISSED

If the Court were to permit the amendment, besides making plaintiffs pay, defendants Barbee and Weber should be let go. The proposed amended complaint accuses Weber and Barbee as "supervisory employees" of breaching purported "inspection, investigation, monitoring and maintenance" duties. Yet the unrefuted evidence establishes that neither Barbee nor Weber have responsibility for bridges and

trestles and that any liability, if proven, would be with the railroad, and not the individual defendants.

The proposed amended complaint asserts four causes of action, premised on nuisance and negligence. Although Wisconsin law provides that "[a]n individual is personally responsible for his own tortious conduct," plaintiffs must nevertheless allege and demonstrate a defendant's commission of the underlying tortious act. *See Collins-Hansen v. Bartelt Filo*, 726 N.W.2d 357 (Wis. Ct. App. 2006).

To make the requisite showing, plaintiffs must establish (1) that Barbee and Weber breached some purported duty of care and (2) that Barbee and Weber intentionally caused plaintiffs' to be inundated with flood waters. *See, e.g., Nichols v. Progressive N. Ins. Co.*, 746 N.W.2d 220, 225 (Wis. 2008) (negligence requires plaintiff to allege the "existence of duty of care on the part of the defendant"); *Butler v. Advanced Drainage Sys., Inc.*, 698 N.W.2d 117, 130 (Wis. Ct. App. 2005) (nuisance premised on negligence fails in absence of underlying negligent conduct) *aff'd* on other grounds, 717 N.W.2d 760 (Wis. 2006); *Milwaukee Metropolitan Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 665 (Wis. 2005) (intentional nuisance requires the actor either to "act for the purpose of causing it or know that it is resulting or substantially certain to result from his conduct") (citation omitted). As a matter of law, plaintiffs' claims against Barbee and Weber in their individual capacities cannot survive Rule 12 scrutiny.

The complaint only charges Barbee and Weber with breaching "inspection, investigation, monitoring and maintenance of the Burlington Trestle duties." (Proposed Am. Compl. ¶¶ 18-19.) But the undisputed evidence clearly shows that Barbee and

Weber had no such responsibility. In fact, BNSF employees Jeffrey Haas and Louis Welte were delegated the job of taking care of bridges. *See* Affidavits of Louis Welte and Jeffrey Haas, Clerk Doc. Nos. 18-19.

Plaintiffs have had every opportunity to develop a contrary record, but have failed to do so. Because Weber or Barbee cannot be held accountable for bridge and trestle investigation, inspection, monitoring or maintenance, the amended complaint fails, as a matter of law, to state viable negligence or negligent nuisance claims against those individuals.

The intentional nuisance claim is similarly flawed. The proposed amendment complains that the individual defendants failed to prevent blockages and obstructions of the trestle underpasses and that this misconduct constituted an intentional nuisance. Again, neither Barbee nor Weber were assigned bridge-related duties, so they cannot, as a matter of law, be liable for the non-performance about which plaintiffs complain. The joinder of the individual defendants is just a further demonstration of the federal jurisdiction evasion that has been the hallmark of plaintiffs' litigation strategy. Barbee and Weber should be dismissed.

## CONCLUSION

Plaintiffs' motion is nothing more than a bald-faced attempt to shop a more friendly forum. The Court should not turn a blind eye to plaintiffs' true intentions and costly machinations. The attempt to obviate federal jurisdiction should be put to rest, once and for all. Plaintiffs make no showing – must less one that satisfies the requisite "justice so requires" standard – to justify this untimely and manipulative motion. At the very least plaintiffs must bear the costs caused by their antipathy for federal jurisdiction.

Dated: April 3, 2009

          **BRIGGS AND MORGAN, P.A.**


          By: s/ Timothy R. Thornton
              Timothy R. Thornton (#109630)
              Robin Caneff Gipson (#293428)
              Molly M. Borg (#0331922)
          2200 IDS Center
          80 South Eighth Street
          Minneapolis, MN 55402-2157
          (612) 977-8400
          **ATTORNEYS FOR DEFENDANTS BNSF RAILWAY COMPANY, BURLINGTON NORTHERN SANTA FE CORPORATION, WILLIAM BARBEE AND FRANCIS A. WEBER**