UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Kenneth Irish, Denise Marshall, Allen
Moore and Scott Stillwell, on behalf of
themselves and on behalf of all others
similarly situated, a class action,

Plaintiffs,

v.

BNSF Railway Company, Burlington
Northern Santa Fe Corporation, William
Barbee, Francis A. Weber, John Doe #1,
John Doe #2, ABC Insurance Company
and DEF Insurance Company,

Defendants.

Civil File No. 08-469

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR RECONSIDERATION
OF COURT'S MAY 8, 2009 ORDER
REMANDING TO GRANT COUNTY**

## INTRODUCTION

In May 2008, Plaintiffs filed this class action complaint charging the railroad and two

BNSF employees with negligence, nuisance and statutory violations.  Defendants promptly

removed invoking both diversity and Class Action Fairness Act of 2005 ("CAFA") jurisdiction.

Following significant briefing – and without any indication of class action abandonment – the

Court confirmed the availability of this federal forum.

Apparently unwilling or unable to meet the rigors of litigation in federal court, plaintiffs

disavowed the class.  To prevent exposure of lawsuit frivolity, plaintiffs moved to stay discovery

and eventually sought permission to eliminate class allegations.  Notably, plaintiffs never made a

motion to remand.   Accordingly, the parties' briefs were limited to Rule 15 and 16

considerations.

On May 8, 2009, this Court allowed the amendment and deemed CAFA jurisdiction to be lacking. This *sua sponte* disposition of an "implied motion to remand" denied defendants the opportunity to brief jurisdiction and overlooked controlling Seventh Circuit precedent, confirming that, despite post-removal pleading machinations, federal jurisdiction endures.

On top of that, plaintiffs' claims are completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), which affords an independent basis for federal jurisdiction. The May 8, 2009 Order never considered the complete preemptive effect of the ICCTA – a jurisdictional basis that had not previously been raised because CAFA was found to be sufficient.

Defendants fully appreciate that motions for reconsideration are viewed with disdain, but controlling law demonstrates the propriety of federal jurisdiction. Defendants therefore ask the Court to reconsider and vacate the May 8, 2009 Order and to deny the "implied" motion to remand.

## ARGUMENT

### I.    STANDARD FOR RECONSIDERATION

The rules enable a party to ask a court to alter or amend any judgment. *See* Fed. R. Civ. P. 59(e); 60(a)-(b). Pursuant to Rule 59(e), a court may change a result if the moving party demonstrates either a manifest error of law or fact or offers newly discovered evidence. *See Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1986). Similarly, Rule 60(b) provides relief from judgment for a variety of reasons, including mistake and inadvertence, as well as newly discovered evidence. *See* Fed. R. Civ. P. 60(b).

Although motions to reconsider are for exceptional circumstances, such a procedure performs "a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error

not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A court's misapplication or failure to recognize controlling precedent warrants reconsideration. *Id.*; *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

## II.   **CAFA JURISDICTION LIES**

Jurisdiction is determined at the instant of removal. *In re Shell Oil, Co.*, 970 F.2d 355, 356 (7th Cir. 1992). This premise extends to CAFA jurisdiction. *Bullard v. Burlington N. Santa Fe Ry. Co.*, No. 07-C-6883, 2008 WL 4104355, at *8 (N.D. Ill. Aug. 29, 2008) ("Whether defendants have satisfied the requirements of CAFA, including its 100-person minimum threshold, is determined at the time of removal."). The Seventh Circuit holds that once CAFA removal has been properly effected, nothing "filed after a notice of removal can affect federal jurisdiction." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008). A plaintiff cannot elude federal jurisdiction by after-the-fact complaint manipulation. *See Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006) (discussing CAFA jurisdiction).

The Seventh Circuit has rejected post-removal attempts to defeat CAFA jurisdiction. Removal was sustained in *Bullard* because the complaint presented a "mass action" pursuant to 28 U.S.C. § 1332(d)(11), which extends federal jurisdiction to lawsuits that encompass 100 or more litigants, at least one demand of $75,000, an amount in controversy in excess of $5 million and minimal diversity. 535 F.3d at 761. The plaintiffs nonetheless sought remand, unilaterally declaring that the cases of all 144 plaintiffs would never be tried. *Id.*

The appellate court rejected the jurisdictional avoidance scheme, reaffirming long-standing precedent about post-removal filings being incapable of divesting federal jurisdiction. *Id.* at 762 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938) and

*In re Shell Oil*, 970 F.2d at 356); *see also Prince v. Rescorp Realty*, 940 F.2d 1104, 1105 (7th Cir. 1991) (jurisdiction retained even though plaintiff abandoned federal claim; subject matter jurisdiction attached at the time of removal and "tactical [jurisdictional] manipulation by the plaintiff cannot be condoned").

A month later, the district court brought the appellate jurisdictional admonition to bear on yet another attempt to escape federal court. *Bullard*, No. 07-6883, 2008 WL 4104355, at *8-9 (N.D. Ill. August 29, 2008). The plaintiffs sought to dismiss fifty-three plaintiffs in order to bring the litigant count below the 100 member CAFA threshold. *Id.* Adhering to the Seventh Circuit's assessment of CAFA jurisdiction, the trial court concluded that "[i]n any case, the subsequent voluntary dismissal of certain plaintiffs would have no effect on the Court's subject matter jurisdiction over this case." *Id.* at *8. "Whether defendants have satisfied the requirements of CAFA, including its 100-person minimum threshold, is determined at the time of removal." *Id.* Because CAFA jurisdiction attached when the case was removed, federal jurisdiction persisted. *Id.*

Other jurisdictions have similarly rejected removal avoidance tactics that are identical to the jurisdictional evasion in this case. *Brinston v. Koppers Industries, Inc.* dealt with facts that are almost indistinguishable from this case. 538 F. Supp. 2d 969 (W.D. Tex. 2008). After defendants removed, plaintiffs sought to drop class allegations. *Id.* at 974. Although the amendment was permitted, CAFA jurisdiction prevailed:

> Nevertheless, the amendment does not divest the court of jurisdiction under CAFA. The basis for federal jurisdiction under CAFA is established at the time of removal, and once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot oust the federal court of jurisdiction. Even the fact that a purported class is not actually appropriate for certification does not destroy CAFA jurisdiction, because jurisdiction is based on class allegations in the pleadings at the time of removal. Moreover, the Fifth Circuit has explicitly stated that post-removal amendments made solely to destroy

CAFA jurisdiction do not justify remand. Accordingly, the Plaintiffs' motion to amend the complaint is GRANTED, but to the extent Plaintiffs seek a remand of the case to state court, their request is DENIED.

*Id.* at 974-75 (internal citations and quotations omitted); *see also Garcia v. Boyar & Miller*, 2007 WL 1556961 (N.D. Tex. May 30, 2007) (post-removal pleading amendment excising class allegations does not vitiate CAFA jurisdiction).

In fact not even the post-removal denial of class certification extinguishes CAFA jurisdiction. As the *Genenbacher v. CenturyTel Fiber Company II, LLC*, court explained:

This case is fundamentally based on diversity jurisdiction. CAFA changed the requirements for meeting diversity jurisdiction for class actions, but did not establish a new basis for jurisdiction. Diversity jurisdiction is determined at the time the complaint is filed. Subsequent changes to the residency of the parties or the amount in controversy does not destroy diversity jurisdiction. At the time of the filing, the Complaint alleged facts that invoked this Court's removal jurisdiction based on diversity of citizenship under CAFA. The subsequent reduction in the amount in controversy and elimination of the class claims does not remove that diversity jurisdiction.

500 F. Supp. 2d 1014, 1015 (C.D. Ill. 2007). *Colomar v. Mercy Hospital, Inc.* similarly exercised CAFA jurisdiction despite refusing to certify the class because "there is nothing in CAFA suggesting that the time for assessing removal jurisdiction has been modified." No. 05-22409-CN-SEITZ, 2007 WL 2083562, at *2-3 (S.D. Fla. July 20, 2007).

Reducing the amount of controversy to less than the CAFA threshold did not send *Davis v. Homecomings Financial* back to state court because "there is no indication that Congress intended to alter the established authority" recognizing that removal propriety– including CAFA removal – is determined at the time of removal. No. C05-1466RSL, 2007 WL 905939, at *1 (W.D. Wash. Mar. 22, 2007). *See also Bradford v. Union Pacific R.R. Co.*, No. 4:05-CV-4075, 2008 WL 926551, at *1 (W.D. Ark. Apr. 7, 2008) (denying class certification did not warrant remand because: "Jurisdiction before this Court was proper at the institution of suit, and subsequent events have not divested the Court's jurisdiction."); *Moniz v. Bayer A.G.*, 447 F.

Supp. 2d 31, 36 (D. Mass. 2006) (amendment to reduce amount in controversy below CAFA threshold did not abrogate CAFA jurisdiction); *Robinson v. Holiday Universal, Inc.*, No. 05-5726, 2006 WL 470592 (E.D. Pa. Feb. 23, 2006) (dismissal of removing defendant did not divest court of CAFA jurisdiction; plaintiffs cannot "unring the bell" to achieve remand).

CAFA's legislative history confirms that post-removal events cannot destroy federal jurisdiction:

> Current law . . . is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be "ousted" by later events. Thus, for example, changes in the amount in controversy after the complaint has been removed would not subject a lawsuit to be remanded to state court . . . Sound policy reasons support this rule. If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court . . . Similarly, a defendant prevailing on the merits always shows that the amount in controversy, at the end of the day, is zero. Thus, if subsequent events could unravel a federal court's jurisdiction, a defendant could prevail on the merits, only to have the federal court conclude that it lacks jurisdiction to enter a judgment.

S. Rep. No. 109-14, at 70-71 (2005), *reprinted in* 2005 U.S.C.A.A.N. 66. The pleading stratagem in this case is the paradigm of what Congress intended to prevent.

Seventh Circuit precedent, which recognizes that federal jurisdiction is determined at the moment of removal, shows the way. *In re Shell Oil, Co.*, 970 F.2d at 356. Accordingly, plaintiffs cannot defeat federal jurisdiction by amending the complaint to abandon the class. This Court already confirmed the propriety of CAFA jurisdiction, and plaintiffs' post-removal pleading games cannot unring that bell. The May 8, 2009 remand contravenes controlling law.

## III.    THE ICCTA COMPLETELY PREEMPTS

Plaintiffs' claims also implicate ICCTA complete preemption. Potential defenses, including ordinary preemption – *i.e.*, that a state claim conflicts with a federal statute – do not confer federal jurisdiction. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Guly v.*

*First Nat'l Bank*, 299 U.S. 109, 115-16 (1936).   But the Supreme Court regards "complete preemption as an exception to this general rule." *Id.*

Complete preemption arises when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).   Once "an area of state law has been completely preempted, any claim based on that preempted state law claim is considered, from its inception, to raise a federal claim and therefore arises under federal law." *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996).

*Lundeen v. Canadian Pacific Railway Co.* is instructive.  447 F.3d 606 (8th Cir. 2006) (vacated on other grounds). [1]  Victims of a derailment brought common law negligence claims. The railroad removed, and the Eighth Circuit affirmed federal jurisdiction availability because the Federal Railroad Safety Act ("FRSA") pursuant to which regulations covering track inspections were promulgated, completely preempted state law track inspection claims.  447 F.3d at 611.  Critically, the *Lundeen* court confirmed complete preemption jurisdiction after plaintiffs had purged the complaint of the federal allegations that had initially provided the basis for removal.  *Id.*

Complete preemption arises when Congress intends for the federal statute to provide the exclusive remedy, and the statute provides whatever relief that might be encompassed by the substance of a complaint. *Beneficial*, 539 U.S. at 8 ("where this Court has found complete pre-emption. . . the federal statutes at issue provided the exclusive cause of action for the claim

---

[1]     Congress later amended the FRSA to provide that common law claims based upon the railroad's failure to comply with FRSA standards are not preempted.  *See Lundeen v. Canadian Pacific Railway Co.*, 532 F.3d 682 (8th Cir. 2008).

asserted and also set forth procedures and remedies governing the cause of action"). The availability of an equivalent or parallel federal remedy is not a prerequisite to the foreclosure of state law claims. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968) ("[t]he breadth or narrowness of the relief which may be granted under federal law ... is a distinct question from whether the court has jurisdiction over the parties and subject matter."). *See also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 n.4 (1987); *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 789 (7th Cir. 2002.)

The union in *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, removed a strike injunction lawsuit, arguing that § 301 of the Labor Management Relations Act ("LMRA") displaced state law claims  390 U.S 557, 558-59 (1968). The Court agreed even though no judicial recourse was afforded: the union could only be held accountable in the collectively bargained dispute resolution process; nonetheless § 301 completely preempted plaintiffs' claims.   The Supreme Court later confirmed judicial remedy unavailability is irrelevant to the complete preemption analysis: "[t]he necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action. . . ." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (emphasis added). Hence, the breadth of a federal statute's preemptive "power" – not the ability to proceed in federal court – is the touchstone of complete preemption. *Lundeen*, 447 F.3d at 614 (vacated on other grounds).

The Court must retain jurisdiction in this case because the ICCTA completely preempts plaintiffs' claims. 49 U.S.C. 10101, *et seq.* The ICCTA not only delegates exclusive jurisdiction over disputes about the construction or operation of railroad bridges to the Surface

Transportation Board ("STB"), but the legislation also provides the singular remedy for statutory violations and enables private parties to enforce STB orders. 49 U.S.C. § 11704.

A.    Congress Intended for the ICCTA to Preempt Plaintiffs' Claims.

The ICCTA was enacted to make the national rail transportation system more effective and efficient. This 1996 law revolutionized the rail transportation regulatory regime by replacing the Interstate Commerce Commission with the STB and greatly reducing the oversight to which the nation's railroads were subject. The ICCTA vests the STB with <u>exclusive</u> jurisdiction over nearly all aspects of railroad facilities and operations.

Section 10501(b) provides:

> The jurisdiction of the [Surface Transportation] Board over
>
> (i)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services and facilities of such carriers; and
>
> (ii)   the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is <u>exclusive</u>. Except as otherwise provided in this part, <u>the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.</u>

49 U.S.C. § 10501(b) (emphasis added).

"It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996). "The last sentence of § 10501(b) plainly preempts state law;" and "[t]he thrust of the [ICCTA] is to <u>federalize</u> these disputes. . . ." *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195, 202, 204-05 (1st Cir. 2000) (emphasis added). The

plain language "is clear that the ICCTA has preempted all state efforts to regulate rail transportation." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wis. 2000). *See also, Grafton & Upton R.R. Co. v. Town of Milford*, 337 F. Supp. 2d 233, 238 (D. Mass. 2004) ("The statutory language indicates an express intent on the part of Congress to preempt the entire field of railroad regulation, including activities related to but not directly involving railroad transportation."); *Engelhard Corp. v. Springfield Terminal Ry.*, 193 F. Supp. 2d 385, 389 (D. Mass. 2002) ("The concluding sentence of section 10501(b) is an unmistakable statement of Congress's intent to preempt state laws touching on the substantive aspects of rail transportation."); *Cedarapids, Inc. v. Chicago, Cent. & Pac. R.R. Co.*. 265 F. Supp. 2d 1005, 1013 (N.D. Iowa 2003) ("[I]n enacting the ICCTA, Congress intended to occupy completely the field of state economic regulation of railroads.")

ICCTA's legislative history confirms Congress' intent to effectuate "the direct and complete pre-emption of State economic regulation of railroads." H.R. Rep. No. 104-311, at 95-96 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793, 807-08 (emphasis added).   The ICCTA expresses no solicitude whatsoever for state police powers. The committee report notes: "The former disclaimer regarding residual State police powers is eliminated as unnecessary, in view of the ***Federal policy of occupying the entire field of economic regulation of the interstate rail transportation system.***"   H.R. Rep. 104-311 at 95-96, 1995 U.S.C.C.A.N. 807-08 (emphasis added).[2]

---

[2]   In fact, the House version of the ICCTA provided: "Except as otherwise provided in this part, the remedies provided under this part are exclusive and preempt the remedies provided under Federal or State law." H.R. Rep. 104-311 at 3, 1995 U.S.C.C.A.N. 793. The Committee Report stated that "this provision is conformed to the bill's direct and general pre-emption (sic) of State jurisdiction over economic regulation of railroads. As used in this section, 'State of Federal law' is intended to encompass all statutory, common law, and administrative remedies

The legislative intent that the ICCTA remedies with respect to railroads be exclusive is further demonstrated by provisions of the ICCTA that expressly save state law claims from the statute's preemptive force: e.g., the section dealing with motor carriers specifies that "the remedies provided under this part are in addition to remedies existing under another law or common law." 49 U.S.C. § 13103. Similarly, the pipeline provisions of ICCTA do not explicitly preempt state law claims. *See* 49 U.S.C. § 15301 et seq.

In contrast, the plain language of the ICCTA deputes exclusive jurisdiction over claims regarding railroad facilities to the STB. The Bagley plaintiffs complain about a railroad trestle over which BNSF trains transport property by rail. The complaint charges that that plaintiffs' properties were flooded as a result of defendants failure to properly "design, construct, guard, inspect, investigate, clean, and maintain the Burlington Northern Trestle …" (Complaint, ¶ 64.) But the ICCTA places the "construction" and "operation" of railroad "facilities" such as bridges, within the exclusive realm of the STB:

> Section 10501(b) makes it "manifestly clear that Congress intended to preempt. . . state statutes, and any claims arising therefrom, to the extent that they intrude upon the STB's exclusive jurisdiction over 'transportation by rail carriers' and 'the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.'"

*Railroad Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 563 (6th Cir. 2002).

A facility is a structure that is built or installed to serve a particular purpose. Merriam Webster's New Collegiate Dictionary (1981). The bridge about which plaintiffs complain was constructed to permit locomotives and rail cars to traverse a stream bed – *i.e.*, to enable rail

---

addressing the rail-related subject matter jurisdiction of the Transportation Adjudication Panel." H. Rep. 104-311 at 95, 1995 U.S.C.C.A.N. 807.

transportation. The regulation of the trestle is therefore within the absolute prerogative of the STB, leaving state courts and state laws without power over plaintiffs' claims.

Not only does the STB have jurisdiction, the ICCTA specifies that the remedies affecting "rail transportation" are exclusively statutory so as to preempt all state law relief. The ICCTA defines "railroad" as:

(A)  a bridge, car float, lighter, ferry, and intermodal equipment used by or in connection with a railroad;

(B)  the road used by a rail carrier and owned by it or operated under an agreement; and

(C)  a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation[.]

49 U.S.C. § 10102(6)(emphasis added). The definition of "transportation" includes:

(A)  a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

(B)  services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property[.]

49 U.S.C. § 10102(9).

Plaintiffs seek compensation as well as injunctive relief that would have the effect of regulating defendants' design, construction, maintenance and operation of the trestle in Bagley. That span is a "bridge" used to move property by rail; thus plaintiffs are seeking relief related to "rail transportation." The ICCTA restricts redress against rail-transportation facilities to remedies delineated in the statute: "Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). The

complaint contains no cause of action afforded by the ICCTA.   Instead only completely-preempted state-law claims have been asserted.

Federal courts, including those in Wisconsin, routinely find common law tort claims implicating rail facilities to be preempted by the ICCTA.  For example, the *Suchon v. Wisconsin Central Ltd.* plaintiff sought compensation for the nuisance created by vibrations and diesel fumes from passing trains.  No. 04-C-0379-C, 2005 WL 568057 (W.D. Wis. Feb. 23, 2005). These claims were said not to regulate transportation because the complaint only sought money damages.  The court disagreed, holding that putting a price on rail activity would be no different than regulation. *Id.* at *4.  "This section [49 U.S.C. 10501(b)] preempts Wisconsin nuisance law expressly, when an effort is made to apply the law to tracks used in providing rail transportation service. . . ." *Id.*

A common-law tort claim was similarly preempted in *Guckenberg*, which involved complaints about the coupling and uncoupling of trains, the squealing of wheels, noises from braking, the slamming of cars, the switching of train direction, the flying switches of railroad cars, the idling of locomotives, and other occurrences.  178 F. Supp. 2d 954, 956 (E.D. Wis. 2001).  The railroad responded that these common law nuisance claims were preempted by the ICCTA. *Id.*

The court assessed the defense by noting the ICCTA's preemption provision and acknowledging the expansive breadth the legislation had been afforded. *Id.* at 958.  Giving effect to statutory language, the court repudiated plaintiffs' common-law nuisance claims: "Under the plain terms of § 10501(b), Wisconsin cannot provide its citizens with 'remedies,' such as a suit at common law, to redress the effect of [the railroad's] operation of its side track because the remedies provided under the Act are 'exclusive and preempt' all other remedies." *Id. See*

*also Kiser v. CSX Real Prop., Inc.*, No. 8:07CV1266T24-EAJ, 2008 WL 4866024 (M.D. Fla. Nov. 7, 2008) (nuisance claim based upon a railroad's development plan preempted by the ICCTA).

State laws and regulations attempting to control railroad transportation have been found to be ICCTA preempted as a matter of course. *City of Auburn v. United States*, 154 F.3d 1025, 1029-31 (9th Cir. 1998) (ICCTA preempts state and local environmental review and permitting requirements supposedly applicable to a railroad's repair and improvement processes); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1012-15 (W.D. Wis. 2000); ("Limiting preemption to state laws aimed specifically at railroad regulation would arbitrarily limit the purposefully broad language chosen by Congress in the ICCTA"; accordingly, ICCTA preempted eminent domain against railroad operating property); *Green Mtn. R.R. Corp. v. Vermont*, 404 F.3d 638, 640-642 (2d Cir. 2005) (state's permit requirement preempted by ICCTA because such a requirement interfered with construction of a railroad transload facility).

The direct regulation of rail movement is not a prerequisite to the displacement of state law. The ICCTA preempts whenever the complained of conduct, if changed, would have some effect on rail transportation. For this reason, courts have routinely concluded that causes of action to redress flooding associated with railroad culverts, bridges, tracks and grading are preempted.

For example, in *Maynard v. CSX Transp. Inc.*, landowners accused the railroad of negligently permitting water to drain on to neighboring land:

> The track and the foundation of the track blocks natural drainage and it seeps under the railroad tracks without being directed and diffuses itself onto the property primarily of Patsy Maynard, but also onto the property of Mary Coleman. In addition the drainage on the crossings is not adequately maintained.

360 F. Supp. 2d 836, 841 (E.D. Ky., 2004). The court had no hesitation about holding these state law claims to be foreclosed by the ICCTA.

Similarly in *A&W Properties, Inc. v. The Kansas City Southern Railway, Co.* a landowner sought to compel a railroad to enlarge a culvert to prevent flooding. 200 S.W.3d 342 (Tex. App. 2006). The plaintiff resisted ICCTA preemption, arguing that the culvert was underneath the railroad bridge that bore the tracks and therefore rail transportation would not be affected. The court was not persuaded because any attempt to widen the culvert would interfere with rail transportation by halting train movements for some time, however short.

More recently the *In re Katrina Canal Breaches Consolidated Litigation,* plaintiffs complained about a railroad's negligent installation of a crossing, which contributed to flooding. No. 05-4182, 2009 WL 224072, at *6 (E.D. La. Jan. 26, 2009). The court granted the railroad's Rule 12(b)(6) motion:

> The design and construction of a railroad crossing and the roadbed for tracks is necessarily inextricably intertwined with the design and construction of the railroad tracks located at the crossing. Additionally, the design and construction on the railroad crossing, tracks, and road bed relates directly to CSXT's rail activity. ICCTA makes it clear that the Surface Transportation Board has exclusive jurisdiction over the "construction" of railroad tracks. Thus, the plaintiffs' claim that CSXT negligently designed and constructed the railroad crossing, tracks, and roadbed is preempted.

The Bagley plaintiffs complain that the improper design, construction, and maintenance of a railroad bridge caused their properties to be flooded. The design, construction, and maintenance of the trestle clearly relate to BNSF's conduct of rail transportation. The complained about trestle is a "bridge" used in "connection with the railroad," and the trestle is "property" "related to the movement of passengers and property by rail." BNSF's main line between the Twin Cities and Chicago traverses the bridge; the trestle is essential to the

15

movement of locomotives and railcars down the tracks. Without that bridge trains could not pass through Bagley, and the tracks are located directly on top of the trestle.

If that were not enough, the complaint seeks compensatory damages, punitive damages and statutory exemplary damages. The payment of an award in the magnitude plaintiffs seek would inevitably affect rail rates, routes and services. *See South Dakota Railroad Authority v. Burlington Northern & Santa Fe Railway Co.*, 280 F. Supp. 2d 919, 934 (claims completely preempted because "[t]he complaint seeks also a tort recovery and punitive damages. Any extremely high award for punitive damages could well seriously impact the ability of BNSF to serve the shipping public in South Dakota and elsewhere. Economic recoveries sought could well impact rates, routes and services.").

Thus plaintiffs' causes of action would clearly affect "railroad transportation." Yet the ICCTA precludes plaintiffs from using state-law tort claims to dictate how BNSF builds, uses and maintains property inextricably connected to interstate rail transportation.

Courts recognizing the ICCTA's complete preemptive force are legion. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535 (5th Cir. 2005) (rejecting remand and finding that the ICCTA completely preempted non-contractual claims for injunctive relief); *Cedarapids, Inc v. Chicago, Cent. & Pac. R.R. Co.*, 265 F. Supp. 2d 1005) (D. Iowa 2003) (ICCTA completely preempts state law claim); *Elam v. Kansas City Ry. Co.*, No. 1:08CV304-D-D 2009 WL 774404 (N.D. Miss. Mar. 24, 2009) (complete preemption of negligence claims related to railroad's failure to clear crossing, insufficient warnings of train's presence at crossing and to otherwise properly maintain crossing); *S.D. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D. S.D. 2003) (complete preemption of state law contract claims bearing on track use rights).

B.     The ICCTA Provides Federal Remedies.

The ICCTA establishes procedures and relief applicable to the federal railroad regulatory scheme. *See* 49 U.S.C. 11704(a) (providing civil cause of action for enforcement of STB order); 49 U.S.C. 11704(c)(1) (enabling private parties to file complaint with the STB or bring civil action for violation of ICCTA). Plaintiffs' dissatisfaction with the federal remedy provided by statute is of no import. "[C]omplete preemption can exist even where a particular plaintiff seeks a remedy that Congress chose not to provide when it effected complete preemption." *Rogers v. Tyson Foods, Inc*, 308 F.3d 785, 789 (7th Cir. 2002). As the Seventh Circuit has explained:

> [the] federal cause of action need not provide the same remedies as the preempted state cause of action. (The chance that the 'nature of relief' available under federal law might be different from that under state law does not affect the jurisdictional analysis.)

*Id.* at 790.

Consequently, the ICCTA completely preempts plaintiffs' claims so as to give rise to federal jurisdiction. The statutory language reflects Congress' intent to provide for an exclusive remedy as to claims implicating bridges used in rail transportation, and the legislation sets forth the only process pursuant to which plaintiffs can obtain relief.

## CONCLUSION

Controlling precedent confirms that jurisdiction is determined at the instant of removal, and that post-removal machinations, like the complaint amendment in this case, cannot deprive BNSF of this federal forum. In addition to CAFA, ICCTA complete preemption affords federal jurisdiction. This case presents the unique circumstance that warrants reconsideration of the May 8, 2009 Order. Defendants therefore request reconsideration and vacation of the May 8, 2009 Order. This lawsuit should remain where it belongs: in this federal forum.

Dated:  May 18, 2009

**BRIGGS AND MORGAN, P.A.**

By:   s/ Timothy R. Thornton
      Timothy R. Thornton (#109630)
      Robin Caneff Gipson (#293428)
      Molly M. Borg (#0331922)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2157
(612) 977-8400

**ATTORNEYS FOR DEFENDANTS
BNSF RAILWAY COMPANY,
BURLINGTON NORTHERN SANTA
FE CORPORATION, WILLIAM
BARBEE AND FRANCIS A. WEBER**

2350755v2

18