IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH IRISH, DENISE MARSHALL,
ALLEN MOORE, and SCOTT STILLWELL,

                                                                        OPINION and ORDER

                    Plaintiffs,

                                                                       08-cv-469-slc

     v.

BURLINGTON NORTHERN SANTA FE RAILWAY
COMPANY, BURLINGTON NORTHERN SANTA FE
RAILWAY CORPORATION, WILLIAM BARBEE,
FRANCIS A. WEBER, JOHN DOE #1, JOHN DOE #2,
ABC INSURANCE COMPANY, DEF INSURANCE
COMPANY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case involves a dispute regarding defendants' possible liability for damages resulting from a flash flood that inundated plaintiffs' homes in the town of Bagley, Wisconsin in 2007. (For the sole purpose of deciding the motion for reconsideration, I am assuming jurisdiction over the case, which has been assigned to Magistrate Judge Crocker.) Since the case was filed more than nine months ago, the parties have been unable to agree whether a state or federal forum has jurisdiction to hear it. The case's complicated history

bears elaboration.

Originally, plaintiffs filed this case as a proposed class action in the Circuit Court for Grant County. On August 11, 2008, defendants removed it to this court under 28 U.S.C. § 1447, asserting diversity jurisdiction under § 1332(a) despite the fact that two of the defendants had the same Wisconsin citizenship as plaintiffs. Defendants accused plaintiffs of having joined the in-state defendants for the purposes of defeating diversity. Defendants also asserted that plaintiff's complaint gave rise to diversity jurisdiction under the Class Action Fairness Act, which requires federal courts to exercise jurisdiction over class actions in which minimal diversity exists, the class exceeds 100 members and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d). Plaintiffs' moved to remand the case to state court, arguing that joinder was not fraudulent and that their suit was not subject to the Class Action Fairness Act. I agreed with plaintiffs that the joinder of the in-state defendants was not fraudulent, that it destroyed diversity jurisdiction under § 1332(a), but diversity jurisdiction existed under the Act, which requires only minimal and not complete diversity. In response, plaintiffs moved for leave to amend their complaint, disavowing their class action allegations and seeking relief for only the named plaintiffs. Defendants opposed the motion, arguing that it was too late and an attempt at forum manipulation. On May 8, 2009, I granted plaintiff's motion for leave to amend and remanded the case to the Circuit Court for Grant County on the ground that this court no longer had subject matter

2

jurisdiction under the Class Action Fairness Act.

Now before the court is defendants' motion to reconsider the court's May 8 order of remand under Fed. R. Civ. P. 59(e) and 60(b). Although defendants do not ask the court to reconsider the order granting plaintiffs' motion to amend, they contend that it was error to remand "sua sponte" after finding no basis for jurisdiction under the Class Action Fairness Act. Defendants took the position that if jurisdiction under the Act existed at the time of removal, it continued to exist thereafter, even if the case was no longer a class action. In addition, defendants argue for the first time that this court has subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claims are completely preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101. Plaintiffs oppose the motion for reconsideration, arguing that (1) this court lost jurisdiction to hear the case once it was remanded; (2) it was not error to remand the case; and (3) defendants waived their federal preemption argument; and (4) 49 U.S.C. § 10101 does not apply.

On June 8, 2009, defendants filed a notice of appeal of the court's remand decision with the Court of Appeals for the Seventh Circuit. Ordinarily, the filing of an appeal divests the trial court of jurisdiction to rule on defendants' motion for reconsideration. However, the court does not lose jurisdiction when there is a purported appeal from a non-final order. United States v. Bastanipour, 697 F. 2d 170, 173 (7th Cir. 1982).

Although the Court of Appeals for the Seventh Circuit has not said expressly that

3

courts have jurisdiction to hear motions to reconsider an order of remand, the court of appeals has held that in those situations in which the court of appeals has "jurisdiction to review a remand order, it would be efficient to allow the district court also to retain jurisdiction to reconsider its order." J.O. v. Alton Community Unit School District, 909 F.2d 267, 273 (7th Cir. 1990) (reviewing district court's decision to dismiss all federal claims and remand state claims to state court). 28 U.S.C. § 1447(d) provides that "an order remanding a case to the State court from which it was removed *is not reviewable on appeal or otherwise,* except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447 (d). (Emphasis added.) This is generally understood to preclude appellate review of remand orders except in cases involving removal by defendants in civil rights actions. Midlock v. Apple Vacations West, Inc., 406 F.3d 453, 456 (7th Cir. 2005) ("section 1447(d) strips the district court of jurisdiction to reconsider an order of remand issued by it"). However, as part of the Class Action Fairness Act, Congress enacted 28 U.S.C. § 1453, which authorizes appellate review of remands of class actions to state court, regardless of the provisions to the contrary in 1447(d). 28 U.S.C. § 1453(c) ("Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if

4

application is made to the court of appeals not less than 7 days after entry of the order."). I conclude that jurisdiction exists to hear defendants' motion to reconsider.

OPINION

Defendants have moved for reconsideration under both Rule 59 and Rule 60. Although similar in essence, these motions are directed at different considerations. In this case, Rule 59(e) is the appropriate mechanism for challenging the remand decision because defendant is asserting that May 6 decision was a mistake of law. Rule 60(b) permits a court to relieve a party from a final judgment, order or proceeding in limited circumstances: "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial" or "any other reason that justifies relief." Gleash v. Yuswak, 308 F.3d 758, 761 (7th Cir. 2002) ("rule [60(b)] is designed to allow modification in light of factual information that comes to light only after the judgment, and could not have been learned earlier"); see also West v. Schneiter, 485 F.3d 393, 395 (7th Cir. 2007) ("Rule 60(b)(6) may not be used to reopen an adverse decision unless extraordinary circumstances justify that step") (citing Gonzalez v. Crosby, 545 U.S. 524 at 536-37 (2005)). Legal error is not a proper ground for relief under Rule 60(b). Rule 59(e) allows review for errors of law. Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 529 (7th Cir. 2000).

5

Defendants' Rule 59 motion is timely. It was filed within ten days of the entry of judgment.

The court has authority to review and revise a previous ruling. In <u>Santamarina v. Sears, Roebuck & Co.</u>, 466 F.3d 570, 571-572 (7th Cir. 2006), the court of appeals affirmed a district decision to remand a class action to state court, holding that "[t]he authority of a district judge to reconsider a previous ruling in the same litigation . . . is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous."

Rule 59 motions are a mechanism to bring to the court's attention a manifest error of law or fact; they are not intended to provide an opportunity to reargue the merits of a case, <u>Neal v. Newspaper Holdings, Inc.</u>, 349 F.3d 363, 368 (7th Cir. 2003), or to submit evidence that could have been presented earlier. <u>Dal Pozzo v. Basic Machinery Co., Inc.</u>, 463 F.3d 609, 615 (7th Cir. 2006) (citing <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 828 (7th Cir. 1995)).

Defendants' motion to reconsider is directed primarily at my decision to remand the suit on the basis of a post-removal amendment of the complaint. However, defendants have asserted a separate basis for federal jurisdiction, namely the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101. They do not and cannot argue that it

6

was error to remand without considering this new ground for jurisdiction because they never raised the Act as a basis for federal jurisdiction until now. (Defendants say that they raised the issue of preemption in their first answer in which they said that "[t]he complaint is completely preempted and substantively preempted by federal and state law." Dkt. #3. Defendants are correct, but they never mentioned a federal preemption argument as a basis for removal or for retaining federal jurisdiction when briefing plaintiffs' motion to remand.) Although plaintiffs suggest that defendants' failure to raise this argument anywhere but in their first complaint should constitute waiver, subject matter jurisdiction is not subject to waiver. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). If I deny defendants' motion to reconsider the Class Action Fairness Act issue, I must still decide whether the ICC Termination Act requires that the case be heard in federal court.

Starting with the question of federal jurisdiction under the Class Action Fairness Act, defendants argue that for the purpose of determining whether subject matter jurisdiction exists in a case removed from state court under the Act, the court is bound by the allegations of the original complaint and may not consider any later amendments. Defendants cite Bullard v. Burlington Northern Santa Fe Railway Co., 535 F.3d 759 (7th Cir. 2008), but the case is inapposite. In Bullard, the court of appeals found that a plaintiff class could not "stipulate" to a trial of fewer than 100 of its members to avoid Class Action Fairness jurisdiction, which allows removal of a mass action with a class of 100 or more. Id. at 762.

7

The court of appeals did not consider whether an amended complaint withdrawing plaintiffs' class allegations would still be subject to diversity jurisdiction under the Act.

Bullard does not stand for the proposition that federal jurisdiction cannot be lost by a post-removal amendment. As I noted in the May 5 order, "like most legal generalizations, . . . the principle that jurisdiction once acquired is not defeated by a change of circumstances is not exceptionless." Walters v. Edgar, 163 F.3d 430, 432 (7th Cir. 1998). It is simply not true that a federal court always retains subject matter jurisdiction over a case despite later amendments. For example, 28 U.S.C. § 1447 (e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may . . . permit joinder and remand the action to the State court." If the "time of removal" rule were ironclad, it would be pointless to permit a district court to remand a case in circumstances in which joinder destroys diversity.

Defendants cite decisions in which other district courts have found that post-removal amendment do not affect the original diversity analysis. E.g., Genenbacher v. CenturyTel Fiber Co. II, LLC, 500 F. Supp. 2d 1014, 1015 (C.D. Ill. 2007); Brinston v. Koppers Industries, Inc., 538 F. Supp. 2d 969 (W.D. Tex. 2008); Colomar v. Mercy Hospital, Inc., No. 05-22409-civ, 2007 WL 2083562, at *2-3 (S.D. Fla. July 20, 2007). However, the Court of Appeals for the Seventh Circuit has not addressed the question whether a denial of class certification would eliminate diversity jurisdiction. Even the decision by District

8

Court for the Central District of Illinois defendant cites in support of its position contains an acknowledgment that this issue is unresolved: "The Court further certifies that it is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation." Genenbacher, 500 F. Supp. 2d at 1015. As I noted in the May 8, 2009 opinion, a number of district courts have reached a different conclusion from the one in Genenbacher. E.g., Xiao-Mei Jin v. Ben Bridge-Jeweler, Inc., No. 07-cv-1587, 2009 W2L 981600, at *1 (E.D. Cal. Apr. 9, 2009); Arabian v. Sony Elecs. Inc., No. 05cv1741, 2007 WL 2701340, at *3 (S.D. Cal. Sept. 13, 2007) ("[F]ollowing denial of class certification, no subject matter jurisdiction exist[s] under CAFA . . . "); Salazar v. Avis Budget Group, Inc., No. 07-cv-0064, 2008 WL 5054108, at *5 (S.D. Cal. Nov. 20, 2008) ("When this Court denied class certification, it determined there is not—and never was—CAFA diversity jurisdiction."); McGaughey v. Treistman, No. 05-cv-7069, 2007 WL 24935, at *3 (S.D.N.Y. Jan. 4, 2007). Therefore, I conclude that it was not error to conclude that the dismissal of plaintiff's class action claims eliminated the ground for the court's grant of diversity jurisdiction under the Class Action Fairness Act. Now that defendants have filed an appeal on this issue, a definitive answer may be forthcoming.

Turning to the newly raised claim of federal question jurisdiction by preemption,

defendant argues that federal jurisdiction is proper because the Interstate Commerce Commission Termination Act of 1995 expressly preempts the type of suit plaintiffs have brought. The Act provides as follows:

> (b) The jurisdiction of the [Surface Transportation Board] over-
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). Plaintiffs seek redress for defendants' improper or negligent design, construction or maintenance of a railroad bridge that caused damaging floods to occur. According to defendants, because plaintiffs' complaint contains allegations that address the way the railroad bridge was designed, constructed or maintained, it falls under the exclusive jurisdiction of the Surface Transportation Board. In addition, because plaintiffs seek a large sum of damages, the possibility that defendant might be found liable and would have to pay this sum would inevitably affect rail rates, routes and services.

      I am not persuaded that plaintiffs' complaint involves the type of dispute the Act

10

preempts, which is "all *state* regulatory authority over railroad operations." Guckenberg v. Wisconsin Central Ltd., 178 F. Supp. 2d 954, 957 (E.D. Wis. 2001) (emphasis added). This case does not involve an attempt to interfere with the regulation of a railroad or an effort to force defendants to comply with state regulations regarding the construction, design or maintenance of rail lines. Although plaintiffs' complaint implicates the standards used to construct or maintain rail lines, plaintiffs are not seeking to regulate or enforce the standards. In similar circumstances, numerous courts have found that common law claims such as plaintiffs' are not preempted. E.g., Emerson v. Kansas City Southern Ry. Co., 503 F.3d 1126, 1130-31 (10th Cir. 2007) ("Subjecting the Railroad to state law would not cause this case to fall into either of these categories. State tort law obviously has no pre-approval component, as it necessarily addresses wrongs that have already occurred; and if the Landowners prevail on remand, the applicable remedy under state law would not deny the Railroad the ability to operate or to proceed with a [Surface Transportation Board]-approved activity."); PCS Phosphate Co., Inc. v. Norfolk Southern Corp., 520 F. Supp. 2d 705, 717 (W.D. N.C. 2007) (Act does not preempt claims for breach of contract and breach of easement covenant touching upon railroad lines and property); Rushing v. Kansas City Southern Railway Co., 194 F. Supp. 2d 493, 501 (S.D. Miss. 2001) (plaintiff's state law and negligence claim for drainage problems resulting from construction of rail line is not pre-empted by Act). In Emerson, 503 F. 3d at 1128, a case with remarkably similar facts, the

11

the Court of Appeals for the Tenth Circuit found no federal preemption under the Act.

> The Landowners allege that when the Railroad replaced old, deteriorated wooden railroad ties, it regularly discarded the used rails in the drainage ditch. They also allege that the Railroad failed to cut the vegetation in the drainage ditch on a regular basis, and that when it cut the vegetation, it disposed of the debris in the right-of-way. The Landowners claim that the improperly discarded railroad ties and vegetation debris impeded the flow of water through the drainage ditch and culvert system adjacent to their properties. This, in turn, allegedly resulted in a gradual build-up of sediment in the drainage ditch and in the flooding of the Landowners' property on a number of occasions. These incidents led the Landowners to sue the Railroad in Oklahoma state court, alleging state torts of trespass, unjust enrichment, public and private nuisance, negligence, and negligence per se. They sought actual and punitive damages, abatement, remediation, and other relief.

In support of their contention that the damages sought by plaintiffs amount to a regulation of rail rates, routes and services, defendants cites South Dakota ex rel. South Dakota R.R. Authority v. Burlington Northern & Santa Fe Ry. Co., 280 F. Supp. 2d 919 (D.S.D. 2003). In that case, an agency of the state of South Dakota brought suit in South Dakota state court against the Burlington Northern railroad to enforce a contract allowing the state railway authority, Minnesota & Eastern Railroad Corporation and the Dakota, Missouri Valley & Western Railroad to use certain access lines owned by the railroad. Id. at 923. The state sought damages for breach of contract and tortious interference with business relationships. Id. The District of South Dakota held that: "The contracts at issue here arise out of federal law; [f]urther, the interpretation of these contracts and any determination of damages will be dependent, in large part, upon an analysis of the purposes

12

of the federal rail policy." Id. at 932. In addition, the court found that there were legitimate federalism concerns at play: "[t]o allow South Dakota to seek and recover punitive damages in a state court is to allow almost unlimited state 'regulation.'" Id. at 934.

The facts in this case are not even close to those in South Dakota Railroad Authority. No federal contract is at issue and no need exists to interpret federal law to resolve plaintiffs' claims. The amount of damages at issue would not be a reason for federal preemption, in and of itself. Otherwise, the Act would require federal jurisdiction for nearly all claims against railroad companies because the damages would always have the potential to affect rail rates. I conclude that plaintiffs' claims are not preempted by the Interstate Commerce Commission Termination Act of 1995.

ORDER

IT IS ORDERED that the motion for reconsideration of the court's May 8, 2009 order is GRANTED; upon review, the motion requesting that this case remain in federal court brought by defendants Burlington Northern Santa Fe Railway Company, Burlington Northern Santa Fe Railway Corporation, William Barbee, Francis A. Weber, John Does #1 and #2 and ABC and DEF Insurance Companies is DENIED.

Entered this 7th day of July, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14