UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell, on behalf of themselves and on behalf of all others similarly situated, a class action,

Plaintiffs,

v.

BNSF Railway Company, Burlington Northern Santa Fe Corporation, William Barbee, Francis A. Weber, John Doe #1, John Doe #2, ABC Insurance Company and DEF Insurance Company,

Defendants.

Civil File No. 08-469

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

## INTRODUCTION

Plaintiffs complain that defendants BNSF Railway Company, Burlington Northern Santa Fe Corporation and employees' (collectively "BNSF") "failure to inspect and maintain a railroad trestle caused the town to flood in July 2007, damaging their property." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010). The amended complaint asserts four causes of action: statutory claims, negligence, negligent nuisance and intentional nuisance. All these causes of action are preempted by the Federal Railroad Safety Act ("FRSA").

Even without federal preemption, Wisconsin Statute § 88.87 limits the remedies available to property owners seeking compensation for flooding caused by a railroad's action or inaction: plaintiffs are restricted to equitable relief or inverse condemnation –

2343025v4

money damages are precluded. The amended complaint seeks nothing that § 88.87 allows. Therefore, plaintiffs' claims for negligence, negligent nuisance and intentional nuisance are also preempted by state law. Plaintiffs cannot amend to state a cognizable claim for equitable relief because the statutory prerequisites have not been satisfied. Failing as a matter of law, the entire amended complaint should be dismissed.

## BACKGROUND

In July 2007, the area around Bagley, Wisconsin experienced unprecedented precipitation. Eight inches of water poured down within a twelve-hour period. The extraordinary weather event caused nearby waterways – including the Glass Hollow Creek and the Upper Mississippi River – to overflow. By this action, plaintiffs seek to hold BNSF responsible for the consequences of this extraordinary natural disaster.

Plaintiffs blame the town-wide flood on BNSF's purported failure to build and keep up drainage facilities – namely a railroad trestle – so as to prevent flooding. For example, plaintiffs allege:

- Defendants "failed to properly and adequately plan, design, construct, guard, inspect, investigate, clean and maintain" the bridge and bridge trestle in and near Bagley. (Am. Compl. ¶ 5);

- Defendants failed "as a corporation operating a railroad to maintain the watercourse across, along and/or upon which such railroad may be constructed against any effects in any manner produced by such railroad" (*id.* ¶ 33(b));

- Defendants failed "to maintain the original flow lines of drainage by way of adequate and feasible ditches, culverts or other facilities including the Burlington Railroad Bridge Trestle consonant with sound engineering practices" (*id.* ¶ 33(d)); and

2

- Defendants "negligently designed, constructed, installed, failed to guard, failed to inspect, failed to investigate, and failed to maintain the Burlington Trestle" (*id.* ¶ 48).

(*See generally* Am. Compl. ¶¶ 29-63.)

Based upon these supposed failures, plaintiffs accuse BNSF of negligence, negligent nuisance, intentional nuisance and violations of Wis. Stat. §§ 88.87, 190.08, and 195.27. Plaintiffs' quest for compensation subsumes the following:

    a. Real property damage and destruction;

    b. Reduced or destroyed market value of real property;

    c. Personal property damage and destruction including but not limited to personal property situated inside of homes and businesses such as furniture, clothing, home electronics, et al. and personal property situated on the outside of homes and businesses such as cars, trucks, motorcycles and other vehicles or items of personal property outside of said homes and businesses;

    d. Reduced or destroyed personal property value;

    e. Sentimental value property damage and destruction;

    f. Clean-up and restoration expenses, time and costs;

    g. Out-of-pocket expenses for clean-up, restoration and related needs of the Plaintiff Class;

    h. Annoyance, inconvenience, stress and other anxieties including the continuous impending peril of another man-made flooding and water invasion from the Burlington Northern Trestle's blockage and/or obstruction;

    i. Other compensable damage as allowed by Wisconsin Law;

    j. Punitive damages as allowed by Wisconsin Law; and

    k. Such other relief as allowed by this Court under the facts and circumstances of this case as allowed by Wisconsin Law.

2343025v4

(Am. Compl. ¶ 34.) Their sought after relief also includes compensatory damages, consequential and incidental damages, statutory and punitive damages, and costs and fees. (*Id.* at 12.)

Plaintiffs' amended complaint fails for two reasons.[1] First, the FRSA absolutely preempts plaintiffs' state statutory and common law claims. Even in the absence of federal preemption, however, plaintiffs' claims run afoul of Wis. Stat. § 88.87, which limits railroad flood accountability remedies to inverse condemnation or equitable relief – neither which plaintiffs bothered to plead. Simply put, this long delayed litigation should come to an end.

---

[1] The Court is intimately familiar with the procedural posture of this case. The Seventh Circuit recently determined that, despite plaintiffs' pleading machinations, the Class Action Fairness Act affords federal jurisdiction. *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379 (7th Cir. 2010).

2343025v4

# ARGUMENT

## I.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers a court to dismiss an action for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) mandates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus dismissal is appropriate when, on the face of the complaint, the plaintiff fails to allege a cause of action that would afford the opportunity for any recovery. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

## II.   PLAINTIFFS' STATE LAW CLAIMS ARE FEDERALLY PREEMPTED[2]

---

[2] This Court previously declined to recognize the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") as a basis for federal subject matter jurisdiction. (*See* July 8, 2009 Order, Clerk Doc. No. 65.) Complete preemption aside, however, plaintiffs' claims are nevertheless subsumed by the ICCTA and thus *per se* preempted. *See Soo Line R.R. Co. v. City of St. Paul*, -- F. Supp. 2d --, No. 09-2311, 2010 WL 2540695 (D. Minn. June 17, 2010) (any proposed action seeking to control the railroad's property is *per se* preempted by the ICCTA). The ICCTA prohibits anyone other than the Surface Transportation Board from purporting to direct how a railroad uses and maintains facilities – including bridge trestles – which are inextricably intertwined with interstate rail operations. *Union Pac. R.R. Co. v. Chicago Transit Auth.*, No. 07-CV-229, 2009 WL 448897, at *6 (N.D. Ill. Feb. 23, 2009) (railroad property and facilities that ICCTA preemption protects against state law interference includes bridges).

Plaintiffs seek to control BNSF's management and use of the tracks through the recovery of monetary relief. Allowing such claims would necessarily have the effect of regulating the design, construction, maintenance and operation of the railroad trestles on the St. Paul to Chicago rail line. *See, e.g.*, *Guckenberg v. Wis. Cent. Ltd.*, 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001) (state law nuisance claim regarding railway operations preempted: "'state regulation can be as effectively exerted through an award of damages as through some form of preventive relief'"; thus common law causes of action constitute "regulation" for purposes of ICCTA preemption).

Under similar circumstances, the *Maynard v. CSX Transportation* court concluded that the plaintiffs' claims were *per se* preempted by ICCTA. 360 F. Supp. 2d 836 (E.D. Ky. 2004). The *Maynard* plaintiffs contended that the track structure blocked natural

5

A.  **FRSA Preemption**

The Supremacy Clause grants Congress the power to displace state law. *Crosby v. Nat'l Foreign Trade Counsel*, 530 U.S. 363, 372 (2000). Preemption of state law is effected either expressly or impliedly from a statute's structure and purpose. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1012 (W.D. Wis. 2000).

Courts recognize three categories of preemption:

> (1) express preemption, when congressional preemptive intent "is either explicitly stated in the statute's language or implicitly found in its structure and purpose," *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977);
>
> (2) field preemption, when federal law "thoroughly occupies a legislative field," *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); and
>
> (3) conflict preemption, when "it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full

---

drainage, causing water to seep under the roadbed and damage plaintiffs' property and that the railroad failed to adequately maintain the drainage on the crossings, causing them to be clogged with mud and other debris. *Id.* at 843. Distinguishing *Rushing v. Kansas City S. Ry. Co.*, 194 F. Supp. 2d 493 (S.D. Miss. 2001) (which was relied upon by this court in the July 8, 2009 Order), the *Maynard* court determined that since the drainage at issue was caused by the construction and maintenance of the tracks and the crossings themselves, as opposed to ancillary structures, the ICCTA preempted the plaintiffs' state tort claims.

In this case, plaintiffs contend that the flood was caused by the construction and maintenance of the bridge trestle, which is an integral part of BNSF's railroad and train operations. Since this lawsuit would necessarily interfere with bridge design, construction and maintenance, the ICCTA's *per se* preemptive effect cannot be circumvented. Thus the ICCTA provides yet another basis for dismissal of the amended complaint.

6

purposes and objectives of Congress," *English v. Gen. Elec Co.*, 496 U.S. 72, 79 (1990) (citation omitted).

Legislative intent "is the ultimate touchstone" in the preemption analysis; thus "the language of the preemption statute, and the statutory framework surrounding it" show the way. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

Congress enacted the FRSA to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To that end, the FRSA "creates a comprehensive scheme for the regulation of rail safety[.]" *Burlington N. R.R. Co. v. State*, 882 F.2d 1349, 1352 (8th Cir. 1989). The FRSA vests the Federal Railroad Administration (FRA) with plenary authority to prescribe and enforce railroad "regulations and issue orders for every area of railroad safety." *In re Derailment Cases*, 416 F.3d 787, 793 n. 6 (8th Cir. 2005) (quotes omitted).

To ensure "[n]ational uniformity of regulation," Congress precludes state law interference with federal railroad oversight. *See* 49 U.S.C. § 20106. The FRSA's preemptive force extends to state common law causes of action that would impose duties or standards of care different from the governing federal regulations. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 671-73 (1993); *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 358 (2000). Accordingly, state law claims must give way when (1) FRA regulations cover the subject matter, and (2) the railroad complies with the covering regulations. *Id. See also* 49 U.S.C. § 20106(b)(1).

Importantly, the FRSA does not impose strict liability. Rather railroads are only answerable in tort for failing to comply with a covering FRA regulation. Those

regulations define the applicable standard of railroad due care. *See* 49 U.S.C. § 20106; *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560, 571 (Minn. 2001). But non-compliance is not enough: after establishing a federal regulatory transgression, a plaintiff must then prove that the violation proximately caused the injury for which recourse is sought.

The FRA recently confirmed the continuing preemptive ramifications of FRSA as follows:

> [A] private plaintiff may bring a tort action for damages alleging injury as a result of violation of [the federal regulations]. … [But] [o]nce the Secretary of Transportation has covered a subject matter through a regulation or order, and thus established a Federal standard of care, Section 20106 preempts State standards of care regarding this subject matter.

*See* 75 Fed. Reg. 1180, 1208-10 (Jan. 8, 2010).[3]

### B.   The FRA regulations cover the subject matter of plaintiffs' claims

Plaintiffs blame BNSF for the "unhindered flow of rainfall runoff through the Glass Hollow Drain through the Trestle." (*See*, *e.g.*, Am. Compl. ¶ 42; *see also id.* ¶ 5 ("failed to properly and adequately plan, design, construct, guard, inspect, investigate, clean and maintain the Burlington Trestle"); *id.* ¶¶ 31, 32 (failed "to keep the Burlington Trestle free and clear of silt, obstructions and debris;" failed to "guard the Burlington Trestle from silt, obstructions and debris"; and failed "to remove accumulated silt

---

[3]   Congress clarified the FRSA in 2007. The legislative history acknowledges that the 2007 amendments did not overrule *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993), or *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344 (2000), but instead merely clarified the preemption analysis to include a compliance component. *See* H.R. Rep. No. 110-259, at 351 (2007) (Conf. Rep.), as reprinted in 2007 U.S.C.C.A.N. 119, 183 (the statute retains the "exact text" of 49 U.S.C. § 20106 prior to the clarification and "the restructuring is not intended to indicate any substantive change in the meaning of the provision").

8

deposits so as to maximize the initially designed flaw through the Burlington Trestle"); *id.* ¶¶ 41, 42, 47, 48, 49 (same)).

The amended complaint[4] charges that but for BNSF's failure to prevent debris and other obstructions from impeding runoff flows under the trestle near Bagley, the torrent would not have backed-up and water damage would not have been sustained. (*See id.*) But if federal regulations cover the subject matter of railroad bridges and drainage facilities, such claims would be foreclosed by federal law. *See* 49 U.S.C. § 20106(b)(1); 75 Fed. Reg. 1180, 1208-10 (Jan. 8, 2010); *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 334 (2000).

The FRA directly regulates rail roadbed area drainages:

> Each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned.

49 C.F.R. § 213.33 (2009).[5]   And, the FRA – interpreting and applying the track standards according to the agency's expertise – recognizes that "[o]ne of the most essential elements of track maintenance is a comprehensive drainage system." Track Safety Standards Compliance Manual ("TSS Manual") §§ 5.22, available at http://www.fra.dot.gov/Pages/460.shtml.[6]

---

[4]   Prior to the Seventh Circuit appeal, plaintiffs amended the complaint to purge class action allegations and injunctive relief claims.

[5]   The BNSF track that runs through Bagley is a Class 4 track.

[6]   "The Track Safety Standards Compliance Manual (Chapter 1-7 and Appendix) provides technical guidance to Federal and State Track Inspectors . . . Inspectors should refer to this manual as often as necessary for clarification of FRA regulation

9

Importantly, the FRA has delegated drainage compliance determinations to the professional judgment of certified inspectors:

> **Guidance**. One of the most essential elements of track maintenance is a comprehensive drainage system. Drainage facilities (bridges, trestles, or culverts) should be given careful detailed consideration during inspections. Openings under the track are used to channel and divert water from one side of the roadbed to the other.
>
> The rule specifies that each drainage structure shall be maintained and the Inspector should note conditions that would affect the integrity of the structure, such as culvert pull aparts or separations, crushing or uneven settlement due to failure of or lack of head walls (in conjunction with frost action), too steep a gradient, and insufficient support.
>
> Drainage openings must also be inspected and notice given where debris has accumulated to such an extent that expected water flow cannot be accommodated.
>
> Most railroad drainage structures have existed for many years and, if properly maintained and kept free of debris, they are considered adequately designed to accommodate expected water flow, even though recent high-water marks may be slightly above the inlet opening . . .
>
> Inspectors must take note of the conditions of :
>
> - Right-of-way ditches;
> - Culverts, trestles, and bridge inlets;
> - Water carrying structures or passageways;
> - Outlets or tail ditches;
> - Berm ditches;
> - Scouring of embankments, piling or piers in channels or at abutments; and

---

interpretation and policy." (Introduction, Track Safety Standards Compliance Manual, available at http://www.fra.dot.gov/Pages/460.shtml.)

- Filling in of passageways from silting, sand wash, or debris.

> Inspectors must notify the track owner of any drainage condition deemed hazardous, or potentially hazardous, to the safety of train operations over the track.

(TSS Manual § 5.22.)

In addition to the TSS Manual, the FRA issued Safety Advisory 97-1 which deals with damage to tracks, roadbeds, and bridges resulting from uncontrolled flows of water and similar weather related phenomena. To ameliorate the risk of improper construction or dredging, the advisory mandates that at least annually the track inspector should be accompanied by a "cognizant bridge maintenance or engineering employee" and that during the joint inspection "they should locate the vulnerable components in the bridges . . . discuss the precautions to be taken in the event of indications of distress in those components, [and] observe drainage conditions on and adjacent to the right-a-way . . . ."

The *Rooney v. City of Philadelphia* court directly addressed the preemptive effect of 49 C.F.R. § 213.33. 623 F. Supp. 2d 644, 666 (E.D. Pa. 2009). The *Rooney* litigation arose when six inches of rain fell in a five-hour period. *Id.* at 648. The storm caused fourteen feet of water to accumulate under a railroad bridge. *Id.* at 647-48. The plaintiffs contended that the railroad bridge, adjacent roadbed and railroad tracks created an artificial runoff pattern and drainage problem that caused mud and ballast to clog nearby sewer drains. *Id.* Prevented from accessing the drains, the accumulated water flooded neighboring properties causing extensive damage. *Id.* at 666-67.

The railroad argued that the FRSA preempted the plaintiffs' claims. *Id.* at 666. Standards for runoff patterns, roadbeds, and drainage requirements were addressed directly by federal regulations, including 49 C.F.R. § 213.33 – the regulation directly at issue in this case. Because FRA regulations covered the subject matter of plaintiffs' nuisance, negligence and strict liability claims, FRSA preemption prevailed. *Id.*

This case cannot be distinguished from *Rooney*. Plaintiffs allege that the railroad defendants failed to design, clean and maintain the bridge trestle, and failed to keep the opening under the tracks free from, guard against and remove silt, obstruction and debris. (Am. Compl. ¶¶ 5, 31, 32, 41, 42, 47, 48 and 49.) Federal railroad regulations specifically govern the maintenance and obstruction of drainage and water carrying facilities: "they shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." 49 C.F.R. § 213.33 (2009). The TSS manual further confirms that such oversight lies with federal railroad inspectors. TSS Manual § 5.22. Because federal regulations prescribe the conduct required of the railroad, the subject of plaintiffs' claims – roadbed drainage facilities – are unquestionably covered by the FRSA.

### C. Claims involving regulatorily covered subject matters that are not premised upon a violation of those regulations are preempted

The standard of care applicable to railroads is defined by the covering FRA regulations. 49 U.S.C. § 20106; 75 Fed. Reg. 1180, 1208-10 (Jan. 8, 2010). To survive FRSA preemption, claims against BNSF must assert a regulatory violation, and any allocation of fault must be based upon evidence showing the covering regulations have

been contravened. 49 U.S.C. § 20106(b)(1); *Easterwood*, 507 U.S. at 671-73; *Shanklin*, 529 U.S. at 358. Accordingly, causes of action that do not arise from transgressions of the covering federal regulation are preempted. *See Engvall*, 632 N.W.2d at 567 ("[t]he applicable standard [for railroads], as always, is the standard imposed by the [federal regulations].").

Causes of action that do not charge BNSF with violating a federal regulation are not for a jury to decide. *Shanklin*, 529 U.S. at 358. The federal scheme promotes regulatory uniformity by vesting the FRA, not jurors, with authority to establish the standard of care to which railroads are held. *See* 75 Fed. Reg. 1180, 1208 (Jan. 8, 2010). State common law claims that seek "to impose a state standard of care on…a railroad[] are preempted[.]" *Engvall*, 632 N.W.2d at 571.

Allowing a jury to impose stricter or different standards sunders national regulatory uniformity and frustrates FRA *raison d'état*. The nation's rail transportation system could not survive, much less thrive, if railroads were subjected to *ad hoc* flood water drainage oversight administered jurisdiction to jurisdiction by randomly selected jurors.

The federal regulations comprehensively cover all claims for which plaintiffs would hold BNSF liable. Giving the amended complaint the most generous justifiable reading, no allegations of any federal regulatory violation can be found. The regulations specifically cover the subject matter of plaintiffs' claims, and the amended complaint

does not accuse BNSF of violating the covering regulation. In such circumstances, the state law causes of action are perforce preempted.[7]

### III. PLAINTIFFS' CLAIMS ARE PREEMPTED BY SECTION 88.87

Even if the Court could find plaintiffs' claims not to be federally preempted, common law causes of action for negligence, negligent creation of a nuisance and intentional nuisance are doomed by Wis. Stat. § 88.87.[8] Section 88.7 governs government and railroad construction and grading that unreasonably impede the general flow of surface water. By enacting § 88.87(2), the legislature prescribed "how property owners could act to protect themselves" from water damage resulting from a railroad changing the natural flow. *Osberg v. Kienitz*, No. 2004AP3145, 2005 WL 6074323, at *4 (Wis. Ct. App. Mar. 7, 2006). Section 88.87(2)(c) provides:

> If a city, village, town, county or railroad company or the department of transportation constructs and maintains a highway or railroad grade not in accordance with par. (a), any property owner damaged by the highway or railroad grade may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company. The claim shall consist of a sworn statement of the alleged faulty construction and a description, sufficient to determine the location of the lands, of the lands alleged to have been damaged by flooding or water-soaking. Within 90 days after the filing of the claim, the governmental agency or railroad company shall either correct the cause of the water damage, acquire rights to use the land for drainage or overflow

---

[7] Departure from the prevailing federal standard cannot be justified: no local safety hazard warrants an additional or more stringent state law standard. Notably no local anomaly has been alleged.

[8] Additionally plaintiffs' tort claims fail because BNSF does not owe plaintiffs a duty to protect plaintiffs' land from flooding. *See In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2009 WL 224072 (E.D. La. Jan 26, 2009) (railroad had no duty to protect plaintiffs from flooding; therefore any claim must be provided for by statute.)

> purposes, or deny the claim. If the agency or company denies the claim or fails to take any action within 90 days after the filing of the claim, <u>the property owner may bring an action in inverse condemnation under ch. 32 or sue for such other relief, other than damages</u>, as may be just and equitable.

Wis. Stat. § 88.87(2)(c)(emphasis added).

Section 88.87(2)(c) specifies the exclusive remedies available to redress railroad caused water damage: plaintiffs must bring an inverse condemnation claim or seek equitable relief.[9] *Victory v. Town of McKinley*, 423 N.W.2d 881, 1988 WL 48056 (Wis. Ct. App. Mar. 3, 1988) (Wis. Ct. App. 1988). *See also Osberg v. Kienitz*, 713 N.W.2d 191, 2006 WL 539345 *2 (Wis. Ct. App. Mar. 7, 2006) ("the statute precludes claims for relief other than those stated in the statute"); *Kohlbeck v. Reliance Const. Co.*, 647 N.W.2d 277, 280 (Wis. Ct. App. 2002) ("Section 88.87 limits the type of relief available to those that are stated in the statute." ); *Victory*, 423 N.W.2d at 881, 1988 WL 48056, at *1 ("The legislature has required an action for inverse condemnation or equitable relief.").

The legislative intent to prevent other, common law claims is plainly demonstrated by the following comments:

> This section is a consolidation and revision of <u>ss. 88.38</u> and <u>88.40</u>. *It makes several changes in the law.* . . . It repeals the provisions which, under <u>s. 88.38(1)</u>, gave the landowner a right to bring repeated actions for damages for flooding or water-soaking of lands located on the upper side of the highway. . . . **Instead, the landowner is required either to sue for equitable relief or to bring an action of inverse condemnation to recover**

---

[9] The statute expressly precludes a damages remedy. Therefore, plaintiffs' demand for punitive and compensatory damages cannot proceed.

15

>    **compensation for the taking of the land by flooding or water-soaking.**

Wis. Stat. § 88.87, Legislative Council Comm. Cmt. (1963) (emphasis added).

The language of the statute leads inescapably to the conclusion that "[c]ommon law nuisance actions are not allowed. The statue clearly and unambiguously forbids it." *Pruim v. Town of Ashford*, 483 N.W.2d 242, 245 (Wis. Ct. App. 1992). *See also Gager v. Wis. Dept. of Transp.*, 390 N.W.2d 114, 1986 WL 217385, at *2 (May 6, 1986) ("The Gagers have no separate cause of action under a private nuisance theory. The department's duties are set forth in § 88.87(2)(a). The remedies against the department are exclusively those set forth in 88.87(2)(c). . . .").

Negligence claims are also foreclosed: relief is limited to equitable remedies and inverse condemnation.[10] *Osberg v. Kienitz*, 713 N.W.2d 191, 2006 WL 539345 at *2 (Sec. 88.87 preempts "claims for other relief including claims for negligence. . ."). The amended complaint fails to seek relief authorized by the statute.

In *Pruim v. Town of Ashford*, a landowner sought to recover property damages. 483 N.W.2d 242, 243 (Wis. Ct. App. 1992). The plaintiff's property was flooded after a heavy rainstorm washed out an improperly constructed culvert. *Id.* The court held that § 88.87 preempted all common law claims and that the plaintiffs' only remedies were

---

[10] Plaintiffs have not included an action for inverse condemnation, but any such action would be futile. "There is no taking unless the flooding is permanent. 'To be a taking, flooding must constitute an actual **permanent** invasion of the land, amounting to an appropriation of, and not merely an injury to, the property." *Herr v. State of Wis.*, 717 N.W.2d 853, 2006 WL 1479910, at *5 (Wis. Ct. App. May 31, 2006) (citations omitted).

limited to inverse condemnation or equitable relief requiring reconstruction of the culvert. *Id.*

Plaintiffs in this case similarly allege that BNSF improperly maintained a drainage facility – i.e. the trestle – resulting in flooding after an historic rainfall. As in *Pruim*, plaintiffs can only seek equitable relief and inverse condemnation – neither of which remedies have been pled. Accordingly, claims for negligence, negligent nuisance and intentional nuisance fail as a matter of law.[11]

## IV. NO SECTION 88.87 CLAIM

Plaintiffs have failed to state a claim under Wis. Stat. § 88.87. Importantly, Wis. Stat. § 88.87(2)(c) sets forth several procedures which are a "mandatory conditions precedent to filing a claim under the statute." *Van v. Town of Manitowoc Rapids*, 442 N.W.2d 557, 558 n. 1 (Wis. Ct. App. 1989). First, the plaintiff must "file a claim with the appropriate governmental agency." A property owner can only proceed further, if after 90 days, the government agency or railroad has denied or ignored the claim. *Id.* Second, the claim must contain "a sworn statement of the alleged faulty construction and

---

[11] Plaintiffs also purport to state claims under Wis. Stat. §195.27 and §190.08. Not only are these claims foreclosed by Wis. Stat. § 88.87, but plaintiffs have failed to state a cause of action under the statutes. Section 195.27 provides "Every railroad shall construct and maintain its tracks, bridges and line structures in a reasonably adequate and safe manner <u>consistent with federal law</u>." (emphasis added). The amended complaint contains no allegation about the railroad trestle being inconsistent with federal law.

Section 190.08 provides that: "Every corporation constructing, owning or operating a railroad shall restore every watercourse, street, highway, road or canal across, along or upon which such railroad may be constructed to its former state or to such condition that its usefulness shall not be materially impaired and thereafter maintain the same in such condition against any effects in any manner produced by such railroad." The statute only allows for equitable relief, which must be sought pursuant to Wis. Stat. § 88.87.

17

a legal description of the lands alleged to have been damaged by flooding or water-soaking." *Id.* Plaintiffs in this case do not pretend to have complied with either requirement.

Before suing, plaintiffs never filed a claim with BNSF. This failure alone is a show stopper.

On top of that, the amended complaint only discloses plaintiffs' postal addresses. The legal description of the properties at issue is required for a § 8.87 claim. A postal address cannot be substituted for a proper legal description. *Van v. Town of Manitowoc Rapids*, 442 N.W.2d 557, 558 (Wis. Ct. App. 1989). Even if BNSF knew which properties were flooded, this awareness does not excuse the lack of property detail – the claim must set forth the legal description of the water damaged parcel. *Van v. Town of Manitowoc Rapids*, 442 N.W.2d 557, 558-559 (Wis. Ct. App. 1989). Accordingly, plaintiffs' § 88.87 claim must be dismissed for failure to comply with these mandatory procedural requirements.

Even if plaintiffs had properly stated a § 88.87 claim, any claim for equitable relief would fail. To become entitled to such relief (beyond pleading an equitable remedy in the first instance, which plaintiffs have failed to do), plaintiffs must show that an injunction is necessary to prevent an irreparable injury. *Kohlbeck v. Reliance Const. Co.*, 647 N.W.2d 277, 282 (Wis. Ct. App. 2002). This common law requirement applies to § 88.87 injunctive remedies. *Id.* Past injury does not justify a present injunction; rather equitable relief must be necessary to prevent a future harm. *Fromm & Sichel, Inc. v. Ray's Brookfield, Inc.*, 146 N.W.2d 447 (Wis. 1966). The amended complaint does not

18

allege and, due to the extraordinary nature of the storm in question, cannot contend that more flooding of that severity is imminent or likely. Equitable relief is not available.

## CONCLUSION

Congressional intent is clear: states are precluded from regulating rail transportation facilities, operations or safety. This action must be dismissed because plaintiffs' claims are preempted by the ICCTA and the FRSA. Wisconsin law also precludes plaintiffs' common law causes of action seeking compensatory damages. Dismissal is required.

Dated: August 2, 2010　　　　　　　　　　**BRIGGS AND MORGAN, P.A.**

　　　　　　　　　　　　　　　　　　　　By: *s/ Timothy R. Thornton*
　　　　　　　　　　　　　　　　　　　　　　　Timothy R. Thornton (#109630)
　　　　　　　　　　　　　　　　　　　　2200 IDS Center
　　　　　　　　　　　　　　　　　　　　80 South Eighth Street
　　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55402-2157
　　　　　　　　　　　　　　　　　　　　(612) 977-8400

　　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR BNSF RAILWAY COMPANY, WILLIAM BARBEE AND FRANCIS WEBER**