### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN
### COURT FILE NO.: 08-469

| | |
|---|---|
| Kenneth Irish, Denise Marshall, Hollie Moore and Scott Stillwell, <br><br> Plaintiffs, <br><br> v. <br><br> BNSF Railway Company, Burlington Northern Sante Fe Corporation, William Barbee, Francis A. Weber, John Doe #1, John Doe No. 2, ABC Insurance Company and DEF Insurance Company, <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs, by their attorneys, Laufenberg, Stombaugh & Jassak, S.C., by Tyler T. Kieler, hereby submit Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss.

### INTRODUCTION

On August 2, 2010, Defendants BNSF Railway Company, Burlington Northern Sante Fe Corporation, (hereinafter referred to together as "BNSF") William Barbee and Francis Weber filed Defendants' Motion to Dismiss, for dismissal of this action pursuant to the ICCTA, the FRSA and Wis. Stat. §88.87. For the reasons set forth below, this is not an appropriate case for either federal preemption or the limitation of remedies at law pursuant to §88.87. Accordingly, the court should deny Defendants' Motion to Dismiss.

### STANDARD OF REVIEW

Under Fed.R.Civ.P. 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the Plaintiff need only allege "the bare minimum facts necessary to put the Defendant on

1

notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir.2002); Lekas v. Briley, 405 F.3d 602, 606 (7th Cir.2005). In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Units, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir.1992). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts which would entitle him to relief. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 972 (7th Cir.1995). "A complaint should be dismissed for failure to state a claim only if no relief could be granted under any set of facts that could be proved consistent with the allegations." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000) (internal quotations omitted).

## ARGUMENT

### I.  THE FRSA DOES NOT APPLY TO PREEMPT PLAINTIFFS' STATE LAW CLAIMS, AS NO FEDERAL REGULATION COVERS AND SUBSTANTIAL SUBSUMES THE AREA OF LAW

Plaintiffs' claims relate to the maintenance of areas not on the tracks, roadbed, or adjacent to the roadbed.  As such, their claims in this case are not preempted by the Federal Railroad Safety Act.

The Federal Railroad Safety Act, codified at 49 U.S.C. §20106, states, in pertinent part:

> **§20106. Preemption.**
> **(a) National uniformity of regulation.--(1)** Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

2

(**2**) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement….

49 U.S.C. §20106.

Defendants alleged that the Secretary of Transportation has issued an order "covering" the subject matter of the State requirement.  Specifically, they allege that 49 C.F.R. §213.33 covers the subject matter of Plaintiffs' Complaint. The regulation reads:

> **§213.33 Drainage.**
> Each drainage or other water carrying facility under or immediately adjacent *to the roadbed shall* be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned.

49 C.F.R. § 213.33. (Emphasis added.)

For a regulation to "cover" an area, it must "substantially subsume the subject matter of the relevant state law.  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 1738, 123 L.Ed.2d 387 (1993).  For a regulation to "substantially subsume" the same subject matter as state law, it must do more than 'touch upon' or 'relate to' the subject matter of the state law. Id.

Plaintiffs' common law nuisance claims address failures to abate and properly discharge duties relating to invasions of land. Hocking v. City of Dodgeville, 318 Wis.2d 681, 700-02, 768 N.W.2d 552 (2009).  While §213.33 can be said to 'touch upon' maintenance issues, its focus is on the roadbed itself and areas adjacent to it.  This is a more limited, narrow regulation that targets the construction of the roadbed and tracks and what duties follow from it.

3

Further, because of its narrow approach, the regulation does not substantially subsume the area, as the state law of nuisance addresses the duties the railroad has to properly maintain the area of its right-of-way that does not relate to the roadbed area. Plaintiffs' Amended Complaint alleges failures to abate the nuisance created when surface waters collected in an improperly maintained portion of BNSF's right-of-way. This is outside the scope and is not substantially subsumed by 49 C.F.R. §213.33.

In <u>Bowman v. Norfolk Southern Railway Company</u>, 832 F.Supp. 1014, (D.S.C. 1993), the United States District Court of South Carolina considered a very similar case, with respect to whether or not a regulation "covered" the area of state law so as to preempt plaintiff's action.  In <u>Bowman</u>, the plaintiff brought a wrongful death action against Norfolk, stemming from a fatal automobile accident involving his son at a railroad crossing.  <u>Bowman</u>, at 1016.  Bowman alleged, among other claims, that the railroad failed to remove vegetation along its right-of-way that obstructed the decedent's view of the approaching train. <u>Id</u>.  Norfolk argued the claim was preempted. <u>Id</u>.  The court noted that the main inquiry was whether or not a regulation had been issued by the Secretary of Transportation that covered the same subject matter as the state law. <u>Id</u>.  The court ruled that "to the extent that the plaintiff's claim relates to the vegetation *on the defendant's right of way near the tracks*, beyond the area covered by the federal regulation," the plaintiff's claim was not preempted. <u>Id</u>. at 1021. (Emphasis added.)

Just as §213.33 in the case at bar applies only to drainage on and immediately adjacent to the railbed, the regulation in <u>Bowman</u> covered only vegetation "on, and immediately adjacent to, the railbed…". <u>Id</u>.; *citing* <u>Missouri Pacific R. Co., v. Railroad Commission of Texas</u>, 833 F.2d 570 (5th Cir. 1987).  Just like the vegetation claim in

Bowman, Plaintiffs' claims do not relate at all to drainage issues stemming from the rails, the roadbed, or an area immediately adjacent to it.  Plaintiffs' claims relate to surface water collecting from failures to maintain the area within Defendants' right of way, near the tracks.  Even more telling, Part 213 of Title 49 of the federal regulations is entitled "Track Safety Standards."  This case does not have anything to do with safety on the track or surrounding areas.  The next subdivision, "Subpart B. Roadbed", which §213.33 finds itself under further limits the regulation to safety in and around the roadbed.  This regulation does not relate to this case, nor does it subsume the state nuisance claims made against Defendants. Therefore, preemption does not apply in this case.  However, as will be discussed below, given the legislative amendment to §20106, Plaintiffs case stands even if the regulation did cover and substantially subsume the state law in the area.

## II.  THE SHANKLIN CASE IS A NARROW RULING THAT DOES NOT APPLY TO THESE FACTS

Defendants rely on the United States Supreme Court case of Norfolk Southern Ry. V. Shanklin, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000).  In Shanklin, the United States Supreme Court found preemption over state law claims related to warning devices. Id. at 1477.  In Shanklin, the action was brought over the death of a motorist.  Id. at 1468.  Plaintiff alleged that the railroad failed to maintain adequate warning devices at the grade crossing. Id.  The court found 49 C.F.R. §646.214(b)(3) on point, with respect to "adequate warning devices installed using federal funds, where any of several conditions are present, are automatic gates and flashing lights. Id. at 1469.  The court found preemption of plaintiffs' state tort claims "concerning a railroad's failure to maintain adequate warning devices at crossings *where federal funds have participated in*

5

*the device's installation*." Id. at 1470. (Emphasis added.)   Other courts have seized on

the use of federal funds as instructive of the court's ruling.  Said the Supreme Court of

Mississippi:

> In Shanklin, the plaintiff argued that federal preemption should not apply despite
> the fact that federal funds were used to install passive warning devices.
> Shanklin, 120 S.Ct. at 1476. The United States Supreme Court reasoned that
> preemption arose under the Secretary of the Federal Highway Administration's
> (FHWA) regulations because, *by approving and funding grade crossing
> improvements, the FHWA replaces state common law standards for measuring
> the adequacy of warning devices.* " it is this displacement of state law concerning
> the device's adequacy, and not the State's or the FHWA's adherence to the
> standard set out in [23 C.F.R.] §§646.214(b)(3) and (4)… that pre-empts state tort
> law actions." Shanklin  120 S.Ct., at 1476. Sections 646.214(b)(3) and (4) are
> applicable when three requirements are satisfied: (1) The FHWA "approves a
> crossing improvement project"; (2) the improvements are "actually installed and
> operating"; and (3) "federal funds participate in the crossing improvement
> project.." Shanklin, 120 S.Ct., at 1476.

Clark v. Illinois Cent. R. Co., 794 So.2d 191, 195-96 (Miss.,2001) (Emphasis added.)

The Shanklin court focused on the federal approval and funding of the grade cross

improvements.  There is no similar federal approval or funding relating to BNSF's failure

to maintain its right-of-way away from the actual roadbed.  The Minnesota District court

also weighed in:

> Plaintiff attempts to bolster its position by reference to cases involving railroad
> crossings. *See* Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 120 S.Ct. 1467, 146
> L.Ed.2d 374 (2000);….These cases are inapposite; plaintiff's reliance is
> misplaced. As an initial matter, Shanklin, was a case in which the Supreme Court
> explicitly set aside issues of adherence to federal regulations when considering
> preemption. It stated, "[w]hether the state should have originally installed
> different or additional devices…is immaterial to the pre-emption question.' 529
> U.W. at 358, 120 S.Ct. 1467.  The court reasoned that displacement of state law,
> rather than compliance with federal regulatory standards, determined whether
> state laws were preempted. Id. at 357-58, 120 S.Ct. 1467.

Kalan Enterprises, LLC v. BNSF Ry. Co., 415 F.Supp.2d 977, 981 (D. Minn. 2006).

6

Shanklin does not control these facts, where there is no federal approval or
funding of a particular safety device. Shanklin is not even precedential authority for
Defendants' position that the federal regulation covers and subsumes the state area of
law. It was responsive to facts that have no bearing on this right-of-way case.
Accordingly, Shanklin should be disregarded as applied to these facts.

III.     THE ICCTA DOES NOT PROVIDE A BASIS FOR PREEMPTION
         AS PLAINTIFFS' STATE TORT CLAIMS DO NOT REGULATE
         DEFENDANTS' RAIL OPERATIONS

Defendants commit footnote 2 of their Memorandum to the position that the
Interstate Commerce Commission Termination Act of 1995 ("ICCTA") applies to
preempt Plaintiffs' claims in this case, an argument this court has already dismissed (*See*
Irish v. Burlington Northern Santa Fe R. Co., 632 F.Supp.2d 871, 876-77 (W.D. Wis.
2009).  The statute reads in pertinent part:

> (b) The jurisdiction of the Board over-
>
>> (1) transportation by rail carriers, and the remedies provided in this part
>> with respect to rates, classifications, rules (including car service,
>> interchange, and other operating rules), practices, routes, services, and
>> facilities of such carriers; and
>>
>> (2) the construction, acquisition, operation, abandonment, or
>> discontinuance of spur, industrial, team, switching, or side tracks, or
>> facilities, even if the tracks are located, or intended to be located, entirely
>> in one State, is exclusive. Except as otherwise provided in this part, *the
>> remedies provided under this part with respect to regulation of rail
>> transportation are exclusive and preempt the remedies provided under
>> Federal or State law.*

49 U.S.C. § 10501(b). (Emphasis added.)

On July 8, 2009, this court ruled that:

> I am not persuaded that plaintiffs' complaint involves the type of dispute the Act
> preempts, which is "all *state* regulatory authority over railroad

7

operations."Guckenberg v. Wisconsin Central Ltd., 178 F.Supp.2d 954, 957
(E.D.Wis.2001) (emphasis added). This case does not involve an attempt to
interfere with the regulation of a railroad or an effort to force defendants to
comply with state regulations regarding the construction, design or maintenance
of rail lines. Although plaintiffs' complaint implicates the standards used to
construct or maintain rail lines, plaintiffs are not seeking to regulate or enforce the
standards. In similar circumstances, numerous courts have found that common
law claims such as plaintiffs' are not preempted. E.g., Emerson v. Kansas City
Southern Ry. Co., 503 F.3d 1126, 1130-31 (10th Cir.2007) ("Subjecting the
Railroad to state law would not cause this case to fall into either of these
categories. State tort law obviously has no pre-approval component, as it
necessarily addresses wrongs that have already occurred; and if the Landowners
prevail on remand, the applicable remedy under state law would not deny the
Railroad the ability to operate or to proceed with a [Surface Transportation
Board]-approved activity."); PCS Phosphate Co., Inc. v. Norfolk Southern
Corp., 520 F.Supp.2d 705, 717 (W.D.N.C.2007) (Act does not preempt claims for
breach of contract and breach of easement covenant touching upon railroad lines
and property); Rushing v. Kansas City Southern Railway Co.,194 F.Supp.2d 493,
501 (S.D.Miss.2001) (plaintiff's state law and negligence claim for drainage
problems resulting from construction of rail line is not pre-empted by Act). In
Emerson, 503 F.3d at 1128, a case with remarkably similar facts, the Court of
Appeals for the Tenth Circuit found no federal preemption under the Act.

Irish, at 876-77. (Emphasis included.)

While Defendants cite Soo Line R.R. Co. v. City of St. Paul, -- F.Supp.2d --, No.

09-2311, 2010 WL 2540695, (D. Minn. June 17, 2010), in an attempt to alter the court's

position on the ICCTA's impact on this case, they fail to discuss the facts.  This is most

likely because Soo Line R.R. Co. does not involve a state tort claim of any kind against

the Railroad.  Id. at *4.  It involved the City of St. Paul's *proposed condemnation* of a

railroad right-of-way:

> The City seeks to acquire a 24-foot wide strip of the right-of-way along Ayd Mill
> Road between Marshall Avenue and Victoria Street for the development of a
> bicycle/pedestrian trail. The strip would occupy approximately 2.1 miles of CP's
> right-of-way along Ayd Mill Road. According to the City, the distance between
> the proposed trail and the center of CP's tracks would vary between 29 to 39 feet,
> and at the closest point, the edge of the trail would be approximately 33 feet from
> the center line of CP's tracks. The City also explains that the proposed design

8

includes a six-foot high fence to separate the proposed trail from the railroad tracks.

Id. at *1.

The district court of Minnesota's application of the ICCTA to these facts has no relation to the preclusive effect of the ICCTA over state tort claims. The proactive condemnation of railroad property is not at all like a state tort law claim brought after a railroad company has failed to properly maintain its right-of-way. As this court has previously ruled, Plaintiffs are not seeking to regulate the railroad's way of doing business, nor are they requiring the railroad to obtain pre-approval for how it constructs its rails or roadbeds.

Nor is a track structure case applicable to these facts. To this end, Defendants cite Maynard v. CSX Transportation, 360 F.Supp.2d 836 (E.D. Ky. 2004). In this case, the court found preemption under the ICCTA because the claims related to the actual roadbed, and the actual crossings. Maynard, at 843. The court itself acknowledged that it needed to focus on the actual roadbeds and crossings to distinguish the Rushing case:

> The facts herein are easily distinguishable from those in Rushing. In Rushing, the pooling of rainwater was allegedly caused by the railroad's construction of an earthen berm designed to curtail noise emanation from the rail yard. Finding that the design and construction of the berm *did not relate to the manner in which the railroad conducts its switching activities*, the Court concluded that the claims relating to the design/erection of the earthen berm were not preempted by the ICCTA.

*Maynard*, at 843.

Plaintiffs' claims relating to Defendants' failure to clear out dangerous debris within its right-of-way do not relate to how it conducts its rail yards. The debris has not had and would never have any bearing on the tracks, the roadbeds, the rails or any other

9

activity that might economically affect the railroad's ability to design and construct and maintain its rails.

Finally, the Defendants cite <u>Guckenberg v. Wisconsin Central Ltd.</u>, 178 F.Supp.2d 954 (E.D. Wis. 2001) for the proposition that Plaintiffs' state tort claims regarding the Defendants' failure to maintain an area within its right of way, but away from its tracks mandates preemption under the ICCTA.  In <u>Guckenberg</u>, plaintiffs' claimed that the defendant railroads, *by the way they operated their own railway traffic along the railway tracks*, constituted a nuisance under Wisconsin law. <u>Id</u>. at 955. Plaintiffs were most displeased with specific aspects of how the railroads ran their traffic, including "the coupling and uncoupling of trains, squealing of wheels, braking noises, slamming of cars, switching direction of train travel, flying switches of railroad cars, idling locomotive diesel engines and other similar incidents…" <u>Id</u>. at 956.  The court found that the ICCTA preempted the claims, as the claim went to the very nature of how a railroad does business:

> Because the conduct at issue in this case *pertains to the 'operation…of a side track*…intended to be located, entirely in one State,' the STB's jurisdiction over WCL's conduct is 'exclusive.'…….it is expressly preempted by the statute because 'the remedies provided under [§10501] *with respect to rail transportation* are exclusive…

<u>Id</u>. at 958. (Emphasis added.)

<u>Guckenberg</u> does not apply to state tort claims that target the failure to maintain a right of way that filled up with damage-causing debris.  Nothing about Plaintiffs' claims in the present case serve to regulate the way BNSF runs its railway operations. Accordingly, the ICCTA does not act to preclude this action.

### IV.    A PRESUMPTION AGAINST PREEMPTION FAVORS THE DENIAL OF DEFENDANTS' MOTION TO DISMISS

The court should also bear in mind the presumption against applying federal preemption to dismiss a cause of action sounding in state law. Said the Supreme Court of the United States:

> In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'

CSX Transportation Inc., v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 1737 (1993); *citing* Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

In In re Vioxx Products Liability Litigation, 501 F.Supp.2d 776, E.D.La.,2007, the court ruled, in part, that implied preemption did not apply in the case before it. The court discussed the presumption against preemption in a footnote:

> For example, a recent study by the *Harvard Law Review* concludes that the presumption against preemption is justified in part by the lack of Congressional responses to preemption decisions, and argues for a pragmatic approach to preemption issues. *See* Note, *New Evidence on the Presumption Against Preemption: An Empirical Study of Congressional Responses to Supreme Court Preemption Decisions,* 120 Harv. L.Rev. 1604, 1623-24 (2007) ("In many preemption cases, finding state law preempted leaves plaintiffs with no make-whole remedy, creates inequitable results, or produces a dangerous regulatory gap.... Why choose the presumption against preemption as the pragmatic default rule instead of the opposite presumption? Because the presumption against preemption allows each state to satisfy the preferences of its own citizens, while a presumption in favor of preemption would impose a uniform national policy even when national preferences are unclear.").

In re: Vioxx Products Liability Litigation, at ftn. 7.

11

The national preference regarding preemption for state common law nuisance claims relating to the maintenance of a natural area within the railroad's right-of-way but not a part of the railbed or tracks is, at best, unclear.

Finally, the 5th Circuit holds an even higher presumption against preemption for Federal Railroad Safety Act cases, stating that "FRSA preemption is even more disfavored than preemption generally." United Transp. Union v. Foster, 205 F.3d 851, 860 (5th Cir. 2000.) Consistent with the other arguments presented, the heavy presumption against FRSA preemption should be accorded due weight by the Court.

## V.   ASSUMING THAT THE FRSA IS IMPLICATED BY THESE FACTS, THEN 49 USC §20106(b) UNAMBIGUOUSLY PRECLUDES PREEMPTION IN THIS CASE

State action may be preempted by federal law in one of three ways: 1) where Congress expressly preempts state law; (2) where Congress indicates by implication that federal law shall exclusively occupy a field of regulation; (3) and where state law conflicts with federal law.  Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 54, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001).

Defendants cite 49 U.S.C. §20106 for its argument that preemption should apply. (Memorandum in Support of Defendants' Motion to Dismiss, at p. 7.)  Since there is a statute on point, express preemption is the only way preemption can possibly apply in this case.  Defendants also touch on the Congressional Amendment to §20106, but fail to fully discuss the amendment's import.  In short, in 2007, 49 U.S.C. §20106 was amended to include subsection (b).  This section states:

(b) Clarification regarding State law causes of action.

(1) *Nothing in this section shall be construed to preempt an action under state law seeking damages* for personal injury, death, *or property damage* alleging that a party –

    (A) has failed to comply with the federal standard of care established by a regulation or order issued by the secretary of transportation (with respect to railroad safety matters)…covering the subject matter as provided in subsection (a) of this section;

    (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the secretaries [of transportation or homeland security]; or

    (C) has failed to comply with a state law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. §20106. (Emphasis added.)

Defendants state in footnote 3 of their Memorandum in Support of Defendants' Motion to Dismiss that "the restructuring is not intended to indicate any substantive change in the meaning of the provision." (Memorandum in Support of Defendants' Motion to Dismiss, at ftn. 3; *citing* H.R. Rep. No. 110-259, at 351 (2007) (Conf. rep.), as reprinted in 2007 U.S.C.C.A.N. 119, 183.) Yet Defendants fail to discuss or acknowledge the *procedural* impact of the amendment, made pursuant to the Implementing Recommendations of the 9/11 Commission Act of 2007. (*See* Pub.L. No. 110-53, 121 Stat. 266.)

In <u>Kill v. CSX Transp.</u>, 185 Ohio App.3d 291, 923 N.E.2d 1199 (Ohio App. 3 Dist., 2009), the Ohio Third District Court of Appeals discussed the amendment and how allegations of violations of federal violations unambiguously preclude preemption: Although subsection (b) was added to Section 20106, subsection (a) was left unchanged. Furthermore, the amendment was made retroactive to January 18, 2002. The impact of the amendment and its purpose were discussed in the House conference report as follows:

Subpart (b) of the Conference substitute provides further clarification of the intention of 49 U.S.C. § 20106, as it was enacted in the Federal Railroad Safety Act of 1970, to explain what State law causes of action for personal injury, death, or property damage are not preempted.

(Emphasis added). H.R. Conf. Rep. No. 110-259, at 351 (2007).

The <u>Kill</u> court continued, citing to a recent Oregon district court's reasoning:

Subsection (b) was enacted in response to and to "rectify" the Federal court decisions in <u>Mehl v. Canadian Pac. Ry. Ltd.,</u> 417 F.Supp.2d 1104 (D.N.D.2006) and <u>Lundeen v. Canadian Pac. Ry. Co.,</u> 447 F.3d 606 (8th Cir.2006). In both cases, the courts concluded state law negligence claims were preempted by FRSA even though defendant railroads failed to comply with the applicable federal regulation or rule. *See* <u>Mehl</u>, 417 F.Supp.2d at 1108; <u>Lundeen</u>, 447 F.3d at 611. These decisions raised great concern among Congressional members who believed denying accident victims legal recourse even when the railroad violated applicable federal regulations was inconsistent with FRSA. *As a result, Congress amended FRSA's preemption clause by allowing state tort law claims to proceed if a railroad did not comply with a railroad safety federal regulation **even if** such regulation covered the subject matter of the state requirement.*

<u>Kill</u>, at 667; *quoting* <u>Murrell v. Union Pacific RR. Co</u>. 544 F.Supp.2d 1138, 1145 (D. Or. 2008) (Emphasis added.).

The <u>Kill</u> court further summarized the conclusion that the allegations which

implicate federal duties and internal standards and rules avoid preemption:

<u>Mehl</u> and <u>Lundeen</u> brought to light an erroneous interpretation of FRSA preemption not supported by the text of §20106, <u>Easterwood,</u> or <u>Shanklin.</u> Thereafter, Congress amended 49 U.S.C. §20106 adding the clarification amendment, making clear that when a party alleges a railway *failed to comply* with a federal standard of care established by regulation or with its own plan, rule, or standard created pursuant to a federal regulation, preemption will not apply. 49 <u>U.S.C. § 20106(b)(1)</u>.

<u>Kill</u>, at 301-02; *citing* <u>Henning</u>, <u>530 F.3d at 1212-1213.</u> *See also* <u>Bates v. Missouri & N. Arkansas RR. Co.</u> <u>(C.A.8, 2008), 548 F.3d 634, 637</u>. (Emphasis included.)

The same construction of the amendment to §20106 was confirmed in both

<u>Hunter v. Canadian Pacific Ry. Ltd.,</u> 2007 WL 4118936 (D. Minn. 2007)  and <u>Rooney v.</u>

<u>City of Philadelphia</u>, 623 F.Supp.2d 644, 667 (E.D. Pa. 2009):

14

Said the Rooney court:

> Hunter clearly recognized that Congress clarified the preemptive effect of 49
> U.S.C. § 20106, rendering the complete-preemption argument inapplicable. *Id.* at
> *4. In particular, title 49, United States Code, section 20106 no longer preempts
> actions filed under state law seeking damages for personal injury death or
> property damages in cases where a plaintiff alleges that a railroad has failed to
> comply with federal standards of care, its own safety standards, or state laws that
> do not directly conflict with a federal regulation. *Hunter,* 2007 WL 4118936, at
> *4 (citing 153 Cong. Rec. H8496-01, at * H8590 (daily ed. July 25, 2007)). *In
> other words, Congress explicitly provides an avenue in which plaintiffs can file
> claims that fall outside the ambit of FRSA.*

Rooney, at 667; *citing* Hunter at *4; 49 U.S.C. §20106. (Emphasis added.)

Assuming *arguendo* that 49 C.F.R. §213.33 covers and substantially subsumes the

subject matter area, Kill, Hunter and Rooney, support claims for federal breaches of care.

Defendants must concede that on the face of Plaintiffs' Amended Complaint, these

federal duties and internal company standards have been implicated by Plaintiffs' factual

allegations.  Plaintiffs have had no way of discovering defendants internal safety

standards and guidelines, as discovery has not yet proceeded in this case.  Still, Plaintiffs'

factual allegations that Defendants have failed to keep clear areas of their right-of-way

that filled with sediment, at a very minimum, put Defendants on notice that they are in

violation of their own safety manual. (*See*, Plaintiffs' Amended Complaint, at ¶¶32a-d,

41a-d, 42a-d, 48 and 49.)

If it is assumed that 49 C.F.R. §213.33 covers and substantially subsumes the

subject area, which Plaintiffs vehemently dispute, then the above cited allegations within

Plaintiffs' Amended Complaint have more than reasonably put Defendants on notice that

they are alleged to be in violation of federal law, as well as their own standards and

guidelines they discuss in their Memorandum in Support of Defendants' Motion to

Dismiss.  As stated within the standard of review above, Plaintiffs need only allege "the bare minimum *facts* necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir.2002); Lekas v. Briley, 405 F.3d 602, 606 (7th Cir.2005). (Emphasis added.)   Even if this court were to find that the notice pleading was not sufficient to implicate federal and internal failures to comply, Plaintiffs would have a right to re-file this suit with the corrected pleadings as this is a motion to dismiss on the pleadings, not a motion for summary judgment.  Still, under the federal system of notice pleading, this kind of specificity is not required.  Defendants have been put on notice of their duties and their breaches.  Accordingly, this action is not preempted by federal law.

### VI.    DEFENDANTS HAVE FAILED TO COMPLY WITH WISCONSIN STATE LAW NOT INCONSISTENT WITH FEDERAL LAW

Irrespective of whether Plaintiffs' allegations have implicated federal duties of care or Defendants' own internal standards or rules, Plaintiffs' claims are not preempted because Defendants failed to comply with state law that is not incompatible with federal law.

The last prong of protection from preemption under 49 U.S.C. §20106, provides protection from preemption when there exists a failure "to comply with a state law, regulation, or order that is not incompatible with subsection (a)(2)."  49 U.S.C. §20106(a)(2) reads, in pertinent part:

> A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order ---
> > (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

16

(B) is not incompatible with a law, regulation, or order of the United States Government; and

(C) does not unreasonably burden interstate commerce.

49 U.S.C. §20106(a)(2)(A)-(C).

Plaintiffs' have alleged violations of state statutes and of common law negligence, nuisance, and intentional nuisance. (Plaintiffs Amended Complaint, at ¶¶33, 41, 48, 49, 56.)  The U.S. Supreme Court has held in the past that the word "law" as used in subsection (a) includes state tort causes of action. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 522, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).  Plaintiffs' tort law claims are included within this protection.

So, even assuming *arguendo* that Defendants could otherwise make a case for preemption, ultimately, this case should not be preempted because the facts represent the very definitions of an "essentially local hazard" that is exempt from preemption.

Indeed, very similar facts were considered by the North Carolina court of appeals, in State Utilities Commission v. Seaboard Coast Line RR Comp., 62 N.C.App. 631, 303 S.E.2d 549 (1983).  In Seaboard, the complainants were residents and landowners that owned property near Seaboard's railroad track and right-of-way. Seaboard, at 636. They claimed damage stemming from Seaboard's failure to maintain drainage areas along a four-mile distance near their track. Id. Culverts below the tracks were becoming filled with debris, causing water to collect and stand in ditches, and then to back up and spill out on adjoining land, causing damage. Id. Seaboard owns and maintains a track which runs through the town. Id. Seaboard argued that the complainants' action should be

preempted. Id. at 639. The court, while recognizing preemption as a viable aspect of

federal regulation of the railroad industry, stated:

> We are persuaded that the congressional intent expressed in the foregoing section
> clearly allows the respective States to continue to exercise safety jurisdiction over
> local safety hazards.  Courts in other jurisdictions agree with us.  *See* National
> Association of Regulatory Utility Commissioners v. Coleman, 542 F.2d 11 (3
> Cir.1976); Consolidated Rail Corporation v. Pennsylvania Public Utility
> Commission, 536 F.Supp. 653 (E.D.Pa.), *affirmed,* 696 F.2d 981 (3
> Cir.1982); Bessemer and L.E.R. Co. v. Penn. Public Utility Comm., 28
> Pa.Cmwlth. 461, 368 A.2d 1305 (1977); *compare* Donelon v. New Orleans
> Terminal Company, 474 F.2d 1108 (5 Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct.
> 157, 38 L.Ed.2d 105 (1973).

Seaboard, at 640.

> The court's analysis is indistinguishable from the case at bar:

> The hazard under review by the Commission in *this case could not be described
> in any other way than "essentially local" in nature as it involved only a few miles
> of respondent's tracks, all in one general contiguous local area*. The
> Commission's order did not attempt or purport to lay down any generally
> applicable rule with respect to Seaboard's track system, but only responded to
> those local hazards it found to exist.

Seaboard, at 640. (Emphasis added.)

> In commenting on the local commission's review of the case before it reached the

appellate court:

> The Commission's order did not attempt or purport to lay down any generally
> applicable rule with respect to Seaboard's track system, but only responded to
> those local hazards it found to exist.

Id.

> The court also addressed the defendants' argument that the Commission in

Seaboard invaded the province of the Secretary of Transportation:

> …Seaboard argues that the Commission has invaded the exclusive province of the
> Secretary of Transportation to promulgate and enforce railroad track safety
> standards, as provided in the Railroad Safety Act.  While we agree that under the

18

act, the Secretary has such exclusive authority to both promulgate and enforce track safety *standards*, the Commission's finding that Seaboard has violated the track safety standards promulgated by the Secretary of Transportation in failing to properly maintain its track in the local area complained of does not invalidate its conclusions that such violation also constitutes a local safety hazard over which the Commission has authority under Chapter 62 of the General Statutes.

Id. at 640-41. (Emphasis included.)

In this case, Plaintiffs' claims address a uniquely local hazard. In Seaboard, the appellate court found it to be a local hazard when it only involved flooding along four miles of track.  The water invasion stemmed from an area within BNSF's right-of-way that was improperly maintained.

Plaintiffs have not alleged that it built its track was defective, or its roadbed.  Nor have plaintiffs' alleged that defendants have failed to exercise proper maintenance across the board within its operations.  Defendants have failed on one particular spot in one small town; Bagley. It's even more "local" than the four-mile stretch in Seaboard. Accordingly, irrespective of all arguments for preemption application, this is a local safety hazard that is exempt from federal preemption.

## VII.   WIS. STAT. §88.87 DOES NOT APPLY TO PLAINTIFFS' COMMON LAW NUISANCE CLAIMS

Defendants argue that Wis. Stat. §88.87 precludes Plaintiffs from obtaining remedies at law, even if Plaintiffs are successful in avoiding federal preemption. To this end, Defendants attempt an unprecedented extension of an equitable claims statute. However, the plain language of the statute clearly sets up a claims procedure and remedy limitation for new constructions that affect waterways.  This statute was never intended to apply to a railroad companies' failure to maintain a waterway that 1) has nothing to do with its tracks or roadbed and 2) has not had a new construction in over 80 years.

19

Further, Defendants do not cite a single case applying §88.87 to railroad companies.

Even if they did, they would not be entitled to the same immunity within the statute, as

the court of appeals, in interpreting §88.87, has ruled that it is a 'governmental immunity'

statute.  No new construction exists.  No governmental bodies, or even government

contractors, are involved.  There is no indication that the intent of the statute was to

eliminate all nuisance claims simply because a railroad is involved.  Even if that were the

case, it would be against the policy of this State to provide remedies at law within the

common law for plaintiffs.  Simply put, there is no precedent for applying §88.87 to the

facts of this case.

Defendants cite extensively to §88.87 for the proposition that the Plaintiff

landowners in this case are precluded from seeking damages against BNSF.  However, in

case after case cited by Defendants, the Wisconsin court of appeals repeatedly positions

§88.87 as a governmental immunity statute.

Defendants cite Gager v. Department of Transp., 390 N.W.2d 114, 132 Wis.2d

470 (Ct. App. 1986)(unpublished) for the proposition that §88.87 precludes Plaintiffs

from seeking damages against BNSF.  In Gager, the plaintiffs owned property on a

natural depression which drained the area north of it and emptied south into a drainage

pipe. Gager, at 132.  This case had only to do with a new construction of a curb and

gutter and the Department of Transportation's failure to change the drainage system in

any way. Id.  In Victory v. Town of McKinley, 423 N.W.2d 881, 143 Wis.2d 898 (Ct.

App. 1988) (unpublished), the plaintiffs sued the Town of McKinley for its construction

of a road near its property.  Id.  Just like in Gager, the damage stemmed from a new

construction, which in this case included the excavation of a ditch and the removal of a

culvert. <u>Id</u>., at 898. The court in <u>Victory</u> described 88.87 as a "…*highway statute* that applies when *highway construction* affects a lowland, natural watercourse, or drainage courses." <u>Id</u>. Also, the <u>Victory</u> court noted that a case that allowed a nuisance suit to proceed stemming from sewer construction was still good law, stating:

> Unlike the sewer construction in Hillcrest, the highway construction merely interfered with *previous drainage*. *It did not collect surface water*. Therefore, a suit for nuisance cannot be used to recover damages for a flooding caused by highway construction.

<u>Victory</u>, at 898; *citing* <u>Hillcrest Golf v. Altoona</u>, 135 Wis.2d 431, 400 N.W.2d 493 (Ct. App. 1986).

The distinction made in <u>Victory</u> is key. The facts at bar have no relation to previous drainage. This case is about the damaging collection of surface water. It further highlights that §88.87 applies to construction projects engaged in by governmental bodies that alter prior drainage systems. Even if the statute were to be applied to private railroad companies, Plaintiffs' damages in <u>Irish</u> are the result of the unlawful collection of surface water. Per the <u>Victory</u> court's distinction, a nuisance suit for damages proceeds under these facts.

Defendants also cite <u>Van v. Town of Manitowoc Rapids</u>, 150 Wis.2d 929, 442 N.W.2d 557 (Ct. App. 1989). In <u>Van</u>, property owners sued the town of Manitowoc Rapids after the town's *installation* of a town road led to flooding damages. The court described the statute and case at issue thusly:

> This appeal concerns sec. 88.87(2), Stats., which *imposes a duty on governmental entities* to refrain from impeding the general flow of water in an unreasonable manner when *constructing or maintaining highways or railroad beds*.

<u>Van</u>, at 930.

21

Further, the court of appeals, in responding to the plaintiffs' assertions that the

City was on notice of the damage so the requirements of §88.87 should be waived,

clearly ruled that the statute is a governmental authority claim statute.  The policy of

§88.87 as a notice of claim statute is logically set out by the <u>Van</u> court:

> Notice of claim statutes provide the government authorities with an opportunity to affect a compromise short of lawsuit and alerts them of possible expenses so that appropriate review of the budget can be made for settlement or litigation purposes. [internal citation omitted.] The legislature has not seen fit to write 'savings clauses' into notice of claims statutes.  [internal citation omitted.]  This make sense since, while actual notice may be sufficient to foster an investigation, the budget review process and discussions about whether a case should be compromised necessarily proceed on the basis of a formal claim presented to the government.  This is because *those in government are officially informed that the claimant has made the solemn decision to take legal action*.  It gives the government a starting time frame within which to determine whether to try to compromise the claim short of legal action.  Section 88.87 has no 'savings clause.'  *It is a notice of claim statute*, not a notice of injury statute.

<u>Van</u>, at 933-34.

The <u>Van</u> court could not be more clear that Wis. Stat. §88.87 is a notice of claim

statute that applies only to certain suits against governmental entities.  Yet, the court of

appeals revisited §88.87 in <u>Pruim v. Town of Ashford</u>, 168 Wis.2d 114, 483 N.W.2d 242

(Ct. App. 1992), in which Pruim, a landowner sued another municipal government, the

Town of Ashford, and then amended his complaint to add an "equitable relief" claim

pursuant to §88.87. <u>Pruim</u>, at 117.  Pruim claimed that there was a continuing nuisance,

stemming from culvert and shoulder repair work performed by the Town, which

allegedly led to continuing damages to his property. <u>Id</u>.  Again, as in <u>Van</u>, the court of

appeals described §88.87 thusly:

> The two issues in this case relate to sec. 88.87, Stats., the statute addressing a property owner's right to sue the *government* for flooding or water damage due to *faulty construction or repair* of highways.

Pruim, at 117.

The Pruim court ruled that §88.87 was a legislative control over claims against

governments:

> We conclude that the legislature decided to regulate and control strictly the types
> of claims that may be made by property owners against *government entities*
> regarding highway construction and repair.

Pruim, at 122. (Emphasis added.)

Ten years later, the court of appeals, in Kohlbeck v. Reliance Construction

Company, Inc., 256 Wis.2d 235, 647 N.W.2d 277, 2002 WI App 142 (Ct. App. 2002),

heard the case of the Kohlbeck plaintiffs who appealed the circuit court's granting of

defendant Department of Transportation's motion to dismiss, in part based on Wis. Stat.

§88.87. Kohlbeck, at 239.  In Kohlbeck, the State of Wisconsin began a road construction

project. Id. at 240.  The State repaved the highway, but also widened the lanes and

created a curb. Id. The Department of Transportation designed and constructed the

highway. Id. The Kohlbecks claimed damage stemming from the project, alleging that

surface water was diverted to their property, causing environmental contamination,

among other claims. Id. at 240-41.  The DOT moved to dismiss, citing §88.87. Id. at 241.

Again, the court of appeals defined the statute's purpose, and excluded the facts of our

case from the reach of §88.87:

> Section 88.87 creates an obligation on state and local governments to refrain from
> obstructing natural drainage when constructing and maintain highways.

Id.

Also, Defendants cite another recent unpublished decision of the court of appeals,

Osberg v. Kienitz, 292 Wis.2d 485, 713 N.W.2d 191 (Table)(Ct. App.

23

2006)(unpublished).  In <u>Osberg</u>, the court of appeals reiterated that §88.87 is a

governmental immunity statute, but in this case, extended the damage immunity to

defendants Pagel Construction and Highway Landscapers, but only because they were

government contractors:

> The Osbergs…argue it was inappropriate to extend the Wis. Stat. §88.87
> immunity to Pagel Construction and Highway Landscapers.  However, we have
> previously extended government immunity to protect contractors.  In <u>Estate of
> Lyons v. CNA Ins. Cos.</u>, 207 Wis.2d 446, 461, 558 N.W.2d 658 (Ct. App. 1996),
> we held that the conduct of a private contractor *who was working under the
> direction of the DOT* was protected by government immunity.

<u>Osberg</u>, at ¶11.

The <u>Osberg</u> court reinforces that §88.87 is a "government immunity" statute.  It

only extends the protection to private companies who are "working under the direction"

of a government or government agency.  The court further connected its extension of

government immunity through direct oversight by citing <u>Vanchieri v. New Jersey Sports

& Expo. Auth.</u>, 514 A.2d 1323, 1326 (N.J. 1986).  It stated:

> …the New Jersey Supreme Court held that *a statute granting immunity to public
> employees and entities could be extended to contractors when the contractor is
> performing tasks at the direction of the government*.  Further, '[t]he rational for
> providing [governmental] immunity …supports extending it to independent
> contractors *who act at the direction of a state or municipal authority*. ….'

<u>Osberg</u> at ¶11; *quoting* <u>Vanchieri</u>, at 1326. (Emphasis added.)

An examination of the court of appeals' opinions discussing §88.87 reveal it to be

a notice of claims statute; one which protects state and local governments against

*repeated* suits for damages.  This procedure serves the purposes identified by the <u>Van</u>

court discussed above, in allowing state and local governments to be put on notice of

suits against them, and to funnel the litigation towards equitable claims, and if

compensation is to be had, then through the inverse condemnation proceedings under Wis. Stat. §32.10.

Ultimately, Plaintiffs did not file a claim with BNSF. Plaintiffs did not pursue the administrative remedies discussed in §88.87 because this case is not bound by the statute. Defendants do not cite any case that identifies §88.87 as applicable to private companies not affiliated with governmental entities.  Defendants ignore the court of appeals' rulings that clearly identify §88.87 as a government immunity statute and as a notice of claims statute. The procedure to follow is set up so that governmental bodies can effectively evaluate the claim, and determine whether it should be settled, denied, or fought within civil litigation.  This analysis and policy does not make sense if it were to include BNSF.

The immunity protection, if applied to the benefit of BNSF, would destroy the policy it is supposed to serve, as discussed by the <u>Van</u> court.  Beyond that, Defendants' failure to maintain its right-of-way is not the type of construction or repair case leading to changes in surface water that is targeted by the statute.  Further, Plaintiffs' claims have no relation to Defendants' construction or maintenance of its railway, its roadbed, its railroad ties, or other areas immediately adjacent to the roadbed.  Accordingly, §88.87 does not apply to preclude a civil suit for compensatory and punitive damage against Defendants.

## <u>CONCLUSION</u>

No federal regulation "covers" and "substantially subsumes" the area of state law from which Plaintiffs' claims derive.  Even if it could be read so expansively, despite the presumption against preemption, the amendment to 49 U.S.C. §20106, precludes preemption as Defendants have been put on notice that their conduct falls below the

federal standard of care and below the safety standards they have set for themselves. Further, as the Court has indicated before, the ICCTA does not apply to preempt this case, as claims relating to nuisance do not imply economic regulation of the railway.

Finally, Wis. Stat. §88.87 does not preclude Plaintiffs' compensatory and punitive damage claims in this case, as it is a governmental immunity statute that protects local and state governments by requiring a notice of claim for cases that include construction or repair which leads to damaging changes in surface water flow.  Defendants' failure to maintain its right-of-way, which has no relation to construction or maintenance of the railway or railroad grades, does not fit within these facts.  Accordingly, Plaintiffs pray for an Order denying Defendants' Motion to Dismiss, so that this case may proceed on the merits.

Respectfully submitted,

Dated: August 23, 2010

**LAUFENBERG, STOMBAUGH & JASSAK, S.C.**

By:   __/s/_____
Tyler T. Kieler, Esq.
Attorney I.D. #01053559
170 W. Main St.
P.O. Box 722
Platteville, WI 53818
Telephone:  (608) 348-7400
Facsimile: (608) 348-7402
ttk@lauflaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

## CERTIFICATE OF SERVICE

*Kenneth Irish, et. al., v. BNSF Railway Company, et. al.*
*U. S. District Court – Western District of Wisconsin Case No. 08-cv-469*

I hereby certify that on August 23, 2010, I electronically filed the following documents:

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

with the Clerk of the Court using the ECF filing system.


Dated: August 23, 2010                    Respectfully submitted,

                                          **LAUFENBERG, STOMBAUGH &
                                          JASSAK, S.C.**

                                          By:  _/s/_____
                                                Tyler T. Kieler, Esq.
                                                Attorney I.D. #01053559
                                                170 W. Main St.
                                                P.O. Box 722
                                                Platteville, WI 53818
                                                Telephone:  (608) 348-7400
                                                Facsimile: (608) 348-2402
                                                ttk@lauflaw.com


                                          Attorneys for Plaintiffs

27