UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell, on behalf of themselves and on behalf of all others similarly situated, a class action,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF Railway Company, Burlington Northern Santa Fe Corporation, William Barbee, Francis A. Weber, John Doe #1, John Doe #2, ABC Insurance Company and DEF Insurance Company,<br><br>Defendants. | Civil File No. 08-469<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs' scramble to avoid the preemptive effect of state and federal law flounders. They disclaim FRSA coverage by dissembling that their claims have nothing to do with drainage facilities under and adjacent to BSNF's tracks. But the amended complaint demonstrates that the causes of action are subsumed by 49 U.S.C. § 213.33. Recognizing the inevitability of FRSA preemption, plaintiffs alternatively contend that defendants have somehow been on notice that BNSF is being charged with breaching a federal standard of care. Yet this novel contention is belied by the complaint allegations that repeatedly disavow any connection to federal law.

Plaintiffs also reject Wis. Stat. § 88.87 applicability. Even though the statute expressly include railroads, plaintiffs ordain that the protocol specified by § 88.87 only

extends to governmental entities. This argument speciously ignores plaintiffs' own allegation about BNSF violating § 88.87. Simply put, this action cannot be saved from the preemptive fate that is dictated by overarching state and federal legislation.

## ARGUMENT

**I.     PLAINTIFFS' CLAIMS ARE COVERED**

Plaintiffs assert that 49 C.F.R. § 213.33 only "targets the construction of the roadbed and tracks and what duties follow from it" and thus cannot cover claims about defective drainage facility maintenance. (Pls.' Br. at 3-4.) They also insist that their claims challenge conduct occurring in the right of way (as opposed to the roadbed) and therefore cannot be encompassed by § 213.33. (*Id.*)

The FRSA preempts state laws that address the same subject matter as regulations promulgated by the Federal Railroad Administration. *See* 49 U.S.C. § 20106; 49 C.F.R. § 213.2. Thus if a common law cause of action against a railroad arises from a subject matter covered by an FRA regulation, the claim is foreclosed – unless a federal standard of care violation is alleged. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664-65 (1993); *Norfolk S. Ry. Co.. v. Shanklin*, 529 U.S. 344 (2000);[1] *Burlington N. and Santa*

---

[1]     Plaintiffs suggest that *Shanklin* is inapplicable because the Court's preemption analysis focused on federal funding and approval of grade crossing protection and the government neither paid for nor blessed the trestles at Bagley. (Pls.' Br. at 6.) Notably, for crossing warning devices like those at issue in *Shanklin*, coverage is effected by the expenditure of federal funds. *Elrod v. Burlington N. R.R. Co.*, 68 F.3d 241, 244 (8th Cir. 1995). In fact, the regulations expressly precondition crossing warning device coverage on federal funding. 23 C.F.R. § 646.214(b)(3)(i)(prescribing standards "where federal aid funds participate in the installation of the devices").
     In contrast, preempting coverage for other aspects of railroad regulation is determined by whether federal regulations govern the subject matter of plaintiffs' claims.

*Fe Ry. Co. v. Doyle*, 186 F.3d 790, 795 (7th Cir. 1999); *Anderson v. Wisconsin Cent. Transp. Co.*, 327 F. Supp. 2d 969, 980 (E.D. Wis. 2004).

Plaintiffs' skewed reading of § 213.33 contravenes plain regulatory language:

> Each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned.

49 C.F.R. § 213.33. "Roadbed" is broadly defined to include "the area under and adjacent to the tracks." *Anderson*, 327 F. Supp. 2d at 980, n.11; *see also Rooney v. City of Philadelphia*, 623 F. Supp. 2d 644, 664 (E.D. Pa. 2009). The regulatory reach necessarily includes bridges and bridge trestles. *See Rooney*, 623 F. Supp. 2d at 666 (drainage at the bridge and adjacent tracks covered by § 213.33 and thus water damage claims preempted).

Plaintiffs cannot deny that this lawsuit directly implicates BNSF's drainage facilities, including bridge trestles, which enable trains to traverse water courses beneath the tracks. Plaintiffs repeatedly charge BNSF with failing to clear silt, obstruction and debris under and around the trestle in order to ensure that rainfall runoff can freely flow to the Mississippi River. (Am. Compl. ¶ 32(a)-(c); ¶ 41(a)-(d) ("acts . . . which would prevent any obstruction of normal, designed flow through the Burlington Trestle"); ¶ 42(a)-(d); ¶¶ 47-49, ¶¶ 55-61.) The amended complaint also asserts that BNSF "failed

---

*See, e.g., Doyle*, 186 F.3d at 795; *Anderson*, 327 F. Supp. 2d at 980. Unlike crossing regulations, Section 213.2 contains no facility specific funding or approval precondition: the mere "issuance of these regulations preempts any State law . . . covering the same subject matter." 49 C.F.R. § 213.2. Section 213.33 applicability does not depend upon any additional regulatory action. Instead compliance became mandatory upon promulgation of the regulation.

3

to properly and adequately plan, design, construct, guard, investigate, clean and maintain" the bridge trestles. (*Id.* ¶ 5; *id.* ¶ 48.) These allegations clearly raise drainage issues stemming from the area near and below the tracks.

Plaintiffs' claims are thus covered by § 213.33 and accordingly within the exclusive purview of the FRA. *See also* Defs.' Mem. in Supp. of Mot. to Dismiss at 9-11; TSS Manual § 5.22, available at http://www.fra.dot.gov/pages/460.shtml (discussing FRA's interpretation and application of § 213.33). The issue is not whether the storm water backed up beyond the roadbed. On the contrary, the determinative consideration is whether the flooding is said to be attributable to conduct and facilities "under and adjacent to the tracks." That is exactly what plaintiffs complain about.

*Rooney* cannot be distinguished. The allegations are the same: the *Rooney* plaintiffs complained about a drainage problem at a railroad bridge and adjacent tracks. 623 F. Supp. 2d at 666. Because section 213.33 governed drainage from and around the roadbed, plaintiffs' state law claims were covered and thus preempted. *Id.* The claims in this case have that same destiny.

II. <u>**THE COMPLAINT DOES NOT ALLEGE FEDERAL VIOLATIONS**</u>

Recognizing that 49 C.F.R. § 213.33 unquestionably covers the subject matter of this lawsuit, plaintiffs pretend by implication the amended complaint charges BNSF with violating federal law and internal company standards, and 49 U.S.C. § 20106(b) therefore insulates their claims from FRSA's preemptive force. The actual complaint allegations expose this recently concocted canard for what it is.

To start with, plaintiffs purposefully asserted only state law causes of action: Count I, "Statutory Violations of Wisconsin Law;" Count II, "Common Law Negligence;" Count III, "Negligent Creation and Maintenance of a Nuisance;" and Count IV, "Intentional Nuisance." (Am. Compl. at 5, 8, 9, 10.) The amended complaint never challenges BNSF compliance with federal law or internal railroad standards. (*Id.*)

If that were not enough, plaintiffs go to great length to abjure any hint of federal involvement:

### III.   JURISDICTION AND VENUE

22.   Plaintiffs hereby incorporate, as fully set forth herein, all the preceding paragraphs of this Amended Complaint.

23.   Plaintiffs' claims are based entirely on the statutes and common law of the State of Wisconsin.

24.   *Plaintiffs make no claim based on any federal statute, common law or regulation.*

25.   The above-captioned plaintiffs are the only parties seeking damages in this action.

26.   *Nothing in this Complaint is intended to or should be construed to provide a cause of action arising under any provision of the federal constitution, any federal statutory law, any federal regulation, any federal tariff, any federal order or any type or source of federal law, including, but not limited to CAFA.*

27.   *It is the unequivocal intent of the Plaintiffs to plead only state causes of action and aver only state claims against the Burlington Corporate Defendants and the employees of the Burlington Corporate Defendants who reside within the State of Wisconsin.*

    a.   It is not the intent of the Plaintiffs and this Complaint should not be construed in any way to be deemed an assertion of any claim predicated upon any federal law, statute or interpretation of any federal law which would give rise to any basis for federal jurisdiction including any federal question jurisdiction.

5

2672526v1

> 28. Not Removable. Pursuant to the laws of the State of Wisconsin, The United States of America, and the Federal Rules of Civil Procedure, this matter is not removable to the United States District Court for the Western District of Wisconsin under subject matter or diversity jurisdiction including Class Action Fairness Act ("CAFA").

(Am. Compl. 22-28) (emphasis added). Besides that, plaintiffs have persistently and vehemently proclaimed their "unequivocal intent to state only state causes of causes of action against Wisconsin defendants." (Clerk Doc. No. 28 at 14-15.)

Plaintiffs cannot have it both ways. Since the onset of this litigation, they have repudiated all federal law ramifications in hopes of avoiding this Court. Now that the Seventh Circuit has rebuked their pleading machinations and confirmed the availability of federal jurisdiction, plaintiffs ask this Court to ignore what the amended complaint says and infer that BNSF has been put on notice of claims that were expressly disavowed, much less pled. Plaintiffs' disingenuous attempt to have their cake and eat it too cannot be taken seriously.

### III. NO LOCAL SAFETY HAZARD

In a last ditch attempt to avoid FRSA preemption, plaintiffs fecklessly maintain that their claims "address a uniquely local hazard." (Pls.' Br. at 19.) To come within this exception, plaintiffs must demonstrate "an essentially local safety or security hazard" as well as prove that their action would neither be "incompatible with a law, regulation, or order" nor "unreasonably burden interstate commerce." 49 U.S.C. § 20106(a)(2). "The purpose of the savings clause is to enable the states to respond to local situations not capable of being adequately encompassed within the uniform national standards."

*Duluth, Winnipeg, & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 796 (8th Cir. 2008) (internal citations omitted). Plaintiffs fail on all three counts.

To begin with, the amended complaint makes no local safety hazard allegation. On top of that, the amended complaint fails to mention many of the "conditions" that are now said to pose a local safety hazard in Bagley. Such a failure precludes a "showing" sufficient to avoid the FRSA's preemptive effect. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (bare assertions do not prevent dismissal because "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the [Rule 8(a)] requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests").

In any event, common law negligence and nuisance claims cannot qualify for the local safety hazard exception:

> The common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions. Respondent's contrary view would completely deprive the Secretary of the power to pre-empt state common law, a power clearly conferred by [§ 20106(a)(2)].

*Easterwood*, 507 U.S. at 675; *see also Rooney*, 623 F. Supp. 2d at 666 (rejecting local hazard exception applicability to improper drainage claims; "local standards beyond those promulgated by FRA would thwart FRSA's goal of achieving uniform, national standards for railroad operations").

Other circuit courts have routinely spurned attempts to make a local safety hazard exception when, as in this case, the concern is amenable to federal regulation. *See Duluth, Winnipeg, & Pac. Ry. Co.*, 529 F.3d at 798-800 (rejecting local safety hazard

7

exception for state law prohibiting railways from running trains at more than 30 mph in the City of Orr); *Union Pac. R.R. Co. v. California Pub. Utils. Comm'n*, 346 F.3d 851, 858-62 (9th Cir. 2003) (no local safety hazard exception for state rail strength rule applicable to ten-mile segment of track, despite steep grades, sharp curves, a bridge over the Sacramento River and a derailment rate eight times higher than the rest of the line); *Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1553, n.3 (11th Cir. 1991) (the local safety hazard is "to be narrowly construed," and "is irrelevant to the case at hand because a state does not legislate a general duty of care in order to eliminate a local safety hazard"), *aff'd* 507 U.S. 658 (1993). *See also Cox v. Norfolk & W. Ry. Co.*, 998 F. Supp. 679, 687-88 (S.D. W. Va. 1998) ("plaintiff's common law theory of negligence for failure to slow a train under certain circumstances would amount to a statewide rule. The narrow savings clause exception cannot be applied to uphold the application of such a statewide rule.").

A "condition" that supposedly affects only a particular section of track cannot constitute "local safety hazard." Rather, "Congress intended that this exception apply 'when local situations are not capable of being adequately encompassed within uniform national standards.'" *CSX Transp. Inc. v. Williams*, 406 F.3d 667, 672 (D.C. Cir. 2005) (quoting *PUCO*, 926 F.2d at 571 ) (emphasis added and other quotation omitted; *per curiam* opinion in which now Chief Justice John Roberts joined).

If in the wake of 9/11, the terrorism risks posed to the United States Capitol – although indisputably local (as Congress convenes in only one place) and certainly compelling (as the nation's nerve center and symbolic shrine to democracy) – can be

2672526v1

addressed on a national level, then the installation, maintenance and inspection of drainage facilities underneath railroad bridges in Bagley are unquestionably amenable to regulation on a national level. *Id.* at 672; *see also Rooney*, 623 F.Supp. 2d at 666 (rejecting local safety hazard application). In fact, trestles, drainage facilities and steep bluffs characterize the BNSF route along the Mississippi River between Chicago and St. Paul. Nothing distinguishes Bagley or the railroad bridge taken to task by this lawsuit from the dozens of towns and hundreds of drainage underpasses found along the way in three different states.

A contrary conclusion would guarantee incompatibility with federal standards. By this lawsuit plaintiffs demand, among other things, that BNSF be held accountable for an unprecedented weather event because drainage facilities underneath the roadbed are said to have been improperly maintained. But FRA standards only require railroads to maintain and remove drainage facility obstructions "to accommodate expected water flow." 49 C.F.R. § 213.33. If regulatory uniformity is to be preserved, BNSF cannot be responsible in tort for adhering to federal law.

Finally, allowing negligence claims like these to proceed would "unreasonably burden interstate commerce." *Williams*, 406 F.3d at 673. Juries would be charged with ascertaining the proper bridge design, construction and maintenance and assessing federal compliance on a jurisdiction-by-jurisdiction basis, resulting in the very regulatory patchwork that the FRSA was enacted to prevent. *Peters*, 80 F.3d at 261 n.2. Congress looked to agency expertise, not jury passion, to wield the railroad safety enforcement rod.

2672526v1

Simply put, the local safety hazard exception does not exempt plaintiffs' claims from FRSA preemption.

## IV. THE ICCTA PREEMPTS

BNSF does not challenge this Court's July 2009 Order declining to find ICCTA complete preemption but rather asserts that express preemption nevertheless forecloses plaintiffs' claims. The ICCTA express preemption effect on plaintiffs' claims is an inquiry separate and distinct from the complete preemption analysis. Complete preemption "occurs when federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act." *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 696-97 (7th Cir. 2005) (internal quotations omitted). Express preemption, on the other hand, "occurs when a federal statute explicitly states that it overrides state or local law." *Id.* The Court's decision not to exercise complete preemption jurisdiction does not preclude the application of express preemption.

The ICCTA expressly precludes any entity other than the STB from purporting to direct how railroads use and maintain transportation facilities. *See* 49 U.S.C. § 10501(b). Because an award of damages can effect regulation just as potently as other forms of oversight, state common law causes of action, including negligence and nuisance claims, are displaced § 10501(b). *See Guckenberg v. Wis. Cent. Ltd.*, 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001).

This action clearly seeks to control BNSF's use of the tracks. A damages award would undoubtedly influence how BNSF maintains and inspects drainage facilities and

10

bridge trestles across the railroad's vast system. Contrary to plaintiffs' take on *Maynard v. CSX Transportation*, the only fair reading of that court's rationale compels the conclusion that ICCTA expressly preempts.

The *Maynard* plaintiffs charged that the "track and the foundation of the track blocks natural drainage and it seeps under the railroad tracks without being directed and diffuses itself" onto neighboring properties. 360 F. Supp. 2d 836, 841 (E.D. Ky. 2004). The complaint further condemned the drainage facility maintenance at a crossing. *Id.* Because the alleged water problem was attributable to the railroad's construction and upkeep of the tracks, the ICCTA preempted. *Id.*

The same accusations pervade in this case. Plaintiffs denounce BNSF's design, construction, inspection and maintenance of bridges and bridge trestles – facilities necessarily involved in and encompassed by the definition of "transportation" by rail carriers. (*See, e.g.,* Am. Compl. ¶¶ 5, 48.) *See* 49 U.S.C. §§ 10501(b), 10102(9).

ICCTA forecloses "those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010), quoting *PSC Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009). For ICCTA purposes, rail transportation includes railroad facilities and property, such as bridges, used in the movement of trains. 49 U.S.C. §§ 10501(b), 10102(9); *see also Union Pac. R.R. Co. v. Chicago Transit Auth.*, No. 07-cv-229, 2009 WL 448897, at *4 (N.D. Ill. Feb. 23, 2009) ("transportation" for ICCTA purposes "has a meaning that is far broader than the term's ordinary meaning" and extends to all railroad facilities, which includes bridges). Because plaintiffs' state

law claims would "unduly interfere with interstate commerce by [impairing BNSF's ability and right] to construct facilities or conduct operations," the ICCTA preempts. *See City of Alexandria*, 608 F.3d at 159 (the ICCTA preempts when the regulation of trucking operations off railroad property would adversely affect the continuous movement of freight by rail).

Compelling BNSF to redesign, reconstruct and differently maintain bridges in order to prevent the drainage problems (about which plaintiffs complain) would inflict an equally adverse effect on movement of freight between St. Paul and Chicago, as well as elsewhere. To be displaced by the ICCTA, state laws need not directly control the movement of trains. If the effect of a state action interferes with rail operations, then that state regulation (including common law claims) must yield in favor of STB oversight. *City of Alexandria*, 608 F.3d 159-160.

### V. WISCONSIN STATUTE § 88.87 ALTERNATIVELY FORECLOSES PLAINTIFFS' CLAIMS

Plaintiffs resist Wis. Stat. § 88.87(2)(c) applicability, disavowing the extension of the legislation to railroads. This argument flies in the face of plain and unambiguous statutory text and blithely ignores amended complaint allegations accusing BNSF of violating that exact statute.

Count I accuses BNSF of breaching § 88.87(2)(a) obligations:

> At the time and place of the events described herein and at all material times prior thereto, the Burlington Defendants violated statutory provisions of Wisconsin law, proximately causing injury to the Plaintiffs through the following specific statutory violations and/or omissions . . .

12

(c) In violation of Wis. Stat. § 88.87(2)(a), in the failure of these Defendants to maintain, including failing to maintain free of silt, obstructions and debris this Burlington Trestle over the Glass Hollow Drain in Bagley, Wisconsin, which passes over a natural watercourse, namely the Glass Hollow Drain; and

(d) In violation of Wis. Stat. § 88.87(2)(a), in the failure of these Defendants to maintain the original flow lines of drainage by way of adequate and feasible ditches, culverts or other facilities including the Burlington Railroad Bridge Trestle consonant with sound engineering practices.

(Am. Compl. ¶ 33.)

Wis. Stat. § 88.87(2)(a) provides in relevant part:

Whenever any county, town, city, village, *railroad company* or the department of transportation has heretofore constructed and now maintains or hereafter constructs and maintains any highway or railroad grade in or across any marsh, lowland, natural depression, natural watercourse, natural or man-made channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands. All such highways and railroad grades shall be constructed with adequate ditches, culverts, and other facilities as may be feasible, consonant with sound engineering practices, to the end of maintaining so far as practicable the original flow lines of drainage.

*Id.* (emphasis added). Just like section 88.87(2)(a), section 88.87(2)(c) applies to municipalities *and* railroad companies:

If a city, village, town, county or *railroad company* or the department of transportation constructs and maintains a highway or railroad grade not in accordance with par. (a), any property owner damaged by the highway or railroad grade may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company. The claim shall consist of a sworn statement of the alleged faulty construction and a description, sufficient to determine the location of the lands, of the lands alleged to have been damaged by flooding or water-soaking. Within 90 days after the filing of the claim, the governmental agency or railroad

13

> company shall either correct the cause of the water damage, acquire rights to use the land for drainage or overflow purposes, or deny the claim. If the agency or company denies the claim or fails to take any action within 90 days after the filing of the claim, the property owner may bring an action in inverse condemnation under ch. 32 or sue for such other relief, other than damages, as may be just and equitable.

Wis. Stat. § 88.87(2)(c) (emphasis added).

The only basis for asserting § 88.87(2)(a) violations is BNSF's "railroad company" status. A non-railroad, private entity would not be obligated to comply with § 88.87(2)(a). Plaintiffs cannot, on the one hand, seek to maintain a statutory cause of action against BNSF and on the other hand deny the railroad the protection afforded by that statute. *See Chicago & N. Western Transp. Co. v. Office of the Commissioner of R.R.*, 553 N.W.2d 845, 850 (Wis. Ct. App. 1996) ("We are not to read statutes in a manner that leaves parts of a statute meaningless.").

If the legislature intended to exclude railroads from § 88.87's reach, the statute would not have listed such companies among the covered entities. And why would the statute address the construction and maintenance of "railroad grades" if only governmental entities were subject to § 88.87. In the absence of legislative action, Wisconsin courts have not hesitated to apply § 88.87 to railroad companies. *See, e.g., Laur v. Chicago & Northwestern Railway Co.*, 85 N.W.2d 353, 355-56 (Wis. 1957) (rejecting plaintiff landowner's § 88.87[2] attempt to compel railroad to install drainage

---

[2] The statute at issue in *Laur* was Wis. Stat. § 88.38, which was the precursor to Wis. Stat. § 88.78. As discussed in BNSF's Memorandum in Support of its Motion to Dismiss, Wis. Stat. § 88.78 is "a consolidation and revision of ss. 88.38 and 88.40." *See* Defs.' Br. at 15-16; *see also Soo Line R.R. Co. v. Office of the Commissioner of Transp.*,

14

facilities); *Chicago & North Western Transp. Co.*, 553 N.W.2d at 850 (§ 88.87(2)(c); "imposes procedural prerequisites upon a landowner who is claiming that a railroad caused damage by past flooding"); *see also Johnson v. Dahle*, No. 98-0660, 1998 WL 866084 (Wis. Ct. App. Dec. 15, 1998) (Wis. Stat. § 88.87(2)(c) "applies to cities, villages, towns, counties, railroad companies, and the DOT").

Section 88.87's inclusion of railroad companies with the other public entities is easy to understand. Like state and municipal authorities, railroads construct and maintain important transportation facilities that benefit the public as a whole but have the potential to affect drainage to the detriment of a few landowners. And like governmental bodies, Wisconsin law vests railroad with eminent domain authority. Wis. Stat. § 32.02(3). Hence, as the statute anticipates, in order to serve the public good, state agencies, municipalities and railroads can exercise condemnation powers to provide relief to individuals adversely affected by facilities that enable and facilitate the movement of people and property within the state and to other states. *Id.*

Plaintiff cannot escape § 88.87 consequences, and the statute unequivocally forecloses damage claims. The legislature not only required plaintiffs to satisfy strict procedural requirements prior to filing a claim (which plaintiffs have ignored), but the available relief is limited to equitable remedies or inverse condemnation – neither of which have been pled nor could be sustained in these facts. (*See* Defs.' Br. at 15-18.)

---

489 N.W.2d 672, 675, n. 3 (Wis. Ct. App. 1992) ("The direct predecessors of current sec. 88.87, Stats., are the pre-1963 versions of secs. 883.38 and 88.40, Stats.").

15

In the absence of federal preemption, plaintiffs' claims are precluded by Wis. Stat. § 88.87.

## VI. ORAL ARGUMENT IS REQUESTED

Defendants request oral argument. This motion presents an intensive inquiry into the express preemptive effect of the FRSA and the ICCTA and the exclusive authority delegated to federal agencies to oversee the railroad's use and maintenance of drainage and transportation facilities. Oral argument will be beneficial because it will enable the parties to directly address the relationship between plaintiffs' claims and these federal regimes, and clarify any issues presented by the parties' competing positions in this case.

## CONCLUSION

The final disposition of this litigation is long overdue. Federal law unquestionably covers the subject matter of plaintiffs' claims, precluding any state law claim. Even if the amended complaint could be construed to reach beyond the bounds of exclusive federal oversight, plaintiffs have failed to satisfy the prerequisites of Wis. Stat. § 88.87 or to seek the only relief allowed by the statute. Dismissal should be a foregone conclusion.

Dated:  September 2, 2010                **BRIGGS AND MORGAN, P.A.**

By: *s/ Timothy R. Thornton*
    Timothy R. Thornton (#1032018)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2157
(612) 977-8400
**ATTORNEYS FOR BNSF RAILWAY COMPANY, WILLIAM BARBEE AND FRANCIS WEBER**

2672526v1