UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell,<br><br>          Plaintiffs,<br><br>v.<br><br>BNSF Railway Company, formerly known as Burlington Northern and Santa Fe Railway Company, Burlington Northern Santa Fe Railway Corporation, William Barbee and Francis A. Weber,<br><br>          Defendants. | Court File No.  08-CV-469-BBC<br><br>**DEFENDANTS' SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION TO DISMISS ALL DEFENDANTS** |

## INTRODUCTION

The tortuous path of this litigation must come to a final and fatal end.  Plaintiffs cannot sustain any cause of action – statutory or common law – against BNSF employees William Barbee and Frank Weber.  Not only does Wis. Stat. § 88.87 provide the exclusive remedy for the redress sought by the amended complaint, but the statutory preclusion of common law causes of action extends to railroad employees as well as their employer.  And while § 88.87 preempts common law claims against railroad actors, none of the alleged statutory violations implicate Barbee or Weber.

Allowing common law causes of action to proceed against the employees of an employer who is protected from such claims would circumvent the very reason § 88.87 was enacted.  BNSF must defend and indemnify employees; hence, the nuisance and negligence litigation plaintiffs seek to maintain would in effect be prosecuted against BNSF in the face of legislation that forecloses those exact claims.

2847450v2

## RELEVANT FACTS

The action against Weber and Barbee is based upon their status as supervisory employees of BNSF. (Am. Compl. ¶¶ 17 ("supervisory employees"), 18 ("as supervisory employees and agents of the Corporate Burlington Defendants"), 19 (same), 20 ("as supervisory employee and agents of the Burlington Corporate Defendants form a substantial and significant basis for the claims asserted by the Plaintiffs against the Defendants").) The amended complaint never suggests that Barbee or Weber performed in any capacity other than as agents of BNSF. Since the two indisputably acted on behalf of the railroad, they cannot be distinguished from the railroad for the purpose of liability for drainage from the railroad grade. Section 88.87 protects BNSF against causes of action other than those authorized by the statute. Weber and Barbee are equally exempt from common law accountability.

## ARGUMENT

**I.    SECTION 88.87 COVERS RAILROAD EMPLOYEES**

The sole issue remaining for resolution is whether the rationale and result of the Court's October 21, 2010 Order applies equally to the individual defendants. This issue has already been dispositively decided by Wisconsin courts. *Osberg v. Kienitz*, No. 03-CV-102, 2004 WL 5544459 (Onieda County Circuit Court, Nov. 19, 2004) (order dismissing individual defendants); *Osberg v. Kienitz*, No. 03-CV-102, 2004 WL 5567776 (Oneida County Circuit Court, Oct. 26, 2004), *aff'd,* No. 2004AP3145, 2006 WL 539345 (Wis. Ct. App. Mar. 7, 2006) (Section 88.87 should be extended to independent contractors acting as agent for a state agency).

The *Osberg* plaintiffs owned land outside Rhinelander. 2006 WL 539345 at *1. The neighboring business built a new parking lot, resulting in the runoff of water and sediment onto Osberg's property. *Id.* The Wisconsin Department of Transportation (WsDOT) subsequently commenced a road project nearby. *Id.* Independent contractors constructed the roadway under

2847450v2

the direction of WsDOT. *Id.* The work exacerbated runoff conditions. *Id.* Osbergs sued the neighbor and the WsDOT as well as the government employees and the private contractors who built the road. *Id.*

The claims against the individual WsDOT employees and the contractors who worked on behalf of and under the direction of the WsDOT were summarily dismissed. *Id.* at *2-3. Circuit court judge Robert Kinney thoroughly evaluated the issue of individual liability in the context of Wis. Stat. § 88.87's purpose and intent. *Osberg*, 2004 WL 5567776. The court cogently concluded that § 88.87's procedural prerequisites and liability protections must be afforded to individual agents of the state:

> In construing statutes, one of the first and paramount rules of construction is to avoid an absurd result. In my judgment it would absurd in the case of a typical washed out culvert and driveway, for example, to either require or allow the naming of DOT engineers as parties defendant, or to require or allow a myriad of depositions in an attempt to show negligence, and to require or allow argument about whether the DOT employees' activities were ministerial or discretionary.
>
> This case is a good example of precisely what the legislature and Judge Brown [in *Pruim v. Town of Ashford*, 483 N.W.2d 242 (Wis. Ct. App. 1992)] were attempting to avoid, bring all of the engineers in from the field, line them all up, and let's state – spend a few weeks deposing them all. It's not available, folks. It's not available. That's what it means when Judge Brown says the statutes, the runoff remedy statutes [including Section 88.87] preempt the field . . .
>
> Now let me back up one minute. And before I leave that thought about the unavailability of suit against individual defendants, employees of the DOT, as we all know, suing these people as individuals is a fiction. We know that because Ms. Burker-Brist is here. They're not paying her in other than paying their taxes. If Mr. Sommer were to get a judgment in this case, it isn't paid by the individual engineers. It's just their time and effort that's lost. They don't have to pay the judgment. It's a legal fiction.
>
> * * *
>
> By the way, that statute doesn't refer to any causes of action. It's just a procedure by which if you're gonna sue, you have to do the 120-day notice. <u>That statute does not say that you can sue DOT engineers in a highway runoff case, it doesn't say that, and, in fact, the language of the statute and of the case that I've cited say exactly opposite in my opinion.</u>

2847450v2

*Id.* (emphasis added).

In addition to the WsDOT employees, independent contractors who performed at the WsDOT's behest are also protected:

> First off, as we have seen in Section 88.87 and the preemption language of *Pruim*, common law actions, including actions for negligence, have abolished as to the State, and I have ruled as to state employees as well when it comes to actions for damages to land occasioned by runoff or flooding from highway construction projects.
>
> To me it would make little sense in this context then to permit such causes of action against private contractors. First, this is because the State and its employees would not be available for comparison of negligence. Second, the public policy reasons for immunity for private contractors in this situation is every bit as strong as it is for public employees. The State, quote, must be able to make the best use of professional design assistance, but professional contractors should not be unfairly burdened by lawsuits when they follow governmental directives . . . . In other words, just as we want our DOT engineers in the field working rather than being deposed by their alleged – for their alleged individual negligence, the same holds true for private entities contracting with the State . . . the legislature has opted for a no-fault approach for the State. Consistent with that choice, the contractors are immune to third-party landowners damaged by runoff by virtue – virtue of their status as contractors.

*Id.* These holdings were affirmed on appeal. *See Osberg*, 2006 WL 539345 at *2-3.

The sound reasoning of *Osberg* shows why this action cannot proceed against Weber and Barbee. It is axiomatic that "a corporation acts of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation, both for the imposition of civil and criminal liability." *See State v. Dried Milk Prods. Co-op*, 114 N.W.2d 412, 415 (Wis. 1962). As plaintiffs' pleadings acknowledge, to design, construct, inspect and maintain the railroad grade and drainage facilities, BNSF necessarily acted through railroad employees, including Barbee and Weber. (Am. Compl. ¶¶ 17-21 (charging Barbee and Weber in their "supervisory" capacities and as employees and agents of the railroad).) Everything Barbee and Weber did regarding the tracks and trestles near Bagley was within the scope of their employment, and

2847450v2

plaintiffs do not contend otherwise. (*Id.*) Just like the WsDOT engineers in *Osberg*, Barbee and Weber should be afforded the same § 88.87 treatment as their employer.

By analogy, governmental indemnification and immunity statutes support that conclusion. For example, Wis. Stat. § 895.46 calls for public officers and employees to be reimbursed for attorneys' fees incurred in litigation against them; public servants are also insulated from the financial consequences of being held liable for acts committed within the scope of their employment and for a governmental unit's benefit. *See Sch. Bd. of Pardeeville Area Sch. Dist. v. Bomber*, 571 N.W.2d 189, 193 (Wis. Ct. App. 1997).

Governmental immunity similarly precludes suits against governmental officers, agents or employees, including independent contractors, based upon acts undertaken at the direction of an immune governmental authority. *See, e.g., Estate of Lyons v. CNA Ins. Cos.*, 558 N.W.2d 658, 661 (Wis. Ct. App. 1996) (discussing governmental immunity); Wis. Stat. § 893.80(4) (immunity for local municipalities and officers, agents, and employees). Like BNSF, governmental bodies can only act through their agents and employees; accordingly those individuals benefit from the same immunity status as their governmental employer. *See Pries v. McMillon*, 784 N.W.2d 648, 654-55 (Wis. 2010). Since § 88.87 treats railroads the same as governmental entities, railroad employees must be afforded the same statutory safeguards that public employees enjoy.

Finally, dismissing Barbee and Weber is required by the plain language of the statute. Wis. Stat. § 88.87 does not just specify the procedural prerequisites to an action brought to redress property damages occasioned by water flowing from railroad grades; the statute identifies the parties that can be sued. Wis. Stat. § 88.87. The legislation makes no mention of individual railroad employees. *Id.*

Claims against individual employees could not be authorized because § 88.87 remedies are limited to inverse condemnation and equitable relief. Unlike BNSF, neither Barbee nor Weber are vested with eminent domain authority, and the individuals could not possibly comply, without involving BNSF, with an order requiring railroad grade modifications so as to prevent 100-year storm water from backing up into the town of Bagley. Since Barbee and Weber would be incapable of satisfying the recourse allowed by § 88.87, such a cause of action cannot be asserted against them.

### II. NEITHER SECTION 190.08 NOR 195.27 APPLY TO INDIVIDUALS

Count I of the amended complaint accuses defendants of violating Wis. Stat. §§ 190.08 and 195.27. (*See* Am. Compl. Count I.) Neither statute, however, charges individuals with any purported duty. The plain language of both statutes exclusively applies to railroads. Wis. Stat. § 190.08 ("Every corporation constructing, owning or operating a railroad shall restore every watercourse . . . to its former state"); Wis. Stat. § 195.27 ("Every railroad shall construct and maintain its tracks, bridges and line structures in a reasonably adequate and safe manner consistent with federal law."). Since the statute does not concern individual railroad employees, Count I fails as a matter of law.

### III. COMMON LAW NEGLIGENCE AND NUISANCE CLAIMS CANNOT BE SUSTAINED

The amended complaint asserts nuisance and negligence claims, which are, as a matter of law, precluded by Wis. Stat. § 88.87, against all defendants. Condoning litigation against Weber and Barbee would thwart the manifest legislative intent of § 88.87. As this Court has already acknowledged, Barbee and Weber were sued for the singular purpose of destroying diversity jurisdiction:

> The joinder of Weber and Barbee to this lawsuit may not be fraudulent, but it is palpably tactical: these men were added to this lawsuit to defeat diversity, not

2847450v2

> because there is anything significant about their acts or omissions that would have caused the Bagley flood. Equally clearly, plaintiffs are not seeking significant relief from Weber and Barbee. These guys are line workers who probably don't have two spare nickels to rub together once the bills get paid, and some of their former friends who now are suing them are on record disavowing any intent to recover any relief from them at all. This lawsuit is a battle between a Wisconsin village and a Texas railroad. Weber and Barbee are insignificant pawns sacrificed by plaintiffs in the opening skirmish over jurisdiction.

(Clerk Doc. No. 27, Report & Recommendation at 20, Jan. 5, 2009.)

Subjecting Barbee and Weber to negligence and nuisance liability would permit recourse against the railroad despite this Court's dismissal of all direct claims against BNSF. Corporations must defend and indemnify their employees. *See* Wis. Stat. § 180.0856; Del. Code Ann. tit. 8, § 145. The purpose of such legislation is simple: "[i]ndemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. Super. Ct. 2005).

Because of corporate indemnification obligations, BNSF would, for all financial and practical purposes, remain a party to this litigation if claims against the employees are not dismissed. Such a result would, in effect, undo the protections and procedures afforded by § 88.87, leading to an absurd result. *Osberg*, 2004 WL 5567776 ("In construing statutes, one of the first and paramount rules of construction is to avoid an absurd result."). Plaintiffs should not be allowed to circumvent the limitations of Wis. Stat. § 88.87 by suing Barbee and Weber.

## CONCLUSION

The Wisconsin legislature has "decided to regulate and control strictly the types of claims that may be made by property owners" for water damages caused by railroad grades. *Pruim*, 483 N.W.2d at 245. Clear and unambiguous statutory language requires a plaintiff to follow the procedures delineated by § 88.87 and even if those procedures are satisfied, injured property owners can only seek inverse condemnation or equitable relief against a railroad.

The statute does not authorize action against railroad employees or any other individual; in fact the "statute clearly and unambiguous forbids it." *Id.*; *see also Osberg*, 2004 WL 5567776. The plaintiffs in this case have failed to comply with procedural prerequisites, brought the wrong claims, and sued individuals against whom the statute provides no remedy. Simply put, Barbee and Weber should be dismissed.

Dated:  November 3, 2010             **BRIGGS AND MORGAN, P.A.**


By: *s/Timothy R. Thornton*
    Timothy R. Thornton (#1032018)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400

2847450v2