IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH IRISH, DENISE MARSHALL,
ALLEN MOORE and SCOTT STILLWELL,

                OPINION and ORDER

        Plaintiffs,

                08-cv-469-bbc

    v.

WILLIAM BARBEE and FRANCIS A. WEBER,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Two matters are before the court in this case in which property owners in Bagley, Wisconsin are attempting to obtain relief for flooding that occurred in Bagley in July 2007, which plaintiffs say was caused by the negligence of a railway company and its employees. First, the parties have responded to the October 20, 2010 order of this court in which I dismissed the complaint as to BNSF Railway Company and Burlington Northern Santa Fe Railway Corporation and directed the parties to address the question whether the complaint should be dismissed as to the individual defendants as well.  (The parties do not distinguish between the two companies, so I will refer to them collectively as "the railroad company" for the remainder of the opinion.)  I concluded in the October 20 order that plaintiff could not proceed against the railroad company because Wis. Stat. § 88.87 provides the exclusive

1

remedy under the facts of this case and plaintiffs failed to follow the notice of claim procedures for obtaining relief under that statute.  However, the parties did not address the question whether § 88.87 applies to a railroad company's employees, so I asked for supplemental briefing.  Not surprisingly, plaintiffs say that the case should be allowed to proceed against the employees; defendants say that the case should be dismissed in its entirety.

Second, plaintiffs have filed three motions in an attempt to bring the railroad company back into the lawsuit.  The first two motions are requests to alter or amend the judgment under Fed. R. Civ. P. 59(e) and to grant relief from the judgment under Fed. R. Civ. P. 60(b).  Dkt. ##78 and 79.  (In their brief, plaintiffs discuss Rule 60 only.)  In particular, plaintiffs argue that, despite their failure to comply with the procedures for making a claim under Wis. Stat. § 88.87, they should be allowed to proceed against the railroad company because it had "actual notice" of the claim.   In their second motion, plaintiffs ask for leave to amend their complaint to include "equitable claims" and "federal common law nuisance claims" against both the railroad companies and the employees.

I conclude that it is too late for plaintiffs to raise arguments that they could have raised in response to defendants' motion to dismiss and it is far too late for plaintiffs to start over with new claims not included in any of their previous complaints.  Accordingly, I am denying plaintiffs' motion to revive their claim under § 88.87 and their motion to for leave

2

to amend the complaint. Further, because I agree with defendants that employees of railroad companies are legally indistinguishable from the companies themselves for the purpose of § 88.87, I am dismissing the complaint as to defendants William Barbee and Francis Weber.

Plaintiffs have had more than an adequate opportunity to develop claims and theories in support of their case, but they have continued to make choices that lead to a dead end. Although the losses plaintiffs sustained in the 2007 flood are unfortunate, even a sympathetic plaintiff is not entitled to an endless number of chances to reinvent his lawsuit until he discovers a version that leads to victory.

## BACKGROUND

Before addressing the substance of the matters before the court, it is helpful to place them in the context of the lengthy procedural history of this case. Plaintiffs filed the case in the Circuit Court for Grant County in May 2008 on their own behalf as well as a proposed class of others damaged by the flood. They asserted state law claims for negligence and nuisance on the theory that the flooding was caused by the obstruction of the Burlington Northern trestle, which defendants allegedly "failed to properly and adequately plan, design, construct, guard, inspect, investigate, clean and maintain." Cpt. ¶ 64, dkt. #1-1. Plaintiffs served defendants with the complaint in July 2008; defendants removed the case to this court in August; and plaintiffs filed a motion to remand in September.

3

In their motion, plaintiffs argued that jurisdiction did not exist under the diversity statute, 28 U.S.C. § 1332(a) (because plaintiffs and defendants Barbee and Weber were all citizens of Wisconsin) or the Class Action Fairness Act, 28 U.S.C. § 1332(d) (because the proposed class included fewer than 100 members). In response, defendants argued that plaintiffs joined Barbee and Weber fraudulently for the sole purpose of defeating diversity jurisdiction and that it was reasonable to infer that the class included at least 100 members. In a 26-page report and recommendation, Magistrate Judge Stephen Crocker found that plaintiffs' "joinder of the Wisconsin defendants is transparently tactical," but not fraudulent because of the chance that plaintiffs could show that as employees responsible for maintaining the tracks, Barbee and Weber were negligent in failing to keep the trestle free of debris. However, the magistrate judge agreed with defendants that at least 100 people fell within the class definition, securing jurisdiction under § 1332(d). Dkt. #27. Plaintiffs objected to this finding, but I affirmed the magistrate judge's decision in an order dated February 4, 2009. Dkt. #30.

Not willing to concede federal jurisdiction, plaintiffs filed a motion for leave to amend their complaint to delete all of their class allegations. Dkt. #44. In their proposed amended complaint, plaintiffs stated that "[n]othing in this Complaint is intended to or should be construed to provide a cause of action arising under any provision of the federal [C]onstitution, any federal statutory law, any federal regulation, any federal tariff, any

4

federal order or any type or source of federal law, including but not limited to CAFA." Am. Cpt. ¶ 26, dkt. #44-1.  I granted that motion and then remanded the case to state court on the court's own motion on the ground that jurisdiction no longer existed under § 1332(d) if the case was not proceeding as a proposed class.  Dkt. #49.  Defendants filed a motion for reconsideration that I denied.  Dkt. #65.  Defendants appealed that decision and the Court of Appeals for the Seventh Circuit reversed, concluding that "jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."  In re Burlington Northern Santa Fe Railway Co., 606 F.3d 379, 379 (7th Cir. 2010).

On remand, defendants filed a motion to dismiss on two grounds: (1) plaintiffs' claims are preempted by federal law; and (2) plaintiffs failed to follow the procedure for making a claim under Wis. Stat. § 88.87, which provides the sole remedy under state law for plaintiffs' alleged injuries. Section 88.87 creates a cause of action for property owners whenever a "railroad company" or government entity "constructs and maintains" a " railroad grade" in a way that "impede[s] the general flow of surface water or stream water in any unreasonable manner" and damages the property owner.  Wis. Stat. § 88.87(2)(a), (c).  If that occurs, the property owner

> may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company. The claim shall consist of a sworn statement of the alleged faulty construction and a description, sufficient to determine the location of the lands, of the lands alleged to have been damaged by flooding or water-soaking. Within 90 days after the filing of

5

> the claim, the governmental agency or railroad company shall either correct the cause of the water damage, acquire rights to use the land for drainage or overflow purposes, or deny the claim. If the agency or company denies the claim or fails to take any action within 90 days after the filing of the claim, the property owner may bring an action in inverse condemnation under ch. 32 or sue for such other relief, other than damages, as may be just and equitable.

Wis. Stat. § 88.87(2)(c).

In an order dated October 20, 2010, I concluded that defendants failed to show that the federal law preempted plaintiffs' state law claims, but I agreed with defendants that plaintiffs' state law claims against the railroad company fell under their own weight:

> Defendants argue that § 88.87 provides the exclusive remedy in cases in which it applies. Plaintiffs do not dispute that contention, so I will not consider it further. In addition, plaintiffs admit that they did not follow the procedures outlined in § 88.87 for making a claim. Instead, they argue that § 88.87 does not apply to this case.
>
> . . . [P]laintiffs' only developed argument regarding the scope of Wis. Stat. § 88.87 is that it is a "governmental immunity" statute that applies to private parties only when they are "affiliated with governmental entities." The obvious problem with the argument is that it is flatly contradicted by the language of the statute. Section 88.87 applies to "any county, town, city, village, *railroad company* or the department of transportation."
>
> * * *
>
> The only wrinkle relates to the individual defendants, William Barbee and Francis Weber. Because neither side addresses whether § 88.87 should apply to them, I will give the parties an opportunity to address that question and any other reason the case should continue against them or be dismissed in its entirety.

Dkt. #75, at 8-10 (emphasis in original) (citations omitted).

6

OPINION

I address first plaintiffs' argument that they should be allowed to proceed against the railroad company despite the conclusion to the contrary in the October 20 order. Plaintiffs ask for relief under Fed. R. Civ. P. 59 or 60, but those rules apply to judgments or final orders, neither of which has been entered in this case. Thus, plaintiffs' motion is more properly viewed as a motion for reconsideration under the law of the case doctrine. Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 571-72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous ruling in the same litigation . . . is governed by the doctrine of the law of the case."). However, this does not mean that there are no limits on seeking reconsideration before judgment has been entered. The moving party must still show that "there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." Id.

Plaintiffs do not challenge the correctness of any of the conclusions in the October 20 order. They do not argue that the railroad company may be sued under any state law other than § 88.87 and they have not withdrawn their concession that they failed to file a claim with the railroad company as required by Wis. Stat. § 88.87(2)(c). Instead, plaintiffs argue for the first time in this case that their failure to comply is excused by § 88.87(2)(d):

> Failure to give the requisite notice by filing a claim under par. (c) does not bar action on the claim if the city, village, town, county, railroad company or department of transportation had actual notice of the claim within 3 years

7

> after the alleged damage occurred and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant city, village, town, county, railroad company or department of transportation.

According to plaintiffs, this lawsuit gave defendants "actual notice" of the claim within three years and the failure to comply with § 88.27(2)(c) "has not been prejudicial to" defendants. However, plaintiffs acknowledge that success under § 88.87(2)(d) is only half the battle because § 88.87(2)(c) permits two types of remedies only, inverse condemnation under Wis. Stat. ch. 32 and equitable relief. Plaintiffs do not want inverse condemnation, but they do want what they call "restitution," which they identify as an equitable remedy. Because they did not ask for restitution in their complaint, they seek leave to amend the complaint again for that purpose. (Plaintiffs mention "injunctive relief" in their brief as well, dkt. #81, at 7, but they do not identify what that relief might be and they do not respond to defendants' argument that the standard for obtaining injunctive relief has not been met.)

This argument fails at the starting gate because plaintiffs have no persuasive reason for not raising § 88.87(2)(d) in response to defendants' motion to dismiss. They suggest that they could not have anticipated the argument because their original position was that § 88.87 did not apply to railroad companies, but parties may not simply assume that courts will accept their first argument. Defendants argued in their motion to dismiss that "[p]laintiffs cannot amend to state a cognizable claim for equitable relief [under § 88.87]

8

because the statutory prerequisites have not been satisfied." Dfts.' Br., dkt. #69, at 1. See also id. at 17-19 (developing argument that plaintiffs cannot proceed under § 88.87 because "plaintiffs never filed a claim with BNSF"). Thus, if plaintiffs believed that § 88.87(2)(d) excused their failure to file a claim under § 88.87(2)(c), they were on notice that they needed to raise that argument in their opposition brief. No party is entitled to dole out new arguments each time he receives an adverse decision. It is unfair to the opposing parties and contrary to principles of judicial economy. Frietsch v. Refco, Inc., 56 F.3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless."); cf. United States v. 47 West 644 Route 38, Maple Park, Illinois, 190 F.3d 781, 783 (7th Cir. 1999) ("A party may not introduce evidence or make arguments in a Rule 59 motion that could or should have been presented to the court prior to judgment.").

Even if plaintiffs had shown that it would be appropriate to consider their untimely argument, it is likely that I would deny their request to add a claim for equitable relief. Plaintiffs are correct that restitution is an equitable claim, In re Marriage of Zabel, 210 Wis. 2d 336, 345, 565 N.W.2d 240, 244 (Ct. App. 1997), but, as defendants point out, Wisconsin courts have equated "restitution" in civil law with unjust enrichment, which means that the proper measure of restitution would be the gain to defendants rather than

9

the loss to plaintiffs. E.g., Schmidt v. Town of Alvin, 145 Wis. 2d 806, 816, 429 N.W.2d 541, 545 (Ct. App. 1988) (concluding that plaintiff was "entitled to restitution under equitable principles in order to prevent unjust enrichment," but declining to award "interest and overhead expenses" because "unjust enrichment is not concerned with making the [plaintiff] whole, but rather aims to divest the [defendant] of any gain that it has unfairly received at the bank's expense"). See also City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710 (1999) ("Just compensation, moreover, differs from equitable restitution and other monetary remedies available in equity, for in determining just compensation, the question is what has the owner lost, not what has the taker gained.") (internal quotations omitted). Plaintiffs say that their request for restitution includes "money to pay for the lost value of their respective properties and to pay for the value of the time expended on cleaning up each of their own respective properties." Plts.' Br., dkt. #81, at 8. However plaintiffs try to spin it, that is compensation, not restitution. General Casualty Co. of Wisconsin v. Hills, 209 Wis. 2d 167, 209, 561 N.W.2d 718, 724 (1997) ("It has long been the law of this state that the cost of repairing and restoring damaged property and water to its original condition is a proper measure of compensatory damages.").

The next question is whether plaintiffs should be allowed to proceed against the two defendant employees despite the dismissal of the railroad company. In particular, the question is whether § 88.87 permits plaintiffs to sue employees of railroad companies for

10

alleged negligence in failing to maintain a railroad trestle. Again, plaintiffs do not deny that § 88.87 is the exclusive remedy in any situation where it applies.

There is a colorable argument that § 88.87 is not simply a limitation on the *remedies* that can be pursued (and the procedure to obtain them), but also a limitation on the *parties* that can be sued in situations covered by the statute. Section 88.87(2)(a) contains the primary substantive requirement of the statute:

> Whenever any county, town, city, village, railroad company or the department of transportation has heretofore constructed and now maintains or hereafter constructs and maintains any highway or railroad grade in or across any marsh, lowland, natural depression, natural watercourse, natural or man-made channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands.

The statute goes on to create a cause of action against any government entity or railroad company that "constructs and maintains a highway or railroad grade not in accordance with par. (a)" and damages a property owner as a result. Wis. Stat. § 88.87(2)(c). The Wisconsin Court of Appeals has stated that § 88.87 is an expression of the legislature's intent to "control and regulate the protection of property owners" and "exactly how property owners could act to protect themselves." Pruim v. Town of Ashford, 168 Wis. 2d 114, 119, 483 N.W.2d 242, 244 (Ct. App. 1992) (internal quotations omitted).

Plaintiffs' complaint is written on the assumption that the railroad company

11

"constructed and now maintains" the trestle at issue in this case within the meaning of § 88.87(2)(a). Further, plaintiffs do not argue that a trestle is not part of a "railroad grade" within the meaning of the statute or that a failure to clear debris from the trestle is not a failure to "maintain" the railroad grade. If plaintiffs acknowledge that § (2)(a) applies to this case, this suggests that plaintiffs are limited to the remedies provided in § (2)(c), which is a lawsuit for inverse condemnation or equitable relief against one of the listed entities: "a city, village, town, county or railroad company or the department of transportation." Suing an individual is simply not an option when the injury is caused by an alleged failure to maintain a railroad grade.

In any event, even if § 88.87 leaves the door open for suits against employees, there is no way to distinguish the railroad company from the railroad company's employees in the context of this case. As defendants point out, a company can act only through its agents. State v. Dried Milk Products Co-op, 16 Wis. 2d 357, 361, 114 N.W.2d 412, 415 (1962). Thus, if the restrictions on suing the railroad company in § 88.87 do not extend to the company's employees acting as agents for the company, then the restriction has no meaning. In *every* case, a plaintiff will be able to substitute one or more employees for the railroad company and proceed outside § 88.87. This result would make no sense because it would turn § 88.87 into a statute that shifts liability from the company to employees, which could not have been the intent of the legislature in enacting the law. Accordingly, I conclude that,

12

to the extent § 88.87 allows lawsuits against a railroad company's employees at all, the same limitations apply to suing the employees that apply to the company itself, at least when the employees are alleged to have acted within the scope of their employment, as plaintiffs allege in this case.

This leaves plaintiffs' motion for leave to amend their complaint to include a nuisance claim under federal common law. The availability of such a claim is questionable. As a general matter, federal courts are reluctant to regulate conduct outside the parameters of the Constitution or statutes. Many years ago, the Supreme Court declined to recognize the existence of federal "general" common law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). "While there are federal interests that occasionally justify th[e] Court's development of common-law rules of federal law, [its] normal role is to interpret law created by others and not to prescribe what it shall be." Danforth v. Minnesota, 552 U.S. 264, 289-90 (2008). See also O'Melveny & Myers v. FDIC, 512 U.S. 79, 87 (1994) ("[C]ases in which judicial creation of a special federal rule would be justified . . . are . . . few and restricted. ") (internal quotations omitted).

Plaintiffs say that an exception is justified in this case because BNSF is a "federally-chartered railroad engaging in interstate commerce." Plts.' Br., dkt. #81, at 12. If that were enough, it would justify the application of a federal common law rule whenever a railroad company was involved in the lawsuit. Not surprisingly, plaintiffs cite no cases in which a

13

court reached that conclusion or applied federal common law in a situation similar to this one.

In any event, I cannot conclude that it is appropriate to give plaintiffs another opportunity to amend their complaint under Fed. R. Civ. P. 15. Plaintiffs were free to include federal claims in any of their previous complaints. Plaintiffs not only have declined to assert any federal claims up until now, they have continuously and vigorously objected to any suggestion that federal law has a role to play in this lawsuit. This is another example of plaintiffs reinventing their theory of the case after the one they picked has been rejected. Had plaintiffs included federal claims initially, the two-year fight over jurisdiction could have been avoided and the resources spent on that issue by the parties and the courts could have been saved. Having made the tactical decision to proceed under state law, plaintiffs are stuck with that choice. It is far too late for plaintiffs to switch gears again.

In their reply brief, plaintiffs argue that dismissal of this case is a waste of time because they "could as easily file a new federal common law nuisance against [defendants]." Plts.' Br., dkt. #88, at 2. Although it would be premature at this point to determine the viability of a case not yet filed, before choosing to bring a new lawsuit, plaintiffs should consider whether doing so would be permitted under the doctrine of claim preclusion. Maher v. FDIC, 441 F.3d 522, 526 (7th Cir. 2006) (claim preclusion "also bars litigation of claims that 'could have been raised' in the previous litigation, but were not").

ORDER

IT IS ORDERED that

1. The motion to dismiss filed by defendants William Barbee and Francis Weber, dkt. #68, is GRANTED.

2. The motions for reconsideration filed by plaintiffs Kenneth Irish, Denise Marshall, Allen Moore and Scott Stillwell, dlt. ##78 and 79, are DENIED.

3. Plaintiffs' motion for leave to amend their complaint, Dkt. #80, is DENIED

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 6th day of January, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge